IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TETYANA SHEVCHENKO,<br><br>VASYL FURSOV,<br>    &<br>SELLER ONLINE, LLC,<br><br>                    Plaintiffs<br><br>                v.<br><br>IRINA SPRISHEN, CPA,<br>    &<br>IRINA SPRISHEN CPA, P.C.,<br><br>                    Defendants | Case No. 2:26-cv-04999<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COME Plaintiffs Tetyana Shevchenko ("Shevchenko"), Vasyl Fursov ("Fursov), and Seller Online, LLC ("Seller Online") (collectively "Plaintiffs"), by and through undersigned counsel, and hereby file this Complaint and in support thereof, aver as follows:

## I.    INTRODUCTION

1.    This action arises from a deliberate scheme to exploit the trust Plaintiffs placed in their longtime accountant and tax advisor, Defendant Irina Sprishen, CPA ("Sprishen"), in order to facilitate the diversion of corporate assets, conceal material financial misconduct, manipulate partnership tax reporting, and induce Plaintiffs to make financial decisions that benefited Sprishen's favored client, Anna Syrykh ("Syrykh"), to Plaintiffs' substantial detriment.

2.    For approximately five years, Sprishen served as Seller Online, LLC's accountant, tax preparer, and financial advisor. In that role, she possessed unrestricted access to Seller Online's financial records, tax information, ownership structure, banking records, and

confidential financial affairs. Plaintiffs relied upon her professional expertise to accurately prepare tax returns, maintain the company's books, allocate partnership income, prepare Schedule K-1s, advise the members regarding tax consequences, and safeguard the integrity of Seller Online's financial reporting.

3.      Rather than faithfully discharge those professional obligations, Sprishen allegedly used her position of trust to assist Syrykh in implementing a fraudulent scheme designed to extract millions of dollars of value from Seller Online while concealing the true financial condition of the company and shifting substantial financial burdens onto Plaintiffs.

4.      The scheme was accomplished through a series of interrelated misrepresentations and omissions. These included, among other things, false representations concerning the value and structure of the buyout of Syrykh's ownership interest; the preparation and filing of partnership tax returns; the accuracy of Schedule K-1s and related tax documents; the allocation of partnership income, deductions, and ownership interests; the payment of personal tax obligations using company funds; and the accuracy of Seller Online's accounting records.

5.      Plaintiffs allege that Sprishen knowingly prepared, transmitted, approved, or concealed materially false accounting records and tax documents for the purpose of inducing Plaintiffs to rely upon them in conducting the affairs of Seller Online, preparing their tax returns, consummating the purchase of Syrykh's ownership interest, and refraining from investigating misconduct that otherwise would have been discovered substantially earlier.

6.      Plaintiffs further allege that Sprishen repeatedly concealed material facts that she had a professional duty to disclose, including inaccuracies in partnership reporting, failures to properly file required tax documents, false ownership allocations, inaccurate taxpayer identifying

information, improper classification of partnership income, and accounting entries that disguised the diversion of company assets and payment of personal obligations using company funds.

7.    Plaintiffs reasonably relied upon Sprishen's representations because she occupied a position of special confidence as Seller Online's longtime accountant and tax professional. She possessed specialized knowledge unavailable to Plaintiffs, prepared the company's financial records, advised Plaintiffs regarding tax compliance, and repeatedly assured Plaintiffs that the accounting records and tax filings accurately reflected Seller Online's financial affairs.

8.    Plaintiffs' reliance upon Sprishen's representations and omissions caused them to refrain from retaining independent accounting professionals, delayed discovery of the fraudulent scheme, caused them to execute transactions they otherwise would not have approved, caused them to file or rely upon inaccurate tax documents, subjected them to substantial tax liabilities, penalties, professional expenses, and business disruption, and permitted the continued diversion and concealment of company assets.

9.    The fraudulent nature of the scheme was not discovered until independent accountants and review of Seller Online's financial records, IRS transcripts, amended partnership returns, tax filings, and supporting documentation revealed numerous material inconsistencies that could not be reconciled as mere accounting mistakes or clerical errors. Instead, the documentary evidence demonstrates a systematic pattern of misrepresentations and concealment that advanced the financial interests of Syrykh while materially harming Plaintiffs.

10.    This case is not about isolated bookkeeping errors, negligence, or differences in professional judgment. It concerns the knowing and willful misuse of professional accounting services to facilitate a broader fraudulent scheme, conceal the true financial condition of Seller

Online, mislead Plaintiffs regarding material financial facts, and interfere with Plaintiffs' ability to protect their legal and financial interests.

11.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered substantial monetary damages, including lost tax credits, excessive tax liabilities, penalties, interest, professional fees, litigation expenses, business losses, diversion of corporate assets, and other damages in an amount to be proven at trial.

12.     Plaintiffs therefore bring this action seeking compensatory damages, treble damages where authorized by federal law, punitive damages, equitable relief, restitution, disgorgement, an accounting, attorneys' fees where recoverable, and such further relief as the Court deems just and proper.

## II.     THE PARTIES

13.     Plaintiff Tetyana Shevchenko is an adult individual residing at 225 Sayre Drive, Princeton, New Jersey 08540. At all times relevant hereto, Shevchenko was a member and owner of Plaintiff Seller Online, LLC and was a client of Defendants with respect to accounting, bookkeeping, tax preparation, tax compliance, and related professional financial services.

14.     Plaintiff Vasyl Fursov is an adult individual residing at 225 Sayre Drive, Princeton, New Jersey 08540. At all times relevant hereto, Fursov was a member and owner of Plaintiff Seller Online, LLC and was likewise a client of Defendants with respect to accounting, bookkeeping, tax preparation, tax compliance, and related professional financial services.

15.     Shevchenko and Fursov are married to each other and have been married to each other at all points relevant to this Complaint.

16.     Plaintiff Seller Online, LLC is a Pennsylvania limited liability company with its principal place of business located at 635 Somers Avenue, Feasterville-Trevose, Pennsylvania 19053. At all times relevant hereto, Seller Online retained Defendants to provide accounting,

4

bookkeeping, financial reporting, tax preparation, tax compliance, and related professional accounting services.

17.     Defendant Irina Sprishen, CPA is an adult individual residing in the Commonwealth of Pennsylvania who is, and at all times relevant hereto was, a licensed Certified Public Accountant engaged in the practice of public accounting. Upon information and belief, Sprishen maintains her principal office for the practice of public accounting at or near 101 East Pennsylvania Boulevard, Feasterville-Trevose, Pennsylvania 19053.

18.     Defendant Irina Sprishen CPA, P.C. ("Sprishen CPA") is, upon information and belief, a Pennsylvania professional corporation with its principal office located at or near 101 East Pennsylvania Boulevard, Feasterville-Trevose, Pennsylvania 19053. At all times relevant hereto, Sprishen CPA provided accounting, bookkeeping, tax preparation, tax compliance, payroll, financial reporting, and related professional accounting services to Plaintiffs.

19.     At all times relevant hereto, Defendant Sprishen acted individually and as the owner, shareholder, officer, employee, agent, and authorized representative of Defendant Sprishen CPA, and all actions alleged herein were undertaken within the course and scope of that relationship.

20.     At all times relevant hereto, Defendant Sprishen CPA acted through Defendant Sprishen and its other employees, agents, representatives, and persons acting under its direction and control. Accordingly, each Defendant is liable for its own conduct and, to the extent permitted by applicable law, for the conduct of its agents, employees, and representatives acting within the course and scope of their authority.

## III.    JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, including claims under 18 U.S.C. §§ 1962(c) and 1962(d).

22.     This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same nucleus of operative facts as the federal claims and form part of the same case or controversy under Article III of the United States Constitution.

23.     In addition, to the extent any federal claim is dismissed or otherwise resolved, this Court possesses diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between Plaintiffs and Defendants. Plaintiffs are citizens of New Jersey and Pennsylvania, while Defendants are citizens of Pennsylvania. This allegation is pleaded in the alternative to the Court's federal question jurisdiction.

24.     This Court has personal jurisdiction over Defendants because Defendants reside in, maintain their principal place of business in, regularly transact business in, and committed the acts and omissions giving rise to this action within the Commonwealth of Pennsylvania and within this Judicial District.

25.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

26.     Venue is independently proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, transactions, communications, accounting services, tax preparation services, and fraudulent conduct giving rise to Plaintiffs' claims occurred within this Judicial District.

6

27.    At all times relevant hereto, Defendants purposefully availed themselves of the privilege of conducting business within the Commonwealth of Pennsylvania and this Judicial District by providing professional accounting, bookkeeping, tax preparation, tax compliance, financial reporting, and related professional services to Plaintiffs from their offices located in Feasterville-Trevose, Pennsylvania.

IV.    **FACTUAL ALLEGATIONS**

A.    **Formation and Growth of Seller Online**

28.    In early 2019, Tetyana Shevchenko decided to expand her successful online fulfillment business from Ukraine into the United States. Having worked in the online fulfillment industry in Ukraine since approximately 2001, she sought to establish an American operation to facilitate sales and distribution within the United States.

29.    To assist with the expansion, Shevchenko approached her longtime friend, Oksana Kuznietsova, whom she had known since their time together at the University of Donetsk. Kuznietsova declined to become a business partner and instead suggested that Shevchenko work with Kuznietsova's wife, Anna Syrykh, who had lived in the United States longer and possessed greater familiarity with the American business environment and English language.

30.    In February 2019, Seller Online, LLC was organized in Pennsylvania. According to the company's organizational structure, Shevchenko held a forty-nine percent ownership interest, while Syrykh held a fifty-one percent ownership interest. The company's Certificate of Organization identified both women as organizers of the limited liability company. See attached Exhibit "A."

31.    Following the company's formation, the two owners divided their responsibilities. Shevchenko managed the Ukrainian operations, including the overseas portion of the business,

7

while Syrykh managed the Pennsylvania-based operations. As the business expanded, Seller Online developed into a successful online fulfillment company engaged in the sale and distribution of consumer products through various online marketplaces.

32.     Within several months of Seller Online's formation, the principals determined that a second business entity would be useful to reduce operational risks associated with online marketplace payment processors and account freezes. In September 2019, Atlantic Logistic Solutions, Inc. ("ALS") was incorporated in Pennsylvania with Oksana Kuznietsova listed as its owner. See attached Exhibit "B."

33.     ALS was intended to function solely as a companion entity supporting Seller Online's operations rather than as an independent business. Seller Online funded the creation of ALS. The companies shared business facilities. Revenues generated through ALS were routinely transferred into Seller Online's accounts, and the two entities operated as an integrated business enterprise. See attached Exhibit "C."

34.     From 2019 through late 2023, Seller Online continued to operate with Shevchenko overseeing the Ukrainian side of the business and Syrykh overseeing the United States operations. During this period, Kuznietsova worked in the business as a shipping manager while simultaneously serving as the nominal owner of ALS.

      **B.**      **Engagement of Sprishen as Seller Online's Trusted Accountant**

35.     Upon organizing Seller Online in February 2019, Anna Syrykh selected Defendant Irina Sprishen, CPA, and her accounting firm to provide accounting, bookkeeping, tax preparation, and related financial services to Seller Online.

36.     At that time, Shevchenko resided in Ukraine and was not physically present in the United States to supervise the selection of Seller Online's accountants or to directly oversee the company's United States financial operations.

8

37.    Because Syrykh controlled many of Seller Online's domestic operations, and because Sprishen's office was located in Feasterville-Trevose, Pennsylvania, Sprishen became the accountant through whom Seller Online's financial affairs were administered in the United States.

38.    Sprishen's role began at the company's inception. Public formation documents for Seller Online listed Sprishen's office address for return of the Pennsylvania filing documents, reflecting her involvement in the organization of the company from the outset. See attached Exhibits "A" and "B."

39.    Over time, Sprishen and her firm assumed broad responsibility for Seller Online's financial reporting and tax matters, including bookkeeping, accounting, tax preparation, advisory services, individual tax filings for the company's members, preparation of partnership returns, Schedules K-1, Qualified Business Income ("QBI") and Section 199A statements, depreciation and Section 179 schedules, and estimated tax vouchers.

40.    Through that work, Sprishen obtained detailed knowledge of Seller Online's finances, ownership structure, income allocations, distributions, loans, tax obligations, member-level reporting, and business records.

41.    Plaintiffs relied on Sprishen because she was a licensed Certified Public Accountant, held herself out as competent to provide professional accounting and tax advice, and possessed superior knowledge concerning Seller Online's books, records, tax filings, and financial reporting obligations.

42.    Plaintiffs further relied on Sprishen to act independently and honestly in preparing Seller Online's financial records, reporting ownership interests and tax allocations, preparing

accurate tax returns, and advising the company and its members concerning material financial matters.

43.     Sprishen's position was not ministerial. She was not merely entering data into tax forms. She functioned as Seller Online's trusted outside accountant and tax advisor and was expected to safeguard the accuracy and integrity of the company's financial reporting.

44.     As a result of that professional relationship, Sprishen occupied a position of trust and confidence with respect to Seller Online and its members, including Shevchenko and Fursov.

45.     That position of trust gave Sprishen the ability to detect improper financial transactions, accurately classify company payments, identify unauthorized use of company funds, and disclose material irregularities to the members.

46.     Instead, as set forth below, Sprishen ultimately used her trusted professional role to assist Syrykh in concealing financial misconduct, mischaracterizing company transactions, and inducing Plaintiffs to rely on false or misleading accounting and tax records.

C.     **Syrykh's Exploitation of Shevchenko's Absence**

47.     During the period in which Shevchenko resided in Ukraine, Syrykh exercised substantial day-to-day authority over Seller Online's operations within the United States. Although Shevchenko remained actively involved in the company's strategic direction and major business decisions, she necessarily relied upon Syrykh to manage Seller Online's domestic operations honestly and to keep her fully informed regarding the company's financial affairs.

48.     Syrykh gradually abused that position of trust by exercising her authority for her own personal financial benefit rather than for the benefit of Seller Online and its members.

49.     Syrykh informed Shevchenko that because she resided thousands of miles away, she could not independently monitor Seller Online's daily banking activity, accounting records, payroll, tax payments, inventory operations, or financial transactions. Instead, she necessarily

10

relied upon the accuracy of the information that Syrykh and Seller Online's professional advisors provided to her.

50. Syrykh used that lack of direct oversight to obtain unauthorized financial benefits from Seller Online without fully disclosing those transactions to Shevchenko.

51. Syrykh would prepare Excel spreadsheets for Shevchenko weekly that she claimed reflected the company's financial transactions.

52. Those spreadsheets were manipulated to conceal Syrykh misappropriation of company funds.

53. Among other things, Syrykh caused Seller Online to transfer approximately $600,000 of company funds to her as a purported personal loan during 2021 without obtaining Shevchenko's informed approval. Although Syrykh later repaid approximately $500,000 of that amount, approximately $100,000 remained outstanding. Plaintiffs further allege that Syrykh obtained an additional $30,000 loan from Seller Online that she never repaid.

54. Plaintiffs further allege that Syrykh caused Seller Online to pay substantial federal, state, and local tax obligations that belonged personally to Syrykh and her spouse, Oksana Kuznietsova, rather than to Seller Online. See attached Exhibit "E."

55. Syrykh directed or approved transactions that obscured the true nature of those payments by recording or classifying them in a manner that concealed their personal character and prevented Shevchenko from understanding the extent to which Seller Online's funds had been used for Syrykh's personal benefit.

56. Throughout this period, Shevchenko reasonably believed that Seller Online's financial records accurately reflected the company's financial condition and that Seller Online's

accountant would identify and disclose any material irregularities in the company's books, tax reporting, or financial transactions.

57.     Instead, the combination of Shevchenko's physical absence from the United States, Syrykh's control over the company's domestic operations, and Plaintiffs' reliance upon Seller Online's accounting professionals allowed the alleged misconduct to continue without detection for several years.

> **D.     Shevchenko's Planned Relocation to the United States and the Threat of Discovery**

58.     During 2022, Shevchenko began taking steps to relocate permanently to the United States so that she could assume a more active role in Seller Online's day-to-day operations and personally oversee the company's continued growth.

59.     To accomplish that objective, Shevchenko pursued an L-1 intracompany transferee visa, which would permit her to relocate lawfully to the United States and manage Seller Online's American operations directly.

60.     From the time Seller Online was formed, the parties understood that Shevchenko's residence in Ukraine made it impracticable for her to exercise day-to-day control over the company's United States operations. The parties further understood that, once Shevchenko permanently relocated to the United States, Syrykh would transfer a two-percent (2%) membership interest to Shevchenko, thereby giving Shevchenko a controlling ownership interest in Seller Online.  See attached Exhibit "F."

61.     Syrykh and Defendant Sprishen learned of Shevchenko's relocation plans well before her arrival in the United States. They also knew that her relocation would fundamentally change Seller Online's management by placing its controlling owner in the United States for the first time since the company's formation.

12

62.    Once Shevchenko acquired a controlling ownership interest and assumed day-to-day management of Seller Online, she would possess both the practical and legal authority to review the company's books and records firsthand, communicate directly with its accountants and financial institutions, supervise its domestic operations, inspect its banking activity, direct the preparation of financial statements and tax returns, retain independent professionals, and investigate prior financial transactions.

63.    Shevchenko's anticipated assumption of control substantially increased the likelihood that she would discover financial transactions, accounting entries, tax reporting, and other matters that had escaped her attention while she resided abroad.

64.    Syrykh recognized that Shevchenko's increased oversight threatened to expose years of unauthorized financial transactions, including the use of Seller Online funds for Syrykh's personal benefit, undisclosed loans and transfers, payments of personal obligations with company funds, and other transactions that Syrykh had not disclosed to Shevchenko.

65.    Defendant Sprishen likewise recognized that Shevchenko's assumption of control would inevitably result in a comprehensive review of Seller Online's accounting records, tax filings, ownership records, banking activity, and financial reporting. As Seller Online's longtime accountant, Sprishen knew that such a review would likely reveal accounting irregularities and financial transactions that previously had remained concealed.

66.    Consistent with the parties' prior understanding, Syrykh transferred a two-percent (2%) membership interest to Shevchenko before Shevchenko's relocation to the United States, thereby giving Shevchenko a controlling ownership interest in Seller Online. See attached Exhibit "F."

67.     By the time Shevchenko obtained control of Seller Online, Syrykh and Sprishen understood that any meaningful review of the company's financial affairs would likely expose the financial misconduct alleged in this Complaint.

### E.     Syrykh's Hasty Withdrawal from Seller Online

68.     After Shevchenko acquired a controlling ownership interest in Seller Online, Syrykh acted quickly to liquidate her remaining ownership interest before Shevchenko could conduct a meaningful review of the company's financial records and financial condition.

69.     Syrykh sought to convert her remaining forty-nine percent (49%) membership interest into cash before Shevchenko could discover the alleged misuse of company assets and challenge the value of that ownership interest.

70.     The parties ultimately agreed that Fursov would purchase Syrykh's remaining forty-nine percent (49%) membership interest. Together with the contemporaneous transfer of the additional two-percent (2%) interest to Shevchenko, the agreed consideration for both transfers totaled $700,000.

71.     The agreed purchase price did not result from arm's-length negotiations conducted with full disclosure of Seller Online's financial condition. Instead, Defendants allegedly induced Plaintiffs to agree to that consideration by concealing material financial information, failing to disclose prior unauthorized transactions, and presenting the transaction as fair and financially advantageous despite knowing facts that materially affected the value of Syrykh's ownership interest.

72.     Syrykh could not accomplish that objective through an ordinary purchase-and-sale transaction alone. To obtain Plaintiffs' agreement, she allegedly needed a financial narrative that justified the purchase price, discouraged further investigation, and concealed the true condition of Seller Online's finances.

73.     Defendant Sprishen occupied a unique position to provide that narrative. Having served as Seller Online's accountant since its formation, Sprishen possessed detailed knowledge of the company's finances, ownership records, tax reporting, accounting practices, and banking activity. No other person possessed comparable knowledge of Seller Online's financial affairs.

74.     Rather than fulfill her professional obligations by providing independent and objective accounting advice, Sprishen chose to assist Syrykh in facilitating her withdrawal from Seller Online while concealing material financial information from Plaintiffs.

75.     According to Plaintiffs, Sprishen used her position as Seller Online's trusted accountant to lend credibility to the proposed buyout, reassure Plaintiffs concerning its fairness, and withhold material financial information necessary for Plaintiffs to make an informed decision regarding the transaction.

76.     Defendants' strategy served two related objectives. First, it enabled Syrykh to extract substantial value from Seller Online before Plaintiffs discovered the true condition of the company's finances. Second, it delayed or prevented Plaintiffs from discovering prior financial misconduct by presenting the buyout as an ordinary arm's-length business transaction.

77.     The fraudulent schemes described in the following sections explain how Defendants allegedly accomplished those objectives.

### F.     Scheme One: The Fraudulent Buyout of Syrykh's Membership Interest

78.     After Shevchenko acquired a controlling ownership interest in Seller Online, Syrykh and Defendant Sprishen implemented a coordinated scheme to induce Plaintiffs to purchase Syrykh's remaining forty-nine percent (49%) membership interest for $700,000 while concealing material information concerning Seller Online's true financial condition.

79.     Defendants understood that Shevchenko's recent relocation to the United States and assumption of control over Seller Online created a narrow window during which they could

complete the transaction before Shevchenko had an opportunity to conduct a meaningful review of the company's books, banking records, tax filings, and accounting records.

80. On or about December 22, 2023, shortly after Shevchenko relocated to the United States, Syrykh instructed Shevchenko to attend a meeting at Defendant Sprishen's office on December 26, 2023. Syrykh did not disclose the purpose of the meeting in advance and did not provide Plaintiffs with financial information or draft transaction documents for review before the meeting.

81. Defendants intentionally structured the meeting to prevent Plaintiffs from obtaining independent legal or accounting advice before Defendants presented the proposed transaction.

82. On December 26, 2023, Plaintiffs met with Syrykh and Defendant Sprishen at Sprishen's office. At that meeting, Defendants informed Plaintiffs for the first time that Syrykh intended to sell her remaining membership interest in Seller Online for $700,000.

83. Defendant Sprishen did not participate merely as the company's accountant. She actively explained, endorsed, and promoted the proposed transaction while relying upon the trust and confidence that Plaintiffs had developed in her during nearly five years as Seller Online's Certified Public Accountant.

84. During the meeting, Defendant Sprishen represented that the proposed transaction constituted a favorable financial arrangement for Plaintiffs, that the purchase price fairly reflected the value of Syrykh's ownership interest, and that Plaintiffs should proceed without delay.

85. Defendant Sprishen further advised Plaintiffs concerning the structure of the transaction, the use of Seller Online funds to finance portions of the purchase price, the

anticipated tax consequences, and the treatment of Seller Online's profits following the transaction.

86.   When Plaintiffs questioned the structure of the proposed transaction and expressed concern regarding the purchase price, Defendant Sprishen reassured them that the transaction was financially advantageous and represented that Plaintiffs would face substantially greater financial consequences if they refused to proceed. See attached Exhibit "G."

87.   When Plaintiffs expressed a desire to retain independent legal counsel before completing the transaction, Defendants discouraged that course of action and emphasized the need to complete the transaction immediately.

88.   Defendants intentionally created a sense of urgency to prevent Plaintiffs from obtaining independent legal advice, retaining an independent accountant, reviewing Seller Online's books and records, or investigating the financial assumptions underlying the proposed transaction.

89.   Defendant Sprishen thereafter communicated directly with Plaintiffs concerning revisions to the purchase agreement, responded to Plaintiffs' questions regarding the transaction, and continued to provide professional advice concerning its structure and implementation.

90.   Defendant Sprishen confirmed that the agreed consideration of $700,000 encompassed both Syrykh's transfer of the additional two-percent (2%) membership interest to Shevchenko, thereby giving Shevchenko a controlling ownership interest, and Syrykh's sale of her remaining forty-nine percent (49%) membership interest to Fursov.

91.   Defendant Sprishen further advised Plaintiffs that Syrykh would remain employed by Seller Online following the transaction, that Seller Online would retain its 2023 earnings, and

that Seller Online would reimburse certain tax liabilities attributable to Syrykh's ownership interest. See attached Exhibit "G."

92.     Defendant Sprishen failed to disclose material information necessary for Plaintiffs to evaluate the fairness of the transaction, including information concerning prior loans to Syrykh, payments of Syrykh's personal tax liabilities with Seller Online funds, accounting irregularities, and other financial transactions that materially affected the value of Syrykh's ownership interest.

93.     Plaintiffs further allege that Defendant Sprishen failed to disclose that Seller Online's books and records did not accurately reflect the company's true financial condition and that the proposed purchase price therefore rested upon materially incomplete and misleading financial information.

94.     Defendant Sprishen knew Plaintiffs would rely upon her advice because she had served as Seller Online's accountant since its formation, prepared the company's tax returns and financial records, advised its members concerning financial matters, and possessed knowledge unavailable to Plaintiffs.

95.     Plaintiffs reasonably relied upon Defendant Sprishen's professional advice, representations, and omissions in deciding to proceed with the transaction.

96.     On or about December 28, 2023, Plaintiffs executed the transaction in reliance upon Defendant Sprishen's advice and the financial information that she provided or withheld. See attached Exhibit "H."

97.     Plaintiffs would not have agreed to pay $700,000, would not have structured the transaction as proposed, and would not have proceeded without first conducting a comprehensive

18

financial review had Defendant Sprishen disclosed the material information that she allegedly concealed.

98.    As a direct and proximate result of Defendants' conduct, Plaintiffs paid substantial consideration for Syrykh's ownership interest without knowing Seller Online's true financial condition, assumed financial obligations they otherwise would not have accepted, incurred substantial professional fees to investigate the concealed misconduct, and sustained damages in an amount to be proven at trial.

99.    The fraudulent buyout accomplished Defendants' immediate objective of allowing Syrykh to withdraw from Seller Online after monetizing her ownership interest while substantially delaying Plaintiffs' discovery of the financial misconduct alleged throughout this Complaint.

### G.    Scheme Two: Fabricated Tax Reporting

100.    In support of the fraudulent buyout described above, Defendant Sprishen undertook a second scheme designed to conceal the financial misconduct by preparing, transmitting, or relying upon false or materially misleading accounting records and tax documents.

101.    As Seller Online's Certified Public Accountant, Defendant Sprishen exercised primary responsibility for preparing or supervising the preparation of Seller Online's partnership tax returns, Schedules K-1, supporting tax schedules, depreciation schedules, ownership allocations, and other accounting records upon which Plaintiffs necessarily relied.

102.    Defendant Sprishen knew those documents would not remain internal accounting records. Instead, Plaintiffs would rely upon them in preparing their personal income tax returns, evaluating Seller Online's financial condition, determining ownership interests, and assessing the financial consequences of the December 2023 buyout.

103.    Rather than accurately report Seller Online's financial affairs, Defendant Sprishen prepared, approved, transmitted, and caused to be transmitted tax documents that materially misrepresented Seller Online's financial condition and the transactions affecting its members.

104.    Among other things, Defendant Sprishen prepared or transmitted partnership tax documents that inaccurately reflected ownership interests, member distributions, loans, capital accounts, tax basis, and other material financial information affecting Seller Online and its members.

105.    Defendant Sprishen created and transmitted tax packages that purported to represent Seller Online's tax reporting while knowing that one or more of those documents had not been filed with the Internal Revenue Service or materially differed from the returns actually filed.

106.    Those discrepancies were not isolated clerical mistakes. Rather, the fabricated presented a financial history that concealed prior unauthorized transactions and prevented Plaintiffs from discovering the true disposition of Seller Online's funds.

107.    Defendant Sprishen prepared and approved Schedule K-1s and related tax schedules that failed to accurately report transactions affecting the members' capital accounts, ownership interests, taxable income, distributions, and tax obligations.

108.    Because Defendant Sprishen served as Seller Online's longtime accountant, Plaintiffs accepted those tax documents as authentic and reasonably believed that they accurately reflected the returns filed with taxing authorities and Seller Online's true financial condition.

109.    Plaintiffs relied upon those documents in preparing or causing the preparation of their personal income tax returns, evaluating Seller Online's finances, providing financial

documents in attempt to obtain a mortgage, responding to inquiries from taxing authorities, and attempting to understand the financial consequences of the buyout transaction.

110.    After a mortgage broker reviewed the company's financials, Plaintiffs were informed that the income calculations were not adding up and that the documents needed to be clarified before proceeding further with financing.

111.    As a result, Plaintiffs later retained independent accounting professionals to review Seller Online's financial records. During that review, they discovered numerous inconsistencies among Seller Online's accounting records, tax returns, IRS transcripts, Schedule K-1s, ownership records, and supporting financial documentation.

112.    Those inconsistencies revealed that multiple tax documents and accounting records could not be reconciled with one another or with the transactions that actually occurred.

113.    Those discrepancies delayed discovery of the underlying financial misconduct because the fabricated tax reporting created the appearance that Seller Online's financial records accurately documented the transactions at issue.

114.    Defendant Sprishen continued to rely upon those inaccurate tax records after questions arose concerning Seller Online's finances, thereby perpetuating the concealment of prior misconduct and impeding Plaintiffs' investigation.

115.    As a direct and proximate result of Defendant Sprishen's fabricated tax reporting, Plaintiffs incurred substantial professional fees, accounting expenses, additional tax preparation costs, delay damages, and other financial losses while attempting to reconstruct Seller Online's actual financial history.

116.    Plaintiffs further allege that the fabricated tax reporting formed an integral part of the broader fraudulent scheme because it supplied documentary support for transactions that

otherwise would have been readily identified as inconsistent with Seller Online's true financial condition.

**H.      Scheme Three: Concealment Through False Accounting Records**

117.    Defendant Sprishen carried out a third fraudulent scheme by creating, approving, maintaining, and relying upon false and misleading accounting records that concealed prior financial misconduct and prevented Plaintiffs from discovering the true financial condition of Seller Online.

118.    Throughout her engagement, Defendant Sprishen exercised substantial control over Seller Online's accounting system, including its general ledger, journal entries, balance sheets, capital account schedules, loan records, tax workpapers, and other accounting records used to prepare Seller Online's financial statements and tax returns.

119.    Defendant Sprishen knew those accounting records would become the authoritative source from which Seller Online's financial statements, tax returns, ownership records, and capital account balances would be prepared.

120.    Defendant Sprishen knowingly recorded, approved, or failed to correct accounting entries that materially mischaracterized the true nature of transactions involving Seller Online and its members.

121.    Among other things, Defendant Sprishen classified personal expenditures, transfers, loans, reimbursements, distributions, and tax payments in a manner that concealed their true economic substance and prevented Plaintiffs from understanding how Seller Online's funds had actually been used.

122.    Plaintiffs further allege that Defendant Sprishen maintained accounting records that inaccurately reflected member loans, capital contributions, member distributions, retained

earnings, and other financial transactions affecting Seller Online's value and the members' respective ownership interests.

123.  These accounting records created a false appearance that Seller Online's books accurately reflected the company's financial condition when, in fact, material transactions had been omitted, misclassified, or inaccurately recorded.

124.  Defendant Sprishen relied upon those same accounting records when preparing Seller Online's tax returns, financial statements, Schedule K-1s, and other financial reports, thereby embedding the alleged inaccuracies into multiple categories of financial documents.

125.  Defendant Sprishen continued to rely upon those accounting records after questions arose concerning Seller Online's finances, despite knowing that the records contained material inaccuracies affecting the company's financial condition and ownership transactions.

126.  Because Defendant Sprishen occupied the role of Seller Online's independent Certified Public Accountant, Plaintiffs reasonably believed that Seller Online's books and accounting records accurately reflected the company's financial affairs and reasonably relied upon those records in making business and financial decisions.

127.  Plaintiffs did not discover the extent of the alleged accounting irregularities until they retained independent professionals to reconstruct Seller Online's accounting records and compare those records against bank statements, tax filings, ownership documents, and other contemporaneous financial records.

128.  The accounting irregularities described above were not isolated bookkeeping mistakes or negligent accounting practices. Instead, Defendant Sprishen knowingly maintained those records for the purpose of concealing prior financial misconduct, legitimizing the

fraudulent buyout, and preventing Plaintiffs from discovering the true disposition of Seller Online's assets.

129.    As a direct and proximate result of Defendant Sprishen's conduct, Plaintiffs incurred substantial forensic accounting expenses, professional fees, additional tax preparation costs, litigation expenses, and other damages in amounts to be proven at trial.

130.    The false accounting records described in this section provided the foundation upon which the fraudulent buyout and fabricated tax reporting schemes depended. Without those false accounting records, the prior financial misconduct would have been readily discoverable through an ordinary review of Seller Online's books and records.

I.    **Summary of False and Misleading Accounting and Tax Documents**

131.    The following table identifies, to the extent presently known, the principal accounting and tax documents that contained materially false or misleading representations. Because many of the relevant accounting records, workpapers, electronic bookkeeping files, and communications remain in Defendants' possession or have not yet been produced, Plaintiffs expect that discovery will identify additional documents containing materially false or misleading representations. Plaintiffs reserve the right to amend or supplement this table as additional information becomes available.

| Document | Date Prepared or Sent | Representation Made | Why the Representation Was False | Resulting Harm |
|---|---|---|---|---|
| **Sale of Membership Interest Agreement** <br><br> **See attached Exhibit "H"** | December 28, 2023 | $700,000 represented fair consideration for Anna Syrykh's transfer of her remaining ownership interest (including the | Defendants concealed material information concerning Seller Online's true financial condition, prior misuse of company funds, and transactions materially affecting | Plaintiffs overpaid for Syrykh's ownership interest and depleted Seller Online's liquidity. |

| Document | Date Prepared or Sent | Representation Made | Why the Representation Was False | Resulting Harm |
|---|---|---|---|---|
| | | previously agreed 2% transfer). | the value of Syrykh's ownership interest. | |
| **Emails concerning the buyout transaction**<br><br>**See attached Exhibit "G"** | December 26–28, 2023 | The buyout was financially advantageous, urgent, and should proceed immediately; Seller Online funds could be used to finance the transaction. | Defendants omitted material financial information, discouraged independent legal and accounting advice, and created artificial urgency to induce Plaintiffs to execute the transaction. | Plaintiffs completed the transaction without conducting an independent investigation. |
| **2023 Schedule K-1 (Anna Syrykh)**<br><br>**See attached Exhibit "I"** | 2024 | Correctly reported Anna's ownership interest, capital account, guaranteed payments, distributions, and QBI information. | The K-1 contained internally inconsistent ownership, QBI, and income allocations that failed accurately to reflect Anna's ownership transition and financial activity. | Plaintiffs received inaccurate information regarding Seller Online's financial condition and Anna's compensation. |
| **2023 Schedule K-1 (Tetyana Shevchenko)**<br>**See attached Exhibit "J"** | 2024 | Correctly reported Shevchenko's ownership interest, capital account, guaranteed payments, and QBI allocations. | The K-1 improperly reduced Shevchenko's ownership percentage, incorrectly calculated QBI allocations, and contained inconsistent partner classifications. | Plaintiffs suffered inaccurate tax reporting and incorrect tax allocations. |
| **2023 Schedule K-1 (Vasyl Fursov)**<br><br>**See attached Exhibit "K"** | 2024 | Correctly reflected Fursov's ownership interest during 2023. | The K-1 incorrectly reported Fursov as owning 50% of Seller Online at both the beginning and end of the tax year despite acquiring only a 49% interest on December 28, 2023. | Plaintiffs received inaccurate ownership and tax reporting. |
| **2023 Form 1065 Partnership Return** | 2024 | Seller Online's partnership return accurately reflected ownership, | The return incorporated inaccurate ownership allocations and | Plaintiffs relied upon inaccurate partnership tax reporting and |

25

| Document | Date Prepared or Sent | Representation Made | Why the Representation Was False | Resulting Harm |
|---|---|---|---|---|
| **See attached Exhibits "I", "J" and "K"** | | allocations, and financial reporting. | financial information that did not accurately reflect Seller Online's true financial condition. | incurred substantial correction costs. |
| **2023 Form 1040-NR (Shevchenko)**<br><br>**See attached Exhibit "L"** | March 6, 2024 | Correctly reported Shevchenko's identifying information, filing status, and tax liability. | The return contained an incorrect Social Security number, incorrect filing status, and inflated tax liability despite Defendant's knowledge of the correct information. | Plaintiffs incurred IRS notices, penalties, interest, corrective filings, and professional expenses. |
| **2024 Estimated Tax Vouchers**<br><br>**See attached Exhibit "E"** | March 2024 | Correctly calculated estimated tax obligations. | The vouchers were generated from inaccurate tax calculations and incorrect identifying information, producing grossly inflated estimated tax obligations. | Plaintiffs lost the use of substantial funds and incurred additional accounting and legal expenses. |
| **2022 Forms 8804 and 8805**<br><br>**See attached Exhibit "M"** | 2023 | Correctly reported withholding under Internal Revenue Code § 1446 and accurately identified the taxpayer and reporting entity. | The forms simultaneously treated Shevchenko as both a domestic and foreign partner, misspelled her name, omitted or misstated identifying information, and referenced a different entity, preventing proper allocation of withholding credits. | Plaintiffs lost the benefit of approximately $322,313 in withholding tax credits and incurred additional tax liabilities and expenses. |
| **2023 Schedules K-1 transmitted to Plaintiffs**<br><br>**See attached Exhibit "N"** | 2024 | Represented that the Schedules K-1 accurately reflected Seller Online's 2023 tax reporting and had been or | IRS transcripts later demonstrated that no 2023 Schedules K-1 had been filed with the IRS, making the documents transmitted to | Plaintiffs relied upon inaccurate tax documents, delayed corrective action, and incurred additional |

| Document | Date Prepared or Sent | Representation Made | Why the Representation Was False | Resulting Harm |
|---|---|---|---|---|
| | | would be filed with the IRS. | Plaintiffs materially false or misleading. | accounting, legal, and tax compliance costs. |

## V.   SUBSTANTIVE COUNTS

132.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

133.   The following counts are pleaded in the alternative where appropriate. To the extent discovery establishes that Defendant's conduct was intentional, Plaintiffs seek recovery under the fraud-based counts. To the extent discovery establishes that particular acts resulted from professional negligence rather than intentional misconduct, Plaintiffs plead those claims in the alternative.

**Count I**
**Fraud (Intentional Misrepresentation)**
**Against All Defendants**

134.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

135.   At all times relevant to this action, Defendants served as Seller Online's Certified Public Accountant, tax preparer, and trusted financial advisor. Defendants possessed superior knowledge concerning Seller Online's finances, tax reporting, accounting records, ownership structure, and financial transactions.

136.   Plaintiffs reasonably relied upon Defendants' professional expertise, integrity, and independence when making significant financial and business decisions concerning Seller Online.

27

137.    As described throughout this Complaint, Defendants knowingly made numerous false representations of material fact to Plaintiffs, including, but not limited to, representations concerning:

    a.   the fairness of the proposed purchase of Anna Syrykh's ownership interest;

    b.   the value of Seller Online and Syrykh's membership interest;

    c.   the accuracy and completeness of Seller Online's accounting records;

    d.   the accuracy of Seller Online's tax reporting;

    e.   the accuracy of the Schedules K-1, partnership returns, and related tax documents prepared or transmitted by Defendants;

    f.   the financial consequences of the proposed buyout transaction;

    g.   the use of Seller Online funds to finance the buyout;

    h.   the urgency of completing the transaction without first obtaining independent legal or accounting advice; and

    i.   Defendants' impartiality and independence while advising Plaintiffs concerning the transaction.

138.    Defendants likewise omitted and concealed numerous material facts that they had a duty to disclose, including, but not limited to:

    a.   the diversion of Seller Online funds for Syrykh's personal benefit;

    b.   unauthorized loans, transfers, reimbursements, and payments made with company assets;

    c.   accounting irregularities affecting Seller Online's books and records;

    d.   material inaccuracies in Seller Online's tax reporting;

    e.   the true financial condition of Seller Online;

f.  the effect of the concealed financial transactions on the value of Syrykh's ownership interest; and

g.  Defendants' own role in preparing, transmitting, or maintaining inaccurate accounting and tax records.

139.  Defendants knew each of the foregoing representations was false when made, knew the omitted facts rendered their affirmative statements materially misleading, or acted with reckless disregard for the truth or falsity of those representations.

140.  Defendants made those representations and omissions knowingly and intentionally for the purpose of inducing Plaintiffs to rely upon them.

141.  Specifically, Defendants intended that Plaintiffs would:

a.  purchase Syrykh's ownership interest for $700,000;

b.  finance that purchase using Seller Online assets;

c.  refrain from conducting an independent review of Seller Online's books and records;

d.  refrain from retaining independent legal counsel or accounting professionals before completing the transaction;

e.  continue relying upon Defendants' accounting services; and

f.  delay discovering the financial misconduct alleged throughout this Complaint.

142.  Plaintiffs neither knew nor reasonably could have known that Defendants' representations were false or materially incomplete.

143.  Plaintiffs reasonably relied upon Defendants' representations because Defendants:

a.  had served as Seller Online's accountants since shortly after the company's formation;

29

b.  possessed exclusive or superior knowledge regarding Seller Online's accounting records, financial reporting, and tax filings;

c.  held themselves out as independent Certified Public Accountants acting in Seller Online's best interests;

d.  knew Plaintiffs lacked access to much of the underlying financial information; and

e.  repeatedly assured Plaintiffs that the proposed transaction and Seller Online's financial reporting accurately reflected the company's financial condition.

144.    In reasonable reliance upon Defendants' representations and omissions, Plaintiffs:

a.  agreed to purchase Syrykh's ownership interest;

b.  paid or caused approximately $700,000 to be paid as consideration for the ownership transfers;

c.  permitted Seller Online funds to finance portions of the transaction;

d.  accepted Defendants' accounting and tax reporting as accurate;

e.  delayed conducting an independent forensic review of Seller Online's finances; and

f.  refrained from taking other actions they otherwise would have taken to protect their financial interests.

145.    Had Defendants truthfully disclosed the material facts known to them, Plaintiffs would not have entered into the transaction on the agreed terms, would not have paid the agreed consideration, would not have relied upon Defendants' accounting and tax advice, and would have undertaken an immediate investigation of Seller Online's financial records.

146.   Defendants' intentional misrepresentations and material omissions directly and proximately caused Plaintiffs to suffer substantial damages, including, without limitation:

a.   the loss of approximately $700,000 paid in connection with the ownership transfers to the extent proven at trial;

b.   depletion of Seller Online's assets and liquidity;

c.   unnecessary federal and state tax liabilities, penalties, and interest;

d.   accounting, forensic accounting, and legal expenses incurred to reconstruct Seller Online's true financial condition;

e.   costs associated with correcting inaccurate tax filings and accounting records;

f.   lost business opportunities and loss of the use of company funds; and

g.   other compensatory damages in amounts to be determined at trial.

147.   Defendants acted knowingly, intentionally, maliciously, and with conscious disregard for Plaintiffs' rights. Their conduct was willful and undertaken for the purpose of enriching Syrykh and concealing the financial misconduct alleged throughout this Complaint. Plaintiffs therefore seek all damages recoverable under applicable law, including punitive damages to the extent permitted.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award:

A.   Compensatory damages in an amount to be determined at trial;

B.   Punitive damages as permitted by law;

C.   Prejudgment and post-judgment interest;

D.   Costs of suit and any recoverable attorney's fees;

E.   Such equitable relief as the Court deems appropriate; and

F.  Such other and further relief as the Court deems just and proper.

## Count II
### Fraudulent Concealment (Fraud by Omission)
### Against All Defendants

148.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

149.    At all relevant times, Defendants served as Seller Online's Certified Public Accountant, tax preparer, and trusted financial advisor. By virtue of that professional relationship, Defendants possessed material information concerning Seller Online's finances that was unavailable to Plaintiffs.

150.    Defendants occupied a position of trust and confidence with respect to Plaintiffs. Defendants therefore had a duty to disclose material facts necessary to ensure that their accounting advice, financial statements, tax reporting, and other representations were complete, accurate, and not misleading.

151.    Defendants also had a duty to disclose material facts that they knew Plaintiffs could not reasonably discover through the exercise of ordinary diligence because Defendants possessed exclusive or superior knowledge concerning Seller Online's accounting records, tax filings, banking activity, and financial transactions.

152.    Defendants intentionally failed to disclose material facts, including, but not limited to:

a.  the diversion of Seller Online funds for Syrykh's personal benefit;

b.  undisclosed loans, transfers, reimbursements, and payments made using Seller Online assets;

c.  material inaccuracies in Seller Online's accounting records;

  d. material inaccuracies in Seller Online's tax returns, Schedules K-1, and related tax reporting;

  e. facts materially affecting the value of Syrykh's ownership interest;

  f. the extent to which Seller Online's books and records allegedly failed to reflect the company's true financial condition;

  g. Defendants' own knowledge of accounting irregularities affecting Seller Online's financial records; and

  h. Defendants' alleged participation in preparing, transmitting, or maintaining false or misleading accounting and tax documents.

153. Defendants intentionally concealed those facts because they knew disclosure would likely have caused Plaintiffs to reject or substantially renegotiate the proposed buyout transaction, retain independent legal and accounting professionals, conduct a comprehensive review of Seller Online's financial records, and discover the financial misconduct alleged throughout this Complaint.

154. Defendants expected and intended that Plaintiffs would rely upon the absence of those disclosures in deciding whether to complete the buyout transaction and continue relying upon Defendants' accounting advice.

155. Plaintiffs reasonably relied upon Defendants' silence because Defendants occupied a position of trust, possessed superior knowledge of Seller Online's finances, and continued to advise Plaintiffs regarding the buyout transaction and Seller Online's tax and accounting matters.

156. Plaintiffs neither knew nor reasonably could have discovered the concealed information before completing the transaction because Defendants controlled or had access to the

relevant accounting records, tax workpapers, financial information, and supporting documentation.

157.   Defendants' concealment prevented Plaintiffs from discovering the true financial condition of Seller Online until Plaintiffs retained independent professionals to reconstruct the company's accounting records and compare those records with bank records, tax filings, and other financial documents.

158.   As a direct and proximate result of Defendants' intentional concealment of material facts, Plaintiffs entered into the buyout transaction under materially false assumptions, sustained substantial financial losses, incurred additional accounting, legal, forensic accounting, and tax preparation expenses, and suffered other damages in amounts to be proven at trial.

159.   Defendants acted knowingly, intentionally, and with the specific purpose of concealing material information from Plaintiffs in order to facilitate Syrykh's withdrawal from Seller Online, delay discovery of the underlying financial misconduct, and protect Defendants' own interests. Plaintiffs therefore seek all damages recoverable under applicable law, including punitive damages to the extent permitted.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally, and award:

   A.  Compensatory damages;

   B.  Punitive damages to the fullest extent permitted by law;

   C.  Prejudgment and post-judgment interest;

   D.  Costs of suit and any recoverable attorney's fees;

   E.  Such equitable relief as the Court deems appropriate; and

   F.  Such other and further relief as the Court deems just and proper.

## Count III
## Violation of RICO, 18 U.S.C. § 1962(c)
## Against All Defendants

160.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

161.    At all relevant times, Seller Online, LLC constituted an enterprise affecting interstate and foreign commerce within the meaning of 18 U.S.C. § 1961(4).

162.    Alternatively, an association-in-fact enterprise existed among Defendant Irina Sprishen, Defendant Irina Sprishen CPA, P.C., Anna Syrykh, and other persons known and unknown who associated together for the common purpose of enriching Syrykh, concealing prior financial misconduct, facilitating Syrykh's withdrawal from Seller Online, and preventing Plaintiffs from discovering the true disposition of Seller Online's assets.

163.    The enterprise functioned through ongoing relationships among its participants, each of whom performed distinct roles in carrying out the schemes alleged in this Complaint.

164.    Defendant Sprishen participated in the operation and management of the enterprise by providing professional accounting services, preparing and transmitting accounting and tax documents, advising Plaintiffs concerning the buyout transaction, communicating with Plaintiffs regarding financial matters, and using her position as Seller Online's accountant to lend credibility to the enterprise's activities.

165.    Defendant Sprishen knowingly conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

    a.    The pattern of racketeering activity included multiple related acts that shared the common purposes of:

    b.    inducing Plaintiffs to purchase Syrykh's ownership interest;

   c.   concealing prior financial misconduct;

   d.   disguising the diversion of Seller Online assets;

   e.   transmitting materially false or misleading financial information;

   f.   delaying discovery of the misconduct; and

   g.   enriching Syrykh and others at Plaintiffs' expense.

166.   The predicate acts included numerous uses of the United States mails and interstate wire communications to further the enterprise, including, to the extent established through discovery:

   a.   transmitting emails concerning the December 2023 buyout transaction;

   b.   transmitting purchase agreements and related transaction documents;

   c.   transmitting tax returns, Schedules K-1, tax packages, and related accounting records;

   d.   transmitting financial information concerning Seller Online's ownership interests and finances;

   e.   filing or transmitting tax documents affecting Plaintiffs' legal rights and financial obligations; and

   f.   other interstate communications identified through discovery.

167.   Each such communication furthered one or more of the fraudulent schemes described in this Complaint by transmitting materially false or misleading information, concealing material facts, or inducing Plaintiffs to rely upon Defendants' misrepresentations.

168.   The predicate acts were related to one another because they involved the same participants, pursued the same unlawful objectives, relied upon the same methods of deception, and victimized the same persons.

169.     The predicate acts also exhibited continuity because they occurred over an extended period, involved numerous separate communications and financial transactions, and formed part of Defendants' ongoing effort to conceal prior financial misconduct and protect the proceeds derived from that misconduct.

170.     Through their participation in the enterprise, Defendants acquired or maintained control over Seller Online's financial reporting, accounting records, tax reporting, and financial information, thereby enabling the enterprise to continue its fraudulent activities.

171.     As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiffs suffered injury to their business and property, including, without limitation:

a.   the payment of substantial consideration for Syrykh's ownership interest under materially false pretenses;

b.   depletion of Seller Online's assets;

c.   loss of business property and liquidity;

d.   forensic accounting, legal, and tax preparation expenses;

e.   costs associated with correcting inaccurate financial and tax records;

f.   lost business opportunities; and

g.   other financial losses to be established at trial.

172.     Plaintiffs have suffered injury to their business and property by reason of Defendants' racketeering activity and are therefore entitled to recover treble damages, costs, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

A.  Treble damages pursuant to 18 U.S.C. § 1964(c);

B.  Costs of suit;

C.  Reasonable attorney's fees as authorized by statute;

D.  Prejudgment and post-judgment interest;

E.  Such equitable relief as the Court deems appropriate; and

F.  Such other and further relief as the Court deems just and proper.

## Count IV
### RICO Conspiracy, 18 U.S.C. § 1962(d)
### Against All Defendants

173.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

174.    At all relevant times, Defendants knowingly agreed with Anna Syrykh and others known and unknown to conduct and participate in the affairs of the enterprise described in this Complaint through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

175.    Each participant understood the essential nature and objective of the conspiracy, namely to enrich Syrykh by inducing Plaintiffs to purchase her ownership interest while concealing material information concerning Seller Online's financial condition and prior financial misconduct.

176.    Defendants knowingly agreed that members of the conspiracy would commit multiple predicate acts of racketeering, including acts constituting mail fraud and wire fraud, to further the objectives of the enterprise.

177.    Defendants knowingly joined and participated in the conspiracy by, among other things:

    a.  coordinating the structure and timing of the December 2023 buyout transaction;

b.   preparing, reviewing, transmitting, or facilitating the transmission of documents and communications used to induce Plaintiffs to complete the transaction;

c.   preparing, approving, or transmitting accounting records and tax documents that concealed material financial information;

d.   advising Plaintiffs concerning the buyout while withholding material information concerning Seller Online's true financial condition;

e.   using interstate mail and wire communications to further the enterprise's objectives; and

f.   taking additional actions in furtherance of the conspiracy as discovery may reveal.

178.   The conspiracy continued through Defendants' preparation, transmission, and maintenance of accounting records, tax returns, Schedules K-1, and other financial documents that concealed the financial misconduct described in this Complaint and delayed its discovery.

179.   Defendants committed, or agreed that other members of the conspiracy would commit, overt acts in furtherance of the conspiracy, including the meetings, communications, document preparation, tax reporting, accounting services, and financial transactions described throughout this Complaint.

180.   Defendants knowingly participated in the conspiracy with the intent that the enterprise would accomplish its unlawful objectives and understood that other members of the conspiracy would commit predicate acts of racketeering to achieve those objectives.

181.   As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(d), Plaintiffs suffered injury to their business and property, including the financial losses, professional expenses, tax liabilities, investigative costs, and other damages described throughout this Complaint.

39

182.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the damages they sustained, together with the costs of this action, including reasonable attorney's fees, and such other relief as the law permits.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award:

A.  Treble damages pursuant to 18 U.S.C. §§ 1962(d) and 1964(c);

B.  Reasonable attorney's fees and costs;

C.  Prejudgment and post-judgment interest;

D.  Such equitable relief as the Court deems appropriate; and

E.  Such other and further relief as the Court deems just and proper.

**Count V**
**Professional Negligence & Accounting Malpractice**
**Against All Defendants**

183.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

184.    At all relevant times, Defendants provided professional accounting, tax preparation, bookkeeping, financial reporting, and advisory services to Seller Online and its members in exchange for compensation.

185.    By accepting that engagement, Defendants owed Plaintiffs a duty to exercise the degree of knowledge, skill, care, and diligence ordinarily exercised by reasonably prudent Certified Public Accountants practicing under similar circumstances.

186.    Defendants also owed Plaintiffs professional duties to prepare accurate accounting records and tax returns, maintain competent accounting practices, accurately classify

financial transactions, provide competent accounting advice, and disclose material accounting errors or irregularities discovered during the course of the engagement.

187. Defendants breached the applicable standard of professional care by, among other things:

a. preparing accounting records that failed accurately to reflect Seller Online's financial condition;

b. preparing or transmitting tax returns and related tax documents containing material inaccuracies;

c. preparing or transmitting inaccurate Schedules K-1;

d. failing to reconcile accounting records with the underlying financial transactions before issuing tax reporting;

e. failing to maintain accurate records concerning member ownership interests, capital accounts, loans, distributions, and related financial transactions;

f. providing accounting advice concerning the buyout transaction without exercising the degree of professional care required of a reasonably prudent Certified Public Accountant;

g. failing to disclose material accounting irregularities discovered during the engagement; and

h. otherwise failing to exercise the degree of professional competence required under applicable professional standards.

188. Independently of Plaintiffs' fraud claims, the foregoing conduct fell below the applicable standard of professional care for Certified Public Accountants.

189.    Defendants knew, or reasonably should have known, that Plaintiffs would rely upon their accounting services, financial reporting, tax preparation, and professional advice in managing Seller Online and making significant financial decisions.

190.    Plaintiffs reasonably relied upon Defendants' professional services and accounting advice throughout Defendants' engagement.

191.    As a direct and foreseeable result of Defendants' professional negligence, Plaintiffs sustained damages including, without limitation:

    a.    accounting expenses incurred to reconstruct Seller Online's financial records;

    b.    forensic accounting fees;

    c.    legal expenses incurred to investigate and correct Defendants' work;

    d.    expenses associated with correcting inaccurate tax returns and tax reporting;

    e.    unnecessary tax liabilities, penalties, and interest to the extent attributable to Defendants' professional negligence;

    f.    business losses resulting from reliance upon inaccurate financial information; and

    g.    other compensatory damages in amounts to be determined at trial.

192.    Plaintiffs seek recovery under this Count in the alternative to the fraud-based counts. To the extent the trier of fact determines that any portion of Defendants' conduct resulted from professional negligence rather than intentional fraud, Plaintiffs are entitled to recover all damages proximately caused by Defendants' breach of the applicable professional standard of care.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

A.  Compensatory damages;

B.  Prejudgment and post-judgment interest;

C.  Costs of suit;

D.  Such equitable relief as the Court deems appropriate; and

E.  Such other and further relief as the Court deems just and proper.

### Count VI
### Negligent Misrepresentation
### Against All Defendants

193.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

194.   Plaintiffs plead this Count in the alternative to Counts I and II. To the extent the trier of fact determines that Defendants did not intentionally misrepresent or conceal material facts, Plaintiffs allege that Defendants at a minimum negligently supplied false information in the course of their professional engagement.

195.   At all relevant times, Defendants supplied accounting services, tax preparation services, financial advice, bookkeeping services, and professional guidance to Seller Online and its members in the ordinary course of Defendants' business as Certified Public Accountants.

196.   Defendants knew that Plaintiffs would rely upon the financial information, accounting records, tax returns, Schedules K-1, and professional advice Defendants prepared and communicated in making significant business, tax, and financial decisions.

197.   Defendants supplied false or materially inaccurate information to Plaintiffs, including, but not limited to:

    a.   inaccurate accounting records;

    b.   inaccurate tax returns and amended tax returns;

    c.   inaccurate Schedules K-1;

    d.   inaccurate ownership and capital account information;

    e.   inaccurate advice concerning the financial consequences of the buyout transaction;

    f.   inaccurate information concerning the use of Seller Online funds in connection with the buyout;

    g.   inaccurate tax calculations and estimated tax obligations; and

    h.   other inaccurate financial information identified throughout this Complaint.

198.    Defendants failed to exercise reasonable care and competence in obtaining, verifying, preparing, reviewing, and communicating that information before providing it to Plaintiffs.

199.    Defendants knew, or reasonably should have known, that Plaintiffs would rely upon that information in deciding whether to complete the buyout transaction, prepare tax returns, manage Seller Online, evaluate the Company's financial condition, and make other significant financial decisions.

200.    Plaintiffs reasonably relied upon the information Defendants supplied because Defendants served as Seller Online's long-time Certified Public Accountants and possessed specialized knowledge concerning the Company's accounting records, tax reporting, ownership structure, and financial affairs.

201.    Plaintiffs' reliance was foreseeable to Defendants and fell squarely within the purpose for which Defendants prepared and communicated the information.

202.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs suffered damages including, without limitation:

    a.   overpayment for Syrykh's ownership interest to the extent proven at trial;

44

b. unnecessary tax liabilities, penalties, and interest;

c. accounting, forensic accounting, and tax preparation expenses;

d. legal expenses incurred to investigate and correct inaccurate accounting and tax

records;

e. business losses resulting from reliance upon inaccurate financial information;

f. loss of the use of company funds; and

g. other compensatory damages in amounts to be determined at trial.

203. Defendants' negligent misrepresentations substantially contributed to Plaintiffs'

financial losses, and Plaintiffs are entitled to recover all damages proximately caused by

Defendants' failure to exercise reasonable care in supplying professional accounting information.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and

against Defendants and award:

A. Compensatory damages;

B. Prejudgment and post-judgment interest;

C. Costs of suit;

D. Such equitable and legal relief as the Court deems appropriate; and

E. Such other and further relief as the Court deems just and proper.

### Count VII
### Breach of Fiduciary Duty
### Against All Defendants

204. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

205. At all relevant times, Defendants served as Seller Online's long-time Certified

Public Accountant, tax advisor, and financial advisor.

206.    Through that professional relationship, Defendants accepted Plaintiffs' trust and confidence and acquired extensive knowledge concerning Seller Online's finances, accounting records, ownership structure, tax reporting, banking activity, and internal financial affairs.

207.    Plaintiffs reasonably relied upon Defendants not merely to perform ministerial accounting services, but to exercise independent professional judgment, provide honest financial advice, accurately report Seller Online's financial condition, disclose material financial information, and act with the utmost good faith in matters affecting Plaintiffs' financial interests.

208.    By accepting that position of trust and confidence, Defendants owed fiduciary duties to Plaintiffs, including duties of loyalty, honesty, candor, full disclosure of material information, avoidance of conflicts of interest, and the duty to place Plaintiffs' interests ahead of Defendants' own interests when providing professional accounting advice.

209.    Defendants breached those fiduciary duties by, among other things:

a.    placing the financial interests of Anna Syrykh ahead of the interests of Seller Online and Plaintiffs;

b.    participating in or facilitating the buyout transaction while withholding material financial information from Plaintiffs;

c.    failing to disclose material accounting irregularities known to Defendants;

d.    preparing, approving, transmitting, or relying upon materially inaccurate accounting records and tax documents;

e.    providing accounting advice while laboring under undisclosed conflicts of interest;

f.    failing to exercise independent professional judgment in advising Plaintiffs concerning the buyout transaction;

g.   failing to disclose facts materially affecting the value of Syrykh's ownership interest and Seller Online's financial condition; and

h.   otherwise acting in Defendants' own interests and the interests of Syrykh rather than in the interests of Plaintiffs.

210.   Defendants further breached their fiduciary duties by continuing to advise Plaintiffs concerning Seller Online's finances after Defendants' interests had become materially adverse to those of Plaintiffs.

211.   Defendants knew that Plaintiffs trusted Defendants' professional judgment and would continue to rely upon Defendants' advice in managing Seller Online, completing the buyout transaction, and evaluating the Company's financial condition.

212.   Plaintiffs reasonably relied upon Defendants' loyalty, honesty, independence, and professional judgment throughout Defendants' engagement.

213.   Defendants' breaches of fiduciary duty enabled Syrykh to complete the buyout transaction without disclosing material information concerning Seller Online's true financial condition, delayed Plaintiffs' discovery of the financial misconduct alleged throughout this Complaint and permitted inaccurate accounting and tax reporting to continue after the transaction closed.

214.   As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs sustained substantial damages, including, without limitation:

a.   the payment of substantial consideration for Syrykh's ownership interest under materially misleading circumstances;

b.   depletion of Seller Online's assets and working capital;

47

    c.   accounting, forensic accounting, tax preparation, and legal expenses incurred to investigate and reconstruct Seller Online's financial records;

    d.   unnecessary tax liabilities, penalties, and interest;

    e.   loss of business opportunities and the use of company funds; and

    f.   other compensatory damages to be determined at trial.

215.    Defendants' breaches of fiduciary duty were willful, knowing, and in conscious disregard of Plaintiffs' rights and financial interests. Plaintiffs are therefore entitled to recover all damages and equitable relief authorized by applicable law.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

A.  Compensatory damages;

B.  Disgorgement of all compensation, fees, and other benefits Defendants received in connection with the conduct alleged in this Complaint, to the extent permitted by applicable law;

C.  Prejudgment and post-judgment interest;

D.  Costs of suit and any recoverable attorney's fees;

E.  Such equitable relief as the Court deems appropriate; and

F.  Such other and further relief as the Court deems just and proper.

**Count VIII**
**Civil Conspiracy**
**Against All Defendants**

216.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

217. At all relevant times, Defendant Irina Sprishen, Defendant Irina Sprishen CPA, P.C., Anna Syrykh, and others acting in concert knowingly agreed to accomplish one or more unlawful objectives through unlawful means.

218. The common purpose of the conspiracy included:

   a. concealing the true financial condition of Seller Online;

   b. concealing Syrykh's prior misuse of Seller Online assets;

   c. inducing Plaintiffs to purchase Syrykh's ownership interest through materially false and misleading representations and omissions;

   d. delaying Plaintiffs' discovery of the underlying financial misconduct; and

   e. enriching Syrykh and others at Plaintiffs' expense.

219. Defendants knowingly joined that agreement and intentionally participated in carrying out its objectives.

220. In furtherance of the conspiracy, Defendants committed numerous overt acts, including, but not limited to:

   a. coordinating the timing and structure of the December 2023 ownership transfers;

   b. arranging and participating in meetings concerning the proposed buyout;

   c. preparing, reviewing, revising, transmitting, or facilitating the execution of documents relating to the buyout transaction;

   d. providing accounting and financial advice intended to induce Plaintiffs to complete the transaction;

   e. preparing, approving, transmitting, or maintaining materially false or misleading accounting records, tax returns, Schedules K-1, and related financial documents;

   f. concealing material financial information from Plaintiffs;

49

g.  using mail, electronic communications, and other interstate communications to advance the objectives of the conspiracy; and

h.  taking additional actions in furtherance of the conspiracy as described throughout this Complaint.

221.    Defendants knew that the acts undertaken in furtherance of the conspiracy would induce Plaintiffs to rely upon materially incomplete or inaccurate financial information and would delay discovery of the financial misconduct described in this Complaint.

222.    Defendants acted in concert throughout the period relevant to this action. Their conduct was coordinated, mutually reinforcing, and directed toward accomplishing the common objectives described above.

223.    As a direct and foreseeable result of the conspiracy, Plaintiffs entered into the buyout transaction without knowledge of material facts, relied upon inaccurate accounting and tax information, incurred substantial accounting, forensic accounting, legal, and tax-related expenses, and sustained the additional damages described throughout this Complaint.

224.    Each conspirator is jointly and severally liable for the acts of every other conspirator committed in furtherance of the conspiracy and for all damages proximately resulting from those acts.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, and award:

A.  Compensatory damages;

B.  Punitive damages to the extent authorized by applicable law;

C.  Prejudgment and post-judgment interest;

D.  Costs of suit and any recoverable attorney's fees;

E.  Such equitable relief as the Court deems appropriate; and

F.  Such other and further relief as the Court deems just and proper.

**Count IX**
**Breach of Contract**
**Against All Defendants**

225.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

226.    At all relevant times, Seller Online entered into one or more agreements with Defendants under which Defendants agreed to provide professional accounting, bookkeeping, tax preparation, financial reporting, and related advisory services to Seller Online and its members in exchange for compensation.

227.    The agreement, whether written, oral, implied-in-fact, or consisting of a series of engagement agreements and continuing professional services, required Defendants to perform those services in accordance with the terms of the parties' agreement and the standards ordinarily expected of Certified Public Accountants.

228.    Among other obligations, Defendants agreed to:

a.  maintain accurate accounting records for Seller Online;

b.  prepare accurate tax returns and related tax documents;

c.  accurately report ownership interests, capital accounts, member distributions, and other financial information;

d.  provide competent and accurate accounting advice;

e.  exercise independent professional judgment in performing accounting services; and

f.  perform the agreed accounting and tax services in a competent, honest, and professional manner.

51

229. Plaintiffs fully performed their obligations under the parties' agreement, including paying Defendants for the accounting and tax services Defendants provided, or Plaintiffs' performance was excused.

230. Defendants materially breached the agreement by, among other things:

a. failing to prepare accurate accounting records;

b. preparing or transmitting inaccurate tax returns, Schedules K-1, and related tax documents;

c. failing accurately to record material financial transactions;

d. providing inaccurate accounting advice concerning the buyout transaction;

e. failing to disclose material accounting irregularities affecting Seller Online's financial condition;

f. failing to exercise independent professional judgment as required by the engagement; and

g. otherwise failing to perform the accounting services required by the parties' agreement.

231. Defendants' breaches deprived Plaintiffs of the benefit of their bargain by causing Plaintiffs to receive accounting and tax services that materially failed to conform to the parties' agreement.

232. As a direct and proximate result of Defendants' breaches, Plaintiffs suffered damages including, without limitation:

a. amounts paid to Defendants for accounting and tax services that were not performed in accordance with the parties' agreement;

b.   accounting, forensic accounting, legal, and tax preparation expenses incurred to investigate and correct Defendants' work;

c.   unnecessary tax liabilities, penalties, and interest attributable to Defendants' breaches;

d.   business losses resulting from inaccurate accounting records and financial reporting; and

e.   other compensatory damages to be determined at trial.

233.    Plaintiffs have satisfied all conditions precedent to bringing this action or such conditions have been waived or excused.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

A.   Compensatory damages for Defendants' breach of contract;

B.   Prejudgment and post-judgment interest;

C.   Costs of suit;

D.   Such equitable relief as the Court deems appropriate; and

E.   Such other and further relief as the Court deems just and proper.

**Count X**
**Unjust Enrichment**
**Against All Defendants**

234.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

235.    Plaintiffs plead this Count in the alternative to Count IX and any other claim based upon the existence of an enforceable contract.

236.    At all relevant times, Plaintiffs paid Defendants substantial sums of money in exchange for professional accounting, bookkeeping, tax preparation, financial reporting, and advisory services.

237.    Defendants knowingly accepted and retained those payments and the financial benefits associated with their professional engagement by Seller Online and its members.

238.    In addition to the fees paid directly to Defendants, Defendants received the benefit of a continuing professional relationship with Seller Online, including additional compensated accounting and tax services arising from that engagement.

239.    Defendants failed to provide the honest, competent, independent, and accurate accounting services for which Plaintiffs retained and compensated them.

240.    Instead, Defendants provided accounting and tax services that, as alleged throughout this Complaint, contained material inaccuracies, failed to disclose material financial information, and conferred substantial benefits upon Anna Syrykh at Plaintiffs' expense.

241.    Defendants retained compensation and other financial benefits despite failing to provide the value of the professional services for which Plaintiffs paid.

242.    Under these circumstances, it would be inequitable and unjust for Defendants to retain the compensation and benefits they received from Plaintiffs without making restitution.

243.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs sustained damages including, without limitation:

a.    professional fees paid to Defendants for accounting and tax services that failed to provide the benefit for which Plaintiffs bargained;

b.    accounting, forensic accounting, tax preparation, and legal expenses incurred to investigate and correct Defendants' work;

c.  business losses resulting from Defendants' conduct; and

d.  other damages to be proven at trial.

244.    To the extent the Court determines that no enforceable contract governs some or all of the services at issue, equity requires that Defendants disgorge and restore the benefits they unjustly retained.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award:

A.  Restitution of all amounts by which Defendants were unjustly enriched;

B.  Disgorgement of all compensation, fees, and other financial benefits unjustly retained by Defendants;

C.  Prejudgment and post-judgment interest;

D.  Costs of suit;

E.  Such other equitable relief as the Court deems appropriate; and

F.  Such other and further relief as the Court deems just and proper.

**Count XI**
**Declaratory Relief and Accounting**
**Against All Defendants**

245.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

246.    An actual and justiciable controversy exists between Plaintiffs and Defendants concerning the accuracy, completeness, and integrity of Seller Online's accounting records, financial statements, tax returns, ownership records, and related financial documentation.

247.    Plaintiffs contend that numerous accounting records and tax documents prepared, maintained, or transmitted by Defendants contain material inaccuracies, omissions,

55

inconsistencies, or misrepresentations. Defendants have denied liability and have maintained that their accounting services and financial reporting were proper.

248. Because Defendants controlled or had access to substantial portions of Seller Online's accounting records during the relevant period, Plaintiffs cannot fully determine the extent of the financial misconduct alleged in this Complaint without a complete accounting of Seller Online's financial affairs.

249. The ordinary review of the documents presently available to Plaintiffs has proven insufficient to reconcile the Company's ownership records, accounting records, tax reporting, banking activity, capital accounts, and financial transactions.

250. Equity therefore requires a complete accounting of Seller Online's financial affairs during the period relevant to this action.

251. Plaintiffs request that the Court declare the respective rights and obligations of the parties with respect to the accounting records, tax reporting, ownership records, and financial transactions described throughout this Complaint.

252. Plaintiffs further request that the Court order Defendants to produce a complete accounting, including all non-privileged books, records, and electronically stored information relating to Seller Online's accounting and tax services, including, to the extent within Defendants' possession, custody, or control:

   a. general ledgers;

   b. journals and journal entries;

   c. QuickBooks or other accounting software files, including audit logs and metadata to the extent maintained in the ordinary course of business;

   d. tax workpapers;

e. partnership tax returns and all draft and final versions thereof;

f. Schedules K-1 and supporting calculations;

g. capital account schedules and ownership allocation schedules;

h. depreciation schedules and fixed asset schedules;

i. bank reconciliations;

j. adjusting journal entries;

k. communications concerning the preparation or revision of tax returns and accounting records;

l. electronic filing confirmations and records reflecting the filing or non-filing of tax returns and related schedules;

m. engagement letters, billing records, and other documents describing the scope of Defendants' professional services; and

n. any other non-privileged accounting records necessary to reconstruct Seller Online's financial history.

253. Plaintiffs further request that Defendants identify each accounting record, tax return, Schedule K-1, financial statement, or other document that Defendants contend accurately reflects Seller Online's financial condition during the relevant period and identify any corrections, amendments, superseding documents, or withdrawals made after the documents were originally prepared or transmitted.

254. Plaintiffs have no adequate remedy at law to obtain a complete reconstruction of Seller Online's financial history because the accounting records necessary to reconcile the disputed transactions remain, in substantial part, within Defendants' possession, custody, or control or were created by Defendants in the course of their professional engagement.

255.    The declaratory and equitable relief requested in this Count will materially assist in resolving the parties' dispute, determining the extent of Plaintiffs' damages, identifying any additional financial misconduct, and preventing further reliance upon inaccurate accounting and tax records.

**WHEREFORE,** Plaintiffs respectfully request that the Court:

A.  Declare the rights and obligations of the parties with respect to the accounting, tax preparation, and financial reporting services described in this Complaint;

B.  Order Defendants to render a full accounting of Seller Online's financial affairs during the relevant period;

C.  Order Defendants to produce all non-privileged accounting records, tax records, workpapers, electronically stored information, and related documents identified above that are within their possession, custody, or control;

D.  Declare which accounting records and tax documents accurately reflect Seller Online's financial condition, if any, and identify those requiring correction or amendment;

E.  Award Plaintiffs the costs associated with obtaining the accounting and declaratory relief requested herein;

F.  Retain jurisdiction to enforce any declaratory or equitable relief granted by the Court; and

G.  Grant such other and further legal or equitable relief as the Court deems just and proper.

Date: July 17, 2026                     Respectfully submitted,

**Law Office of Lilian Perelshteyn, PLLC**

By: /s/ Lilian Perelshteyn
Lilian Perelshteyn, Esq.
Pa Bar No. 93926
 1800 Byberry Road, Suite 820
Huntingdon Valley, PA 19006
Tel. (215) 305-8800
Fax (215) 599-2927
lilian@lilianlaw.com
*Attorney for Plaintiffs*

# EXHIBIT A

| Entity# : 6838223 |
| Date Filed : 02/14/2019 |
| Pennsylvania Department of State |

## PENNSYLVANIA DEPARTMENT OF STATE
## BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS

☐ Return document by mail to:

IRINA SPRISHEN
_Name_
101 E PA BLVD.
_Address_
FEASTERVILLE        PA              19053
_City_            _State_          _Zip Code_

☐ Return document by email to: _____

### Certificate of Organization Domestic Limited Liability Company
DSCB:15-8821(rev. 2/2017)

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

8821

Read all instructions prior to completing. This form may be submitted online at https://www.corporations.pa.gov .

**Fee: $125.00**        ☐ I qualify for a veteran/reservist-owned small business fee exemption (see instructions)

In compliance with the requirements of 15 Pa.C.S. § 8821 (relating to certificate of organization), the undersigned desiring to organize a limited liability company, hereby certifies that:

1. The name of the limited liability company (designator is required, i.e., "company", "limited" or "limited liability company" or abbreviation):
   **Seller Online LLC**

2. *Complete part (a) or (b) – not both:*

   (a) The address of the limited liability company's initial registered office in this Commonwealth is:

   *(post office box alone is not acceptable)*

   | 102 E Pennsylvania Blvd | Feasterville | PA | 19053 | Bucks |
   | --- | --- | --- | --- | --- |
   | Number and Street | City | State | Zip | County |

   (b) name of its commercial registered office provider and the county of venue is:

   c/o: _____

   | Name of Commercial Registered Office Provider | County |
   | --- | --- |

3. The name of each organizer is (all organizers must sign on page 2):

   | Name | Address |
   | --- | --- |
   | Tetyana Shevchenko | 2820 Old Lincoln Highway , Unit 1A , Trevose , PA , United States , 19053 |
   | Anna Syrykh | 2820 Old Lincoln Highway , Unit 1A , Trevose , PA , United States , 19053 |

4. Effective date of Statement of Registration (check, and if appropriate complete, one of the following):

   ☒ The Certification of organization shall be effective upon filing in the Dept of State.

   ☐ The Certification of organization shall be effective _____ at _____
   on:
                                         Date(MM/DD/YYYY)          Hour (if any)

**PENN File: February 14, 2019**

DSCB: 15-8821-2

5.   **Restricted professional companies only.**

*Check the box if the limited liability company is organized to render a restricted professional service and check the type of restricted professional service(s).*

☐ The company is a restricted professional company organized to render the following restricted professional service(s):

☐ Chiropractic

☐ Dentistry

☐ Law

☐ Medicine and surgery

☐ Optometry

☐ Osteopathic medicine and surgery

☐ Podiatric medicine

☐ Public accounting

☐ Psychology

☐ Veterinary medicine

6.   **Benefit companies only.**

*Check the box immediately below if the limited liability company is organized as a benefit company:*

☐ This limited liability company shall have the purpose of creating general public benefit

*Optional specific public benefit purpose. Check the box immediately below if the benefit company is organized to have one or more specific public benefits and supply the specific public benefit(s). See instructions for examples of specific public benefit.*

☐ This limited liability company shall have the purpose of creating the enumerated specific public benefit(s):

_____

_____

_____

7.   For additional provisions of the certificate, if any, attach an 8½ x 11 sheet.

IN TESTIMONY WHEREOF, the organizer(s) has (have) signed this Certificate of Organization this 14 day of February, 2019.

Tetyana Shevchenko  
Signature

Anna Syrykh  
Signature

Seller Online LLC,  
Trevose, PA  
SEAL  
EIN 83-3578585

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF STATE

03/07/2019

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING:

I DO HEREBY CERTIFY THAT,

Seller Online LLC

is duly registered as a Pennsylvania Limited Liability Company under the laws of the Commonwealth of Pennsylvania and remains subsisting so far as the records of this office show, as of the date herein.

I DO FURTHER CERTIFY THAT this Subsistence Certificate shall not imply that all fees, taxes and penalties owed to the Commonwealth of Pennsylvania are paid.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the Secretary's Office to be affixed, the day and year above written

Acting Secretary of the Commonwealth

Certification Number: TSC190307222499-1

Verify this certificate online at http://www.corporations.pa.gov/orders/verify

# EXHIBIT B

Entity# :6948184
Date Filed : 09/13/2019
Effective Date : 09/16/2019
Pennsylvania Department of State

**PENNSYLVANIA DEPARTMENT OF STATE**
**BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS**

☐ Return document by mail to:

IRINA SPRISHEN

Name
101 E PA BLVD,

Address
FEASTERVILLE        PA        19053

City                State      Zip Code

☐ Return document by email to: _____

**Articles of Incorporation-For Profit**
DSCB: 15-1306/2102/2303/2702/2903/3101/3303/7102
(rev.2/2017)

**01236**

Read all instructions prior to completing. This form may be submitted online at https://www.corporations.pa.gov/.

**Fee: $125.00**        ☐ I qualify for a veteran/reservist-owned small business fee exemption (see instructions)

Check only one:    ☒ Business-stock (§ 1306)          ☐ Management (§ 2703)
                   ☐ Business-nonstock (§ 2102)        ☐ Professional (§ 2903)
                   ☐ Business-statutory close (§ 2303) ☐ Insurance (§ 3101)
                   ☐ Cooperative (§ 7102)              ☐ Benefit (§ 3303)

In compliance with the requirements of the applicable provisions (relating to corporations and unincorporated associations), the undersigned, desiring to incorporate a corporation for profit, hereby states that:

1.  The name of the corporation (corporate designator required, i.e., "corporation," "incorporated," "limited," "company," or any abbreviation thereof. "Professional corporation" or "P.C." permitted for professional corporations):

    **Atlantic Logistic Solutions Inc**

2.  Complete part (a) or (b) – not both:

    (a) The address of this corporation's proposed registered office in this Commonwealth is:    (post office box alone is not acceptable)

    | 102 E Pennsylvania Blvd, | Feasterville | PA | 19053 | Bucks |
    | --- | --- | --- | --- | --- |
    | Number and Street | City | State | Zip | County |

    (b)  The name of this corporation's commercial registered office provider and the county of venue is:

    c/o: _____

    | Name of Commercial Registered Office Provider | County |
    | --- | --- |

3.  The corporation is incorporated under the provisions of the Business Corporation Law of 1988.

4.  Check and complete one:

    ☐ The corporation is organized on a nonstock basis.

    ☒ The corporation is organized on a stock share basis and the aggregate number of shares authorized is: __100__

PENN File: September 13, 2019

DSCB: 15-1306/2102/2303/2702/2903/3101/3303/7102-2

5. The name and address, including number and street, if any, of each incorporator (all incorporators must sign below):

| Name | Address |
|------|---------|
| Oksana Kuznietsova | 2369 Paris Ave , Trevose , Bucks , PA , United States , 19053 |

6. The specified effective date, if any is:    09/16/2019 12:00 AM    .

  month/day/year    hour, if any

7. Additional provisions of the articles, if any, attach an 8½ by 11 sheet.

8. *Statutory close corporation only:* Neither the corporation nor any shareholder shall make an offering of any of its shares of any class that would constitute a "public offering" within the meaning of the Securities Act of 1933 (15 U.S.C. § 77a et seq.)

9. *For Cooperative Corporation Only.*
   *Check and complete one:*

   The corporation is a cooperative corporation and the common bond of membership among its members is:

   _____

   The corporation is a cooperative corporation and the common bond of membership among its shareholders is:

   _____

10. *Benefit corporations only:* This corporation shall have the purpose of creating general public benefit.

   Strike out if inapplicable: ~~This corporation shall have the purpose of creating the enumerated specific public benefit(s):~~

IN TESTIMONY WHEREOF, the incorporator(s) has/have signed these Articles of Incorporation this

13    day of  September  ,  2019  .

Oksana Kuznietsova
Signature

# EXHIBIT C

 **Citizens**™

US002 | BR389
ROP 450
P.O. Box 7000
Providence, RI 02940

# Commercial Account Statement

**Page 1 of 7**

Beginning January 10, 2024
through January 31, 2024

## Questions? Contact us today:

SELLER ONLINE LLC
635 SOMERS AVE
FEASTERVILLE TREVOSE PA  19053-3450

 **CALL:**
Commercial Account Customer Service
1-800-862-6200

 **VISIT:**
Access your account online:
citizensbank.com

 **MAIL:**
Citizens
Customer Service Center
P.O. Box 42001
Providence, RI 02940-2001

**New year, new card.**
Citizens and Mastercard® are partnering up! We'll let you know when to check your mailbox for your new Debit/ATM card. You'll love the innovative notch design, making it easier to find in your wallet when you need it, and the fact it's 90% recycled plastic.

Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated.

**SELLER ONLINE LLC**
**Clearly Better Business Checking**
**XXXXXX-339-8**

## Clearly Better Business Checking for XXXXXX-339-8

### Balance Calculation

| | | |
|---|---|---:|
| Previous Balance | | .00 |
| Checks | - | .00 |
| Debits | - | 1,325,904.56 |
| Deposits & Credit | + | 1,803,994.19 |
| **Current Balance** | **=** | **478,089.63** |

As a Clearly Better Business Checking customer, you do not pay a monthly maintenance fee. We appreciate your continued business.

Your next statement period will end on February 29, 2024.

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### TRANSACTION DETAILS FOR BUSINESS CHECKING ACCOUNT ENDING 339-8

| Debits ** | | | Previous Balance |
|---|---|---|---|
| **May include checks that have been processed electronically by the payee/merchant.* | | | .00 |
| Date | Amount | Description | Total Debits |

| | | | | |
|---|---|---|---|---|
| **ATM/Purchases** | | | - | **1,325,904.56** |
| 01/22 | 29.93 | 1825 DBT PURCHASE - 000000 DHL EXPRESS US WESTON FL | | |
| 01/22 | 19.54 | 1825 DBT PURCHASE - 000000 DHL EXPRESS US WESTON FL | | |
| 01/23 | 18.93 | 1825 DBT PURCHASE - 000000 DHL EXPRESS US WESTON FL | | |
| 01/23 | 41.93 | 1825 DBT PURCHASE - 000000 DHL EXPRESS US WESTON FL | | |
| 01/23 | 18.75 | 1825 DBT PURCHASE - 000000 DHL EXPRESS US WESTON FL | | |

**Other Debits**

| Date | Amount | Description |
|---|---|---|
| 01/17 | 114.86 | DELUXE BUS SYS. BUS PRODS 240116 15638898 |
| 01/17 | 18.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/22 | 6,000.00 | ONLINE TRANSFER TO CHECKING 6313253950 |
| 01/22 | 20,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240122006033) |
| 01/22 | 50,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240122006475) |
| 01/22 | 50,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240122007260) |
| 01/22 | 169.52 | DHL EXPRESS ECHECKPAY 240121 156n92t |
| 01/22 | 65.46 | DHL EXPRESS ECHECKPAY 240120 1550isb |
| 01/22 | 64.41 | DHL EXPRESS ECHECKPAY 240120 1550iuk |
| 01/22 | 62.88 | DHL EXPRESS ECHECKPAY 240120 1550iyz |
| 01/22 | 47.91 | DHL EXPRESS ECHECKPAY 240121 156n975 |
| 01/22 | 47.57 | DHL EXPRESS ECHECKPAY 240120 1550it5 |
| 01/22 | 46.77 | DHL EXPRESS ECHECKPAY 240121 156n93w |
| 01/22 | 44.67 | DHL EXPRESS ECHECKPAY 240120 1550j2k |
| 01/22 | 41.93 | DHL EXPRESS ECHECKPAY 240121 156n93b |
| 01/22 | 36.27 | DHL EXPRESS ECHECKPAY 240120 1550iqe |
| 01/22 | 34.23 | DHL EXPRESS ECHECKPAY 240120 1550j4t |
| 01/22 | 32.35 | DHL EXPRESS ECHECKPAY 240121 156n95z |
| 01/22 | 31.71 | DHL EXPRESS ECHECKPAY 240121 156n922 |
| 01/22 | 31.45 | DHL EXPRESS ECHECKPAY 240120 1550ir8 |
| 01/22 | 30.24 | DHL EXPRESS ECHECKPAY 240120 1550iwq |
| 01/22 | 28.75 | DHL EXPRESS ECHECKPAY 240120 1550irt |
| 01/22 | 27.95 | DHL EXPRESS ECHECKPAY 240121 156n965 |
| 01/22 | 25.95 | DHL EXPRESS ECHECKPAY 240120 1550j3k |
| 01/22 | 25.13 | DHL EXPRESS ECHECKPAY 240121 156n96w |
| 01/22 | 24.93 | DHL EXPRESS ECHECKPAY 240120 1550j18 |
| 01/22 | 24.63 | DHL EXPRESS ECHECKPAY 240120 1550iw2 |
| 01/22 | 23.43 | DHL EXPRESS ECHECKPAY 240120 1550izq |
| 01/22 | 22.11 | DHL EXPRESS ECHECKPAY 240120 1550ive |
| 01/22 | 22.11 | DHL EXPRESS ECHECKPAY 240120 1550ixb |
| 01/22 | 21.79 | DHL EXPRESS ECHECKPAY 240121 156n97q |
| 01/22 | 21.27 | DHL EXPRESS ECHECKPAY 240121 156n952 |

Member FDIC ⌂ Equal Housing Lender

# ✖✖ Citizens™

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Debits (Continued) **
**May include checks that have been processed electronically by the payee/merchant.*

#### Other Debits (Continued)

| Date | Amount | Description |
|---|---|---|
| 01/22 | 21.08 | DHL EXPRESS ECHECKPAY 240121 156n91n |
| 01/22 | 20.67 | DHL EXPRESS ECHECKPAY 240120 1550j1w |
| 01/22 | 20.00 | DHL EXPRESS ECHECKPAY 240121 156n96h |
| 01/22 | 19.59 | DHL EXPRESS ECHECKPAY 240120 1550j5z |
| 01/22 | 19.59 | DHL EXPRESS ECHECKPAY 240121 156n94n |
| 01/22 | 19.05 | DHL EXPRESS ECHECKPAY 240120 1550j5b |
| 01/22 | 19.04 | DHL EXPRESS ECHECKPAY 240121 156n94h |
| 01/22 | 18.87 | DHL EXPRESS ECHECKPAY 240120 1550iy2 |
| 01/22 | 18.73 | DHL EXPRESS ECHECKPAY 240121 156n92b |
| 01/22 | 18.72 | DHL EXPRESS ECHECKPAY 240121 156n95e |
| 01/22 | .76 | USPS ACCTVERIFY 2595749596 012224 2RZRLEODNEGPNN9 |
| 01/22 | .33 | USPS ACCTVERIFY 2595749034 012224 2RZRLEOAC360ERC |
| 01/22 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/22 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/22 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/23 | 2,071.27 | AMEX EPAYMENT ACH PMT 240123 W8346 |
| 01/23 | 53.96 | DHL EXPRESS ECHECKPAY 240122 157t5zn |
| 01/23 | 51.87 | DHL EXPRESS ECHECKPAY 240122 157t5zz |
| 01/23 | 24.20 | DHL EXPRESS ECHECKPAY 240122 157t60q |
| 01/23 | .67 | Bento Technologi ACCTVERIFY 240123 016XNKQIA380JNM |
| 01/23 | .53 | USPS ACCTVERIFY 2596131896 012324 2RZY4CAA3SI69H0 |
| 01/23 | .04 | USPS ACCTVERIFY 2596131894 012324 2RZY4C9Y8ER9UMO |
| 01/24 | 20,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240124006044) |
| 01/24 | 50,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240124006443) |
| 01/24 | 100,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240124006828) |
| 01/24 | 2,957.49 | USPS1000021070 2597671978 012424 2S0HU96S4F5KV78 |
| 01/24 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/24 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/24 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 01/25 | 20,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240125004380) |
| 01/25 | 70,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240125004650) |
| 01/25 | 600,000.00 | ONLINE TRANSFER TO CHECKING 6321093304 |
| 01/25 | 2,894.81 | USPS1000021070 2598280249 012524 2S0OEVA70405Y7U |
| 01/25 | 1,244.69 | AMEX EPAYMENT ACH PMT 240125 W6942 |
| 01/25 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

**Debits (Continued) \*\***
*\*\*May include checks that have been processed electronically by the payee/merchant.*

### Other Debits (Continued)

| 01/26 | 60,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240126005367) |
| 01/26 | 30,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240126004338) |
| 01/26 | 100,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240126005687) |
| 01/26 | 2,554.16 | USPS1000021070 2599008429 012624 2S0UZ7ZDE3QGFMK |
| 01/26 | 27.37 | DHL EXPRESS ECHECKPAY 240125 15c1bp5 |
| 01/26 | 27.23 | DHL EXPRESS ECHECKPAY 240125 15c1bpt |
| 01/26 | 22.98 | DHL EXPRESS ECHECKPAY 240125 15c1bo8 |
| 01/26 | 21.79 | DHL EXPRESS ECHECKPAY 240125 15c1bnk |
| 01/26 | 18.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/26 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/26 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/26 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/29 | 2,461.55 | USPS1000021070 2599612068 012924 2S11JHGOMDK4L82 |
| 01/29 | 623.23 | AMEX EPAYMENT ACH PMT 240129 W6736 |
| 01/30 | 12,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240130004893) |
| 01/30 | 40,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240130004031) |
| 01/30 | 50,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240130004391) |
| 01/30 | 20,823.27 | UPS PARCEL PAYMENT 240128 711755215 |
| 01/30 | 2,237.13 | USPS1000021070 2599949525 013024 2S182JFGF2HZ6FE |
| 01/30 | 1,320.75 | USPS1000021070 2600190795 013024 2S1ELVXRM6UU4KQ |
| 01/30 | 854.62 | AMEX EPAYMENT ACH PMT 240130 W8296 |
| 01/30 | 376.72 | USPS1000021070 2600843561 013024 2S1L867L4BYIRUG |
| 01/30 | 135.53 | DHL EXPRESS ECHECKPAY 240129 15hv7sq |
| 01/30 | 22.59 | DHL EXPRESS ECHECKPAY 240129 15hv7te |
| 01/30 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/30 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/30 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 01/31 | 3,137.77 | USPS1000021070 2601502886 013124 2S1RSMZ272B4G9C |
| 01/31 | 1,218.99 | AMEX EPAYMENT ACH PMT 240131 W6202 |
| 01/31 | 104.27 | DHL EXPRESS ECHECKPAY 240130 15jy5it |
| 01/31 | 56.67 | DHL EXPRESS ECHECKPAY 240130 15jy5ew |
| 01/31 | 47.53 | DHL EXPRESS ECHECKPAY 240130 15jy5be |
| 01/31 | 46.72 | DHL EXPRESS ECHECKPAY 240130 15jy5jk |
| 01/31 | 43.13 | DHL EXPRESS ECHECKPAY 240130 15jy5g8 |
| 01/31 | 38.35 | DHL EXPRESS ECHECKPAY 240130 15jy5bn |
| 01/31 | 38.11 | DHL EXPRESS ECHECKPAY 240130 15jy5h8 |

 **Citizens**™

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Debits (Continued) **
**May include checks that have been processed electronically by the payee/merchant.*

#### Other Debits (Continued)

| Date | Amount | Description |
|---|---|---|
| 01/31 | 34.02 | DHL EXPRESS ECHECKPAY 240130 15jy5cn |
| 01/31 | 32.07 | DHL EXPRESS ECHECKPAY 240130 15jy5kn |
| 01/31 | 31.55 | DHL EXPRESS ECHECKPAY 240130 15jy5ee |
| 01/31 | 31.34 | DHL EXPRESS ECHECKPAY 240130 15jy5dh |
| 01/31 | 30.91 | DHL EXPRESS ECHECKPAY 240130 15jy5hq |
| 01/31 | 30.05 | DHL EXPRESS ECHECKPAY 240130 15jy5le |
| 01/31 | 29.67 | DHL EXPRESS ECHECKPAY 240130 15jy5aw |
| 01/31 | 26.09 | DHL EXPRESS ECHECKPAY 240130 15jy5i5 |
| 01/31 | 25.95 | DHL EXPRESS ECHECKPAY 240130 15jy5c5 |
| 01/31 | 20.83 | DHL EXPRESS ECHECKPAY 240130 15jy5fh |
| 01/31 | 20.30 | DHL EXPRESS ECHECKPAY 240130 15jy5gk |

### Deposits & Credits

**Total Deposits & Credits** + **1,803,994.19**

| Date | Amount | Description |
|---|---|---|
| 01/10 | 100.00 | DEPOSIT |
| 01/16 | 51,884.82 | PAYPAL TRANSFER 240115 1031933113834 |
| 01/16 | 51,821.48 | PAYPAL TRANSFER 240114 1031913794634 |
| 01/16 | 40,225.21 | PAYPAL TRANSFER 240113 1031895122945 |
| 01/17 | 44,037.25 | PAYPAL TRANSFER 240116 1031952916157 |
| 01/17 | 1,000.00 | INCOMING WIRE TRANSFER (MTS NO.240117004012) |
| 01/18 | 58,109.10 | PAYPAL TRANSFER 240117 1031972043099 |
| 01/18 | 47,234.94 | ATLANTIC LOGISTI SENDER 240118 696100252 |
| 01/18 | 20,454.05 | ATLANTIC LOGISTI SENDER 240118 696249136 |
| 01/19 | 497,493.60 | ONLINE TRANSFER FROM CHECKING 6313253950 |
| 01/19 | 56,823.31 | PAYPAL TRANSFER 240118 1031991291741 |
| 01/19 | 42,333.51 | ATLANTIC LOGISTI SENDER 240119 696436880 |
| 01/22 | 51,891.33 | PAYPAL TRANSFER 240119 1032011478700 |
| 01/22 | 45,921.08 | PAYPAL TRANSFER 240121 1032049955514 |
| 01/22 | 45,056.09 | PAYPAL TRANSFER 240120 1032031295967 |
| 01/22 | 27,321.39 | ATLANTIC LOGISTI SENDER 240122 696698816 |
| 01/22 | .76 | USPS ACCTVERIFY 2595749035 012224 2RZRLEOD9UH8TDG |
| 01/22 | .33 | USPS ACCTVERIFY 2595750522 012224 2RZRLEOT3ID1Z95 |
| 01/23 | 49,867.87 | PAYPAL TRANSFER 240122 1032065503123 |
| 01/23 | 38,360.73 | ATLANTIC LOGISTI SENDER 240123 697072160 |
| 01/23 | 37,241.76 | ATLANTIC LOGISTI SENDER 240123 697073838 |
| 01/23 | 6,826.71 | ETSY INC PAYOUT 240123 etsy |
| 01/23 | 1,885.54 | ETSY INC PAYOUT 240123 etsy |
| 01/23 | 964.62 | ETSY INC PAYOUT 240123 etsy |
| 01/23 | 59.21 | ETSY INC PAYOUT 240123 etsy |
| 01/23 | .67 | Bento Technologi ACCTVERIFY 240123 016XNKQIA380JNM |
| 01/23 | .53 | USPS ACCTVERIFY 2596131898 012324 2RZY4CAHDWXKLOV |
| 01/23 | .04 | USPS ACCTVERIFY 2596132787 012324 2RZY4CAF7TPQ4IE |
| 01/24 | 26,323.31 | ATLANTIC LOGISTI SENDER 240124 697216582 |
| 01/25 | 223,630.16 | PAYPAL TRANSFER 240124 1032108840487 |
| 01/25 | 37,582.72 | ATLANTIC LOGISTI SENDER 240125 697399964 |

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Deposits & Credits (Continued)

| Date | Amount | Description |
|------|--------|-------------|
| 01/26 | 31,407.06 | ATLANTIC LOGISTI SENDER 240126 697616492 |
| 01/26 | 1,040.00 | INCOMING WIRE TRANSFER (MTS NO.240126003933) |
| 01/29 | 2,234.26 | BRAINTREE FUNDING 240129 BNX5QT |
| 01/30 | 27,545.43 | ATLANTIC LOGISTI SENDER 240130 698334140 |
| 01/30 | 25,937.71 | ATLANTIC LOGISTI SENDER 240130 698334426 |
| 01/30 | 23,239.63 | ATLANTIC LOGISTI SENDER 240130 698000484 |
| 01/30 | 3,267.48 | ETSY INC PAYOUT 240130 etsy |
| 01/30 | 2,337.25 | BRAINTREE FUNDING 240130 2FDCPP |
| 01/30 | 1,129.85 | ETSY INC PAYOUT 240130 etsy |
| 01/30 | 302.80 | ETSY INC PAYOUT 240130 etsy |
| 01/31 | 174,997.74 | ATLANTIC LOGISTI SENDER 240131 698537330 |
| 01/31 | 6,102.86 | BRAINTREE FUNDING 240131 HMB4P4 |

### Daily Balance

**Current Balance**

| Date | Balance | Date | Balance | Date | Balance | = | 478,089.63 |
|------|---------|------|---------|------|---------|---|------------|
| 01/10 | 100.00 | 01/22 | 954,154.07 | 01/26 | 347,014.33 | | |
| 01/16 | 144,031.51 | 01/23 | 1,087,079.60 | 01/29 | 346,163.81 | | |
| 01/17 | 188,935.90 | 01/24 | 940,325.42 | 01/30 | 302,033.35 | | |
| 01/18 | 314,733.99 | 01/25 | 507,358.80 | 01/31 | 478,089.63 | | |
| 01/19 | 911,384.41 | | | | | | |

## NEWS FROM CITIZENS

Enjoy banking at your fingertips with 24/7 access via online and mobile banking --- help avoid fees by setting up account and balance alerts, and save time by utilizing bill pay. Be sure to sign up for eStatements or if you opted for eStatements at account opening, make sure you visit Citizens Bank Online within 45 days to avoid receiving paper statements, which may have a fee associated.
Wireless carrier, text and/or data charges may apply.

Member FDIC ⌂ Equal Housing Lender

# ✖✖ Citizens™

### Checking Account Balance Worksheet

Before completing this worksheet, please be sure to adjust your checkbook register balance by

- Adding any interest earned
- Subtracting any fees or other charges

**1** Your current balance on this statement

$ _____
Current Balance

**2** List deposits which do not appear on this statement

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| ____ | _____ | ____ | _____ |
| ____ | _____ | ____ | _____ |
| ____ | _____ | ____ | _____ |
| ____ | _____ | ____ | _____ |

+ $ _____
Total of 2

**3** Subtotal by adding 1 and 2

= $ _____
Subtotal of 1 and 2

**4** List outstanding checks, transfers, debits, POS purchases or withdrawals that do not appear on this statement.

| Date/ Check No. | Amount | Date/ Check No. | Amount |
|-----------------|--------|-----------------|--------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

- $ _____
Total of 4

**5** Subtract 4 from 3. This should match your checkbook register balance.

= $ _____
Total

### CUSTOMER SERVICE

If you have any questions regarding your account or discover an error, call the number shown on the front of your statement or write to us at the following address:

*Citizens*
*Customer Service Center*
*P.O. Box 42001*
*Providence, RI 02940-2001*

### Change of Address

Please call the number shown at the front of your statement to notify us of a change of address.

### DEPOSIT ACCOUNTS ARE NON-TRANSFERABLE

Personal deposit accounts, such as CD's and savings accounts, cannot be transferred to another person or to a corporate entity.

Citizens is a brand name of Citizens Bank, N.A.    REV 12/22

## ELECTRONIC TRANSFERS

**In Case of Errors or Questions About Your Electronic Transfers**
(For Consumer Accounts Used Primarily for Personal, Family or Household Purposes)
Telephone us at the customer service number provided on Page 1 of this statement or write to us at the customer service address provided as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number, if any.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error and, if possible, the date it appeared on your statement or receipt.
- It will be helpful to us if you also give us a telephone number at which you can be reached in case we need any further information.

For consumer accounts used primarily for personal, family, or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

(For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.)

## OVERDRAFT LINES OF CREDIT
## BILLING RIGHTS SUMMARY

**What To Do If You Think You Find A Mistake On Your Statement:**
If you think there is an error on your statement write to us at the customer service address provided as soon as possible.
In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question. While we investigate whether or not there has been an error the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## INTEREST CHARGE CALCULATIONS FOR OVERDRAFT LINE OF CREDIT ACCOUNTS BASED ON AVERAGE DAILY BALANCE COMPUTATION METHOD

**Calculating your Interest Charge**
We calculate the interest charge on your Overdraft Line by applying the Daily Periodic Rate to the Average Daily Balance. Then, we multiply that result by the number of days in the billing cycle in which a balance is owed on your Overdraft Line. This gives us the total interest charge for that billing period.

**Calculating your Average Daily Balance**
To calculate the average daily balance, we take the beginning balance of you Overdraft Line each day (which does not include any unpaid interest charges or fees), add any new loan advances as of the date of those advances and subtract any payments or credits. This gives us the daily balance. Then, we add all the daily balances for the billing cycle together and divide the total by the number of days in the billing cycle. This gives us the average daily balance of your account.

**Credit Bureau Reporting**
We may report information about your Overdraft Line to credit bureaus for each joint account holder of your checking account. Late payments, missed payments, or other defaults on your Overdraft Line may be reflected in your credit report. If you believe we have furnished inaccurate or incomplete information to a credit reporting agency, write to us at the consumer service address provided and include your name, address, account number, and description of what you believe is inaccurate or incomplete.

*Thank you for banking with Citizens.*

 **Citizens**™

US259 | BR389
ROP 450
P.O. Box 7000
Providence, RI 02940

**Commercial Account Statement**

**Page 1 of 12**

Beginning February 01, 2024
through February 29, 2024

**Questions? Contact us today:**

SELLER ONLINE LLC
635 SOMERS AVE
FEASTERVILLE TREVOSE PA  19053-3450

 **CALL:**
Commercial Account Customer Service
1-800-862-6200

 **VISIT:**
Access your account online:
citizensbank.com

 **MAIL:**
Citizens
Customer Service Center
P.O. Box 42001
Providence, RI 02940-2001

**New year, new card.**
Citizens and Mastercard® are partnering up! We'll let you know when to check your mailbox for your new Debit/ATM card. You'll love the innovative notch design, making it easier to find in your wallet when you need it, and the fact it's 90% recycled plastic.

Mastercard is a registered trademark, and the circles design is a trademark of Mastercard International Incorporated.

**SELLER ONLINE LLC**
**Clearly Better Business Checking**
**XXXXXX-339-8**

## Clearly Better Business Checking for XXXXXX-339-8

### Balance Calculation

| | | |
|---|---|---|
| Previous Balance | | 478,089.63 |
| Checks | - | 18,059.18 |
| Debits | - | 1,268,236.08 |
| Deposits & Credit | + | 975,557.00 |
| **Current Balance** | = | 167,351.37 |

As a Clearly Better Business Checking customer, you do not pay a monthly maintenance fee. We appreciate your continued business.

Your next statement period will end on March 29, 2024.

### TRANSACTION DETAILS FOR BUSINESS CHECKING ACCOUNT ENDING 339-8

**Checks** *(Note - checks that are present out of numeric sequence are denoted with an asterisk (*))*

| Check # | Amount | Date | Check # | Amount | Date | Previous Balance |
|---|---|---|---|---|---|---|
| | | | | | | **478,089.63** |
| 1001 | 470.23 | 02/01 | 1006 | 50.00 | 02/29 | **Total Checks** |
| 1002 | 136.46 | 02/02 | 1007 | 31.11 | 02/21 | - 18,059.18 |
| 1003 | 134.68 | 02/08 | 1009* | 672.12 | 02/20 | |
| 1004 | 148.16 | 02/16 | 1010 | 92.57 | 02/23 | |
| 1005 | 603.16 | 02/14 | 1011 | 527.29 | 02/20 | |

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

**Checks (Cont.)** *(Note - checks that are present out of numeric sequence are denoted with an asterisk (*))*

| Check # | Amount | Date | Check # | Amount | Date |
|---------|--------|------|---------|--------|------|
| 1012 | 5,517.80 | 02/29 | 1016 | 2,500.00 | 02/23 |
| 1013 | 98.44 | 02/26 | 1017 | 81.00 | 02/27 |
| 1015* | 6,820.11 | 02/26 | 1018 | 176.05 | 02/26 |

**Debits \*\***
\*\**May include checks that have been processed electronically by the payee/merchant.*

**Total Debits**

**-**    **1,268,236.08**

| Date | Amount | Description |
|------|--------|-------------|
| **ATM/Purchases** | | |
| 02/26 | 21.03 | 1825 DBT PURCHASE - 000010 ETSY.COM - BRI BROOKLYN NY |
| 02/27 | 56.13 | 1825 POS DEBIT - 000000 Etsy Brooklyn NY |
| 02/27 | 65.72 | 1825 POS DEBIT - 000015 ETSY, INC. BROOKLYN NY |
| 02/27 | 39.60 | 1825 POS DEBIT - 000015 ETSY, INC. BROOKLYN NY |
| **Other Debits** | | |
| 02/01 | 15,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240201005233) |
| 02/01 | 50,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240201005492) |
| 02/01 | 60,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240201005845) |
| 02/01 | 40,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240201006214) |
| 02/01 | 4,856.94 | AMEX EPAYMENT ACH PMT 240201 W5922 |
| 02/01 | 1,928.60 | USPS1000021070 2602170349 020124 2S1YD76J6XOUNGM |
| 02/01 | 27.07 | DHL EXPRESS ECHECKPAY 240131 15lob8n |
| 02/01 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/01 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/01 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/01 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/02 | 1,850.43 | USPS1000021070 2602823638 020224 2S24XCAGKAPIU51 |
| 02/02 | 82.07 | DHL EXPRESS ECHECKPAY 240201 15ndgdz |
| 02/02 | 70.74 | DHL EXPRESS ECHECKPAY 240201 15ndget |
| 02/02 | 52.15 | DHL EXPRESS ECHECKPAY 240201 15ndggk |
| 02/02 | 49.43 | DHL EXPRESS ECHECKPAY 240201 15ndgib |
| 02/02 | 46.88 | DHL EXPRESS ECHECKPAY 240201 15ndgkt |
| 02/02 | 41.87 | DHL EXPRESS ECHECKPAY 240201 15ndglk |
| 02/02 | 39.07 | DHL EXPRESS ECHECKPAY 240201 15ndgiw |
| 02/02 | 37.95 | DHL EXPRESS ECHECKPAY 240201 15ndgh2 |
| 02/02 | 34.67 | DHL EXPRESS ECHECKPAY 240201 15ndgfq |
| 02/02 | 29.19 | DHL EXPRESS ECHECKPAY 240201 15ndgjk |

Member FDIC ⌂ Equal Housing Lender

# ❈❈ Citizens™

## Clearly Better Business Checking for XXXXXX-339-8 Continued

**Debits (Continued) \*\***
*\*\*May include checks that have been processed electronically by the payee/merchant.*

### *Other Debits (Continued)*

| Date | Amount | Description |
|------|-------:|-------------|
| 02/05 | 40,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240205004318) |
| 02/05 | 20,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240205004845) |
| 02/05 | 30,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240205004615) |
| 02/05 | 1,805.51 | USPS1000021070 2603394367 020524 2S2BHP8UZS8ZU31 |
| 02/05 | 141.21 | DHL EXPRESS ECHECKPAY 240203 15pvny2 |
| 02/05 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/05 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/05 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/06 | 3,721.50 | USPS1000021070 2603750486 020624 2S2I0LQ40LFOZV9 |
| 02/06 | 1,472.37 | AMEX EPAYMENT ACH PMT 240206 W6400 |
| 02/06 | 869.85 | USPS1000021070 2604008313 020624 2S2OK71K1HSECXM |
| 02/06 | 593.13 | USPS1000021070 2604649011 020624 2S2V6DY5JYYAR74 |
| 02/07 | 40,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240207003514) |
| 02/07 | 30,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240207003703) |
| 02/07 | 10,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240207004115) |
| 02/07 | 30,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240207003912) |
| 02/07 | 70,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240207004327) |
| 02/07 | 2,186.45 | USPS1000021070 2605274650 020724 2S31QSFJ7E3USY5 |
| 02/07 | 268.12 | DHL EXPRESS ECHECKPAY 240206 15uc2oz |
| 02/07 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/07 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/07 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/07 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/07 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/08 | 2,223.44 | USPS1000021070 2605888613 020824 2S38BCNHXCWT3Q1 |
| 02/08 | .99 | WASTE MANAGEMENT INTERNET 240207 043000098046124 |
| 02/09 | 32,569.73 | UPSBILLCTR PAYMENT 240208 00005817WV |
| 02/09 | 1,827.73 | USPS1000021070 2606458458 020924 2S3EVM02SP057SP |
| 02/09 | 819.53 | AMEX EPAYMENT ACH PMT 240209 W3342 |
| 02/12 | 10,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240212003609) |
| 02/12 | 30,000.00 | OUTGOING WIRE TRANSFER (MTS NO.240212003857) |

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

**Debits (Continued) \*\***
*\*\*May include checks that have been processed electronically by the payee/merchant.*

### Other Debits (Continued)

| 02/12 | 30,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240212004024) |
| 02/12 | 30,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240212003173) |
| 02/12 | 1,859.09 | USPS1000021070 2607013609 021224 2S3LFUQ6R5ZRX8A |
| 02/12 | 1,432.32 | AMEX EPAYMENT ACH PMT 240212 M4368 |
| 02/12 | 19.71 | DHL EXPRESS ECHECKPAY 240211 161mkxz |
| 02/12 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/12 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/12 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/12 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/13 | 3,226.11 | USPS1000021070 2607345874 021324 2S3RYSC0WL8YH04 |
| 02/13 | 1,398.92 | AMEX EPAYMENT ACH PMT 240213 W8198 |
| 02/13 | 867.32 | USPS1000021070 2607567637 021324 2S3YIA82U6F1P18 |
| 02/13 | 797.66 | USPS1000021070 2608140277 021324 2S454HTMGTG0IVL |
| 02/13 | 283.27 | DHL EXPRESS ECHECKPAY 240212 162w4sh |
| 02/14 | 17,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240214003776) |
| 02/14 | 30,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240214004057) |
| 02/14 | 30,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240214003552) |
| 02/14 | 10,581.80 | UPSBILLCTR PAYMENT 240213 00006X5R32 |
| 02/14 | 1,624.57 | USPS1000021070 2608702755 021424 2S4BOYJU02DW8D0 |
| 02/14 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/14 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/14 | 40.00 | SERVICE CHARGE |
| | | WIRE TRANSFER FEES |
| 02/15 | 1,834.39 | USPS1000021070 2609238901 021524 2S4I9ISQ0YZ454P |
| 02/16 | 1,457.81 | USPS1000021070 2610433971 021624 2S4OTS5YI0K5QJC |
| 02/20 | 12,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240220007091) |
| 02/20 | 60,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240220006715) |
| 02/20 | 60,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240220007705) |
| 02/20 | 50,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO.240220007421) |
| 02/20 | 1,682.73 | USPS1000021070 2611080463 022024 2S4VEF0JDSQ2DAP |
| 02/20 | 1,177.53 | AMEX EPAYMENT ACH PMT 240220 W0370 |
| 02/20 | 242.79 | DHL EXPRESS ECHECKPAY 240216 16809kk |
| 02/20 | 35.90 | DHL EXPRESS ECHECKPAY 240218 16axti8 |

Member FDIC ⌂ Equal Housing Lender

# ✖✖ Citizens™

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Debits (Continued) **
**May include checks that have been processed electronically by the payee/merchant.*

### Other Debits (Continued)

| | | |
|---|---:|---|
| 02/20 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/20 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/20 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/20 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/21 | 2,549.86 | USPS1000021070 2611385948 022124 2S51X6XB7NUYBEG |
| 02/21 | 1,651.50 | USPS1000021070 2612621217 022124 2S5LN858N47HNDO |
| 02/21 | 1,100.22 | USPS1000021070 2611588017 022124 2S58GHIWYBR2OC3 |
| 02/21 | 521.16 | USPS1000021070 2612011477 022124 2S5F1A2EO0O0W3K |
| 02/21 | 292.67 | DHL EXPRESS ECHECKPAY 240220 16e8mfh |
| 02/22 | 100,000.00 | OUTGOING WIRE TRANSFER<br>(MTS NO.240222004795) |
| 02/22 | 100,000.00 | OUTGOING WIRE TRANSFER<br>(MTS NO.240222005049) |
| 02/22 | 50,000.00 | OUTGOING WIRE TRANSFER<br>(MTS NO.240222005245) |
| 02/22 | 8,168.15 | UPSBILLCTR PAYMENT 240221 00005817WV |
| 02/22 | 1,994.59 | USPS1000021070 2613309187 022224 2S5S7LYHJ4W8Y6X |
| 02/22 | 25.21 | DHL EXPRESS ECHECKPAY 240221 16fouub |
| 02/22 | 23.98 | DHL EXPRESS ECHECKPAY 240221 16foutk |
| 02/22 | 21.46 | DHL EXPRESS ECHECKPAY 240221 16fouuz |
| 02/22 | 19.59 | DHL EXPRESS ECHECKPAY 240221 16fouv8 |
| 02/22 | 19.07 | DHL EXPRESS ECHECKPAY 240221 16fouvt |
| 02/22 | 18.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/22 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/22 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/22 | 40.00 | SERVICE CHARGE<br>WIRE TRANSFER FEES |
| 02/23 | 4,203.95 | AMEX EPAYMENT ACH PMT 240223 W7424 |
| 02/23 | 2,363.97 | USPS1000021070 2613870706 022324 2S5YRYRGGSEN0PG |
| 02/23 | 21.77 | DHL EXPRESS ECHECKPAY 240222 16h8i42 |
| 02/23 | 21.34 | DHL EXPRESS ECHECKPAY 240222 16h8i4n |
| 02/23 | 20.57 | DHL EXPRESS ECHECKPAY 240222 16h8i5b |
| 02/26 | 4,922.82 | AMEX EPAYMENT ACH PMT 240226 W7124 |
| 02/26 | 1,719.65 | USPS1000021070 2614413362 022624 2S65CIR1DW08LYW |
| 02/26 | 117.48 | DHL EXPRESS ECHECKPAY 240223 16hzdnh |
| 02/26 | 50.94 | DHL EXPRESS ECHECKPAY 240225 16lk4nn |
| 02/26 | 19.39 | DHL EXPRESS ECHECKPAY 240225 16lk3tb |
| 02/27 | 15,000.00 | OUTGOING WIRE TRANSFER<br>(MTS NO.240227003675) |
| 02/27 | 70,000.00 | OUTGOING WIRE TRANSFER<br>(MTS NO.240227003396) |
| 02/27 | 5,432.46 | AMEX EPAYMENT ACH PMT 240227 W9094 |

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

**Debits (Continued) \*\***
*\*\*May include checks that have been processed electronically by the payee/merchant.*

### Other Debits (Continued)

| Date | Amount | Description |
|---|---|---|
| 02/27 | 2,854.37 | USPS1000021070 2614746815 022724 2S6BVBW5V73O11Z |
| 02/27 | 1,051.24 | USPS1000021070 2615165231 022724 2S6IFOBS3E52VXA |
| 02/27 | 367.40 | Bento Technologi Bill.com 240227 016TYUSUR399CR6 |
| 02/27 | 359.61 | USPS1000021070 2615847944 022724 2S6P9RUOAUKO28S |
| 02/27 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/27 | 40.00 | SERVICE CHARGE WIRE TRANSFER FEES |
| 02/28 | 6,961.15 | UPSBILLCTR PAYMENT 240227 00005817WV |
| 02/28 | 2,166.68 | USPS1000021070 2616483042 022824 2S6VLM60UHBE0A6 |
| 02/28 | 28.41 | DHL EXPRESS ECHECKPAY 240227 16o9xiw |
| 02/28 | 23.00 | DHL EXPRESS ECHECKPAY 240227 16o9xhw |
| 02/29 | 2,650.40 | USPS1000021070 2617124785 022924 2S7260LZ79UVWMI |
| 02/29 | 3.00 | SERVICE CHARGE STATEMENT DELIVERY |

### Deposits & Credits

**Total Deposits & Credits**

\+ 975,557.00

| Date | Amount | Description |
|---|---|---|
| 02/01 | 34,832.75 | PAYPAL TRANSFER 240131 1032249930182 |
| 02/01 | 2,596.33 | BRAINTREE FUNDING 240201 H334F8 |
| 02/02 | 25,720.97 | PAYPAL TRANSFER 240201 1032269246098 |
| 02/02 | 16,060.66 | ATLANTIC LOGISTI SENDER 240202 699348952 |
| 02/02 | 1,902.62 | BRAINTREE FUNDING 240202 HRXGJP |
| 02/05 | 15,697.85 | PAYPAL TRANSFER 240202 1032293216943 |
| 02/05 | 15,587.52 | ATLANTIC LOGISTI SENDER 240205 699732632 |
| 02/05 | 11,189.61 | PAYPAL TRANSFER 240203 1032314723627 |
| 02/05 | 5,774.30 | PAYPAL TRANSFER 240204 1032334626735 |
| 02/05 | 3,153.09 | BRAINTREE FUNDING 240205 DV5TTP |
| 02/06 | 70,000.00 | ATLANTIC LOGISTI SENDER 240206 700113072 |
| 02/06 | 2,827.50 | ETSY INC PAYOUT 240206 etsy |
| 02/06 | 2,120.31 | BRAINTREE FUNDING 240206 8XGVK8 |
| 02/06 | 982.74 | ETSY INC PAYOUT 240206 etsy |
| 02/06 | 221.21 | ETSY INC PAYOUT 240206 etsy |
| 02/07 | 204,201.75 | 1825 ATM DEPOSIT - ML6271 PRINCETON ITM, PRINCETON NJ |
| 02/07 | 5,459.15 | BRAINTREE FUNDING 240207 3Q8KK8 |
| 02/08 | 17,904.70 | PAYPAL TRANSFER 240207 1032394768729 |
| 02/08 | 5,604.51 | BRAINTREE FUNDING 240208 D3893J |
| 02/09 | 1,901.71 | BRAINTREE FUNDING 240209 6R2TKT |
| 02/09 | 1,748.66 | PAYPAL TRANSFER 240208 1032414912809 |
| 02/12 | 7,340.19 | PAYPAL TRANSFER 240211 1032474989322 |
| 02/12 | 7,276.77 | PAYPAL TRANSFER 240210 1032455956674 |
| 02/12 | 6,808.68 | PAYPAL TRANSFER 240209 1032435569271 |
| 02/12 | 2,638.08 | BRAINTREE FUNDING 240212 4RZ2MY |
| 02/13 | 40,000.00 | ATLANTIC LOGISTI SENDER 240213 701367356 |
| 02/13 | 6,353.02 | PAYPAL TRANSFER 240212 1032496119103 |
| 02/13 | 3,995.62 | BRAINTREE FUNDING 240213 JCPJKT |

# ✖✖ Citizens™

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Deposits & Credits (Continued)

| Date | Amount | Description |
|---|---|---|
| 02/13 | 461.76 | ETSY INC PAYOUT 240213 etsy |
| 02/14 | 13,620.70 | DEPOSIT |
| 02/14 | 7,981.61 | PAYPAL TRANSFER 240213 1032515756187 |
| 02/14 | 6,903.87 | BRAINTREE FUNDING 240214 54FKNJ |
| 02/14 | .08 | TRANSFER |
| 02/14 | .01 | REALTIME CREDIT |
| | | #BHH Etsy via Plaid |
| | | SENDER REF: 6207f0c9fb4f47c4a94cb11601720ff3 |
| | | RTP TRACE ID: US24021488841512 |
| | | 1098 Harrison Street |
| | | San Francisco          CA 94103 |
| 02/14 | .01 | REALTIME CREDIT |
| | | #AYE Etsy via Plaid |
| | | SENDER REF: 31e7b2d9d4ed4c468670b1160156037b |
| | | RTP TRACE ID: US24021488840070 |
| | | 1098 Harrison Street |
| | | San Francisco          CA 94103 |
| 02/15 | 8,198.96 | PAYPAL TRANSFER 240214 1032535754008 |
| 02/15 | 2,003.97 | BRAINTREE FUNDING 240215 77BXJ4 |
| 02/16 | 8,120.04 | PAYPAL TRANSFER 240215 1032555805750 |
| 02/16 | 3,398.13 | BRAINTREE FUNDING 240216 9ZHFK8 |
| 02/16 | .01 | REALTIME CREDIT |
| | | #PCT Etsy via Plaid |
| | | SENDER REF: b188ecf378ec4c5eac11b11801322d97 |
| | | RTP TRACE ID: US24021688869840 |
| | | 1098 Harrison Street |
| | | San Francisco          CA 94103 |
| 02/20 | 76,930.00 | PAYONEER 7362 EDI PAYMNT 022024 366184284554185 |
| 02/20 | 9,286.43 | PAYPAL TRANSFER 240217 1032596850478 |
| 02/20 | 9,112.28 | PAYPAL TRANSFER 240216 1032576936074 |
| 02/20 | 8,195.60 | PAYPAL TRANSFER 240218 1032615601925 |
| 02/20 | 5,120.55 | PAYPAL TRANSFER 240219 1032634803376 |
| 02/20 | 1,978.75 | BRAINTREE FUNDING 240220 JCW9WD |
| 02/21 | 50,000.00 | ATLANTIC LOGISTI SENDER 240221 702558514 |
| 02/21 | 11,853.77 | PAYPAL TRANSFER 240220 1032654240737 |
| 02/21 | 10,114.35 | BRAINTREE FUNDING 240221 FC4SRY |
| 02/21 | 363.97 | ETSY INC PAYOUT 240221 etsy |
| 02/21 | 21.91 | Shopify TRANSFER 240221 ST-W2I1H7N4L7B0 |
| 02/22 | 28,420.00 | PAYONEER INC 644855416 240222 366184287761338 |
| 02/22 | 10,786.34 | PAYPAL TRANSFER 240221 1032673318099 |
| 02/22 | 2,383.90 | BRAINTREE FUNDING 240222 HW8ZNJ |
| 02/22 | 40.00 | INCOMING WIRE TRANSFER |
| | | (MTS NO.240222004263) |
| 02/23 | 30,000.00 | ATLANTIC LOGISTI SENDER 240223 703155154 |
| 02/23 | 10,962.75 | PAYPAL TRANSFER 240222 1032693148003 |
| 02/23 | 3,405.22 | BRAINTREE FUNDING 240223 GB99GY |
| 02/23 | 59.89 | EMS BKRD DEP 240222 565500000802831 |
| 02/26 | 13,767.90 | PAYPAL TRANSFER 240223 1032713308946 |
| 02/26 | 12,291.92 | PAYPAL TRANSFER 240224 1032733180509 |
| 02/26 | 6,001.07 | PAYPAL TRANSFER 240225 1032752141568 |

Member FDIC ⌂ Equal Housing Lender

## Clearly Better Business Checking for XXXXXX-339-8 Continued

### Deposits & Credits (Continued)

| Date | Amount | Description |
|------|--------|-------------|
| 02/26 | 3,524.76 | BRAINTREE FUNDING 240226 FG9RJP |
| 02/26 | 1,865.73 | EMS BKRD DEP 240223 565500000802831 |
| 02/27 | 49,000.00 | PAYONEER INC 646488276 240226 366184292458559 |
| 02/27 | 9,481.68 | PAYPAL TRANSFER 240226 1032772053164 |
| 02/27 | 2,260.89 | BRAINTREE FUNDING 240227 H55D44 |
| 02/27 | 2,039.11 | EMS BKRD DEP 240226 565500000802831 |
| 02/27 | 1,597.79 | EMS BKRD DEP 240226 565500000802831 |
| 02/27 | 1,333.50 | EMS BKRD DEP 240226 565500000802831 |
| 02/27 | 442.72 | ETSY INC PAYOUT 240227 etsy |
| 02/27 | 31.88 | ETSY INC PAYOUT 240227 etsy |
| 02/27 | 13.54 | Shopify TRANSFER 240227 ST-K2Z7N3X7X3V1 |
| 02/28 | 9,767.80 | PAYPAL TRANSFER 240227 1032791750269 |
| 02/28 | 3,523.52 | BRAINTREE FUNDING 240228 9VN7ZT |
| 02/28 | 2,801.17 | EMS BKRD DEP 240227 565500000802831 |
| 02/28 | 26.65 | Shopify TRANSFER 240228 ST-R9C1Z6D9W5W1 |
| 02/29 | 9,047.90 | PAYPAL TRANSFER 240228 1032812676819 |
| 02/29 | 5,544.53 | BRAINTREE FUNDING 240229 55BQGY |
| 02/29 | 1,567.78 | EMS BKRD DEP 240228 565500000802831 |

### Daily Balance

**Current Balance**

= **167,351.37**

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 02/01 | 343,075.87 | 02/12 | 350,302.18 | 02/22 | 122,949.72 |
| 02/02 | 384,289.21 | 02/13 | 394,539.30 | 02/23 | 158,153.41 |
| 02/05 | 343,624.86 | 02/14 | 333,116.05 | 02/26 | 181,658.88 |
| 02/06 | 413,119.77 | 02/15 | 341,484.59 | 02/27 | 152,472.46 |
| 02/07 | 440,126.10 | 02/16 | 351,396.80 | 02/28 | 159,412.36 |
| 02/08 | 461,276.20 | 02/20 | 275,522.05 | 02/29 | 167,351.37 |
| 02/09 | 429,709.58 | 02/21 | 341,729.53 | | |

Member FDIC ⌂ Equal Housing Lender

# ✳ Citizens™

## Checking Account Balance Worksheet

Before completing this worksheet, please be sure to adjust your checkbook register balance by

- Adding any interest earned
- Subtracting any fees or other charges

**1** Your current balance on this statement

$ _____
Current Balance

**2** List deposits which do not appear on this statement

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |

+ $ _____
Total of 2

**3** Subtotal by adding 1 and 2

= $ _____
Subtotal of 1 and 2

**4** List outstanding checks, transfers, debits, POS purchases or withdrawals that do not appear on this statement.

| Date/ Check No. | Amount | Date/ Check No. | Amount |
|-----------------|--------|-----------------|--------|
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |
| ___ | ___ | ___ | ___ |

- $ _____
Total of 4

**5** Subtract 4 from 3. This should match your checkbook register balance.

= $ _____
Total

## CUSTOMER SERVICE

If you have any questions regarding your account or discover an error, call the number shown on the front of your statement or write to us at the following address:

**Citizens**
**Customer Service Center**
**P.O. Box 42001**
**Providence, RI 02940-2001**

## Change of Address

Please call the number shown at the front of your statement to notify us of a change of address.

## DEPOSIT ACCOUNTS ARE NON-TRANSFERABLE

Personal deposit accounts, such as CD's and savings accounts, cannot be transferred to another person or to a corporate entity.

Citizens is a brand name of Citizens Bank, N.A.    REV 12/22

## ELECTRONIC TRANSFERS

**In Case of Errors or Questions About Your Electronic Transfers**
(For Consumer Accounts Used Primarily for Personal, Family or Household Purposes)
Telephone us at the customer service number provided on Page 1 of this statement or write to us at the customer service address provided as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number, if any.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error and, if possible, the date it appeared on your statement or receipt.
- It will be helpful to us if you also give us a telephone number at which you can be reached in case we need any further information.

For consumer accounts used primarily for personal, family, or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

(For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.)

## OVERDRAFT LINES OF CREDIT
## BILLING RIGHTS SUMMARY

**What To Do If You Think You Find A Mistake On Your Statement:**
If you think there is an error on your statement write to us at the customer service address provided as soon as possible.
In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question. While we investigate whether or not there has been an error the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## INTEREST CHARGE CALCULATIONS FOR OVERDRAFT LINE OF CREDIT ACCOUNTS BASED ON AVERAGE DAILY BALANCE COMPUTATION METHOD

**Calculating your Interest Charge**
We calculate the interest charge on your Overdraft Line by applying the Daily Periodic Rate to the Average Daily Balance. Then, we multiply that result by the number of days in the billing cycle in which a balance is owed on your Overdraft Line. This gives us the total interest charge for that billing period.

**Calculating your Average Daily Balance**
To calculate the average daily balance, we take the beginning balance of you Overdraft Line each day (which does not include any unpaid interest charges or fees), add any new loan advances as of the date of those advances and subtract any payments or credits. This gives us the daily balance. Then, we add all the daily balances for the billing cycle together and divide the total by the number of days in the billing cycle. This gives us the average daily balance of your account.

**Credit Bureau Reporting**
We may report information about your Overdraft Line to credit bureaus for each joint account holder of your checking account. Late payments, missed payments, or other defaults on your Overdraft Line may be reflected in your credit report. If you believe we have furnished inaccurate or incomplete information to a credit reporting agency, write to us at the consumer service address provided and include your name, address, account number, and description of what you believe is inaccurate or incomplete.

*Thank you for banking with Citizens.*

INTENTIONALLY
LEFT BLANK

# ✳ Citizens™

| | | |
|---|---|---|
| **1001** | **02/01/2024** | **$470.23** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1001
DATE 01/26/2024   3-7615/360
PAY TO THE ORDER OF DGW Philadelphia Gas Works  $ 470.23
Four hundred seventy 23/100  DOLLARS
✳Citizens
FOR Gas service
3398

| | | |
|---|---|---|
| **1002** | **02/02/2024** | **$136.46** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1002
DATE 01/29/2024   3-7615/360
PAY TO THE ORDER OF Lower Southhampton Township  $ 136.46
One hundred and thirty six 46/100  DOLLARS
✳Citizens
FOR Acc# 860076100
3398

| | | |
|---|---|---|
| **1003** | **02/08/2024** | **$134.68** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1003
DATE 02/02/2024   3-7615/360
PAY TO THE ORDER OF PECO  $ 134.68
One hundret thirty four 68/100  DOLLARS
✳Citizens
FOR General service
3398

| | | |
|---|---|---|
| **1004** | **02/16/2024** | **$148.16** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1004
DATE 02/06/2024   3-7615/360
PAY TO THE ORDER OF Philadelphia Water Log. LLC  $ 148.16
One hundret fourty eight 16/100  DOLLARS
✳Citizens
FOR SMP inspection
3398

| | | |
|---|---|---|
| **1005** | **02/14/2024** | **$603.16** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1005
DATE 02/07/2024   3-7615/360
PAY TO THE ORDER OF keystone Fire Protection Co  $ 603.16
Six hundret three 16/100  DOLLARS
✳Citizens
FOR Sprinkler System Inspection
3398

| | | |
|---|---|---|
| **1006** | **02/29/2024** | **$50.00** |

20240229020960010007
SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1006
DATE 02/09/2024   3-7615/360
PAY TO THE ORDER OF City of Philadelphia  $ 50.00
Fifty 00/100  DOLLARS
✳Citizens
FOR Registr fee
3398

| | | |
|---|---|---|
| **1007** | **02/21/2024** | **$31.11** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1007
DATE 02/14/2024   3-7615/360
PAY TO THE ORDER OF BCWSA  $ 31.11
Thirty one 11/100  DOLLARS
✳Citizens
FOR water service
3398

| | | |
|---|---|---|
| **1009** | **02/20/2024** | **$672.12** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1009
DATE 02/14/2024   3-7615/360
PAY TO THE ORDER OF PECO  $ 672.12
Six hundoed seventy two 12/100  DOLLARS
✳Citizens
FOR General service
3398

| | | |
|---|---|---|
| **1010** | **02/23/2024** | **$92.57** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1010
DATE 02/14/2024   3-7615/360
PAY TO THE ORDER OF ADT Commercial  $ 92.57
Ninety two 57/100  DOLLARS
✳Citizens
FOR Services provided
3398

| | | |
|---|---|---|
| **1011** | **02/20/2024** | **$527.29** |

SELLER ONLINE LLC
635 SOMERS AVE
TREVOSE, PA 19053-3450
1011
DATE 02/14/2024   3-7615/360
PAY TO THE ORDER OF PGW  $ 527.29
Five hundred twenty seven 29/100  DOLLARS
✳Citizens
FOR Service
3398

| | |
|---|---|
| 1012 | 1013 |
| SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 | SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 |
| DATE 02/21/2024 | DATE 02/21/2024 |
| PAY TO THE ORDER OF: Avalon Princeton Circle — $ 5517.80 | PAY TO THE ORDER OF: Verizon — $ 98.44 |
| Five thousand five hundred seventeen 80/100 DOLLARS | Ninety eight 44/100 DOLLARS |
| Citizens | Citizens |
| FOR: Services | FOR: Services provided |
| 3398 | 3398 |
| **1012    02/29/2024    $5,517.80** | **1013    02/26/2024    $98.44** |

| | |
|---|---|
| 1015 | 1016 |
| SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 | SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 |
| DATE 02/21/2024 | DATE 02/21/2024 |
| PAY TO THE ORDER OF: Independence Blue Cross — $ 6820.11 | PAY TO THE ORDER OF: Lilian Perelshteyn, Esq — $ 2500.00 |
| Six thousand eight hundred twenty 11/100 DOLLARS | Two thousand five hundred 00/100 DOLLARS |
| Citizens | Citizens |
| FOR: services provided | FOR: Services |
| 3398 | 3398 |
| **1015    02/26/2024    $6,820.11** | **1016    02/23/2024    $2,500.00** |

| | |
|---|---|
| 1017 | 1018 |
| SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 | SELLER ONLINE LLC — 633 SOMERS AVE, TREVOSE, PA 19053-3450 |
| DATE 02/23/2024 | DATE 02/23/2024 |
| PAY TO THE ORDER OF: Irina Spoishen, CPA PC — $ 81.00 | PAY TO THE ORDER OF: UPI — $ 176.05 |
| Eighty one 00/100 DOLLARS | One hundred seventy six 05/100 DOLLARS |
| Citizens | Citizens |
| FOR: Service poorided | FOR: parcel |
| 3398 | 3398 |
| **1017    02/27/2024    $81.00** | **1018    02/26/2024    $176.05** |

# EXHIBIT D

| 796 | 06/08/2021 | $5.00 |
|---|---|---|



| 801 | 06/15/2021 | $600000.00 |
|---|---|---|

# EXHIBIT E

Images for account 395-0



| 780 | 05/03/2021 | $6918.00 |



**960**                                  **12/28/2021**                        **$1,694.00**



941                                    04/14/2022                                    $12,593.00



**1281**    07/19/2022    **$67,106.00**



Seller Online LLC
635 Somers Ave
FoasterySo Trevose, PA 19053-3450

1282

a/16/22

Pay to the order of   United States Treasury                     | $67 106.00

Sixty seven thousand one hundred Six                    DOLLARS

Citizens Bank

31975 1413; 1040ES 2022                    ⌐0006710600⌐

3950

**1282**                          **07/19/2022**                          **$67,106.00**



| 1310 | 04/11/2023 | $266,723.00 |
| 1311 | 04/10/2023 | $31,603.00 |

Case 2:26-cv-04999-CMR   Document 1   Filed 07/17/26   Page 94 of 166

ACTION REQUIRED BY 5:00 P.M. EST ON THE RETURN DATE LISTED BELOW

To accept or refuse this transaction, access the PENDING ITEM option via ACHieve Access. If necessary, please update your EPA ⁻
If no action is taken on the transaction, it will be returned on the following date:

Return Date: 12/28/2023

Authorization information
Bank Transit Routing Number: 036076150
Bank Account Number: xxxxxxxxxxxx53950
Transaction Type: Debit
Company ID: ▓▓▓2000
Reference Number:

Transaction Information
Originating Company Name: IRS
Originating Company ID: ▓▓▓2000
Entry Description: USATAXPYMT
Effective Date: 12/27/23
Individual Name: ANNA SYRYKH & OKSANA K
Individual ID: ▓▓▓3983
Amount: 85000.00
Transaction Reference Number: 23361003687157
This message is confidential and subject to terms at: https://www.citizensbank.com/account-safeguards/overview.aspx. If you are no
please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

**STATEMENTS,December2023-3950.pdf**
Страница 7 из 15



| | | |
|---|---|---|
| | | (MTS NO⬛4788) |
| 12/21 | 50,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛4786) |
| 12/21 | 100,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛4787) |
| 12/21 | 100,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛4790) |
| 12/21 | 70,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛4789) |
| 12/21 | 100,099.00 | IRS USATAXPYMT 122123⬛9488 |
| 12/21 | 4,233.58 | USPS1000021070 2579676428 122123 2RUAN1D1XM1N4IH |
| 12/22 | 10,387.75 | UPSBILLCTR PAYMENT 231221 00005817WV |
| 12/22 | 2,722.27 | USPS1000021070 2580310305 122223 2RUH79NA2IM1CMN |
| 12/26 | 36,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛5943) |
| 12/26 | 50,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛5942) |
| 12/26 | 135,000.00 | OUTGOING WIRE TRANSFER |
| | | (MTS NO⬛5941) |
| 12/26 | 3,467.90 | IRS USATAXPYMT 122623⬛8925 |
| 12/26 | 2,456.16 | USPS1000021070 2580847131 122623 2RUNRG15W84FO3G |
| 12/26 | 350.17 | DHL EXPRESS ECHECKPAY 231222 13ytm5q |
| 12/26 | 136.11 | DHL EXPRESS ECHECKPAY 231222 13ytqnb |
| 12/26 | 106.99 | DHL EXPRESS ECHECKPAY 231222 13ytqj5 |
| 12/26 | 81.63 | DHL EXPRESS ECHECKPAY 231222 13ytqk8 |
| 12/26 | 73.79 | DHL EXPRESS ECHECKPAY 231222 13ytqlb |
| 12/26 | 63.79 | DHL EXPRESS ECHECKPAY 231222 13ytk4b |
| 12/26 | 58.11 | DHL EXPRESS ECHECKPAY 231222 13ytqmh |
| 12/26 | 57.79 | DHL EXPRESS ECHECKPAY 231222 13ytniw |

Please See Additional Information on Next Page

Member FDIC ⌂ Equal Housing Lender



**Seller Online LLC**
635 Somers Ave
Feasterville Trevose, PA 18053-3490

1316

04/18 ____ 23

Pay to the order of _United States Treasury_ $ 110,928.00

one hundred and ten thousand nine hundred twenty eight 00/100

Citizens Bank

131.37  1040-ES

S. Smyth

13950 ⑆00110928000⑆

Case 2:26-cv-04999-CMR   Document 1   Filed 07/17/26   Page 97 of 166

316                    05/02/2023                    $110,928.00

Seller Online LLC
635 Somers Ave
Feasterville Trevose, PA 19053-3450

1317

3 7615-360

04/18    2023

PAY TO THE ORDER OF   Pennsylvania Department of Revenue    $ 7,688.00

seven thousand six hundred eighty eight 00/100   DOLLARS

Citizens Bank

FOR   3197   EST TAX

Syrykh

1317                    04/25/2023                    $7,688.00

# EXHIBIT F

## ACQUISITION OF MEMBERSHIP INTEREST
## SELLER ONLINE LLC

THIS AGREEMENT is made this *15* day of *September* 2022 by and between Anna Syrykh, who has a mailing address at 346 Glen Meadow Rd. Richboro. PA 19053, referred to hereinafter as "Seller," and Tetyana Shevchenko. who also has a mailing address at 305 Somers Ave. Feasterville. PA 19053, and who is referred to hereinafter as "Buyer."

WHEREAS, Seller is the owner of fifty-one percent (51%) of the membership interest in Seller Online LLC, a Pennsylvania limited liability company with a mailing address at 635 Somers Ave. Feasterville, PA 19053 (hereinafter referred to as the "LLC"); and

WHEREAS, Buyer is the owner of the remaining forty-nine percent (49%) of the membership interest in the LLC; and

WHEREAS, Seller desires to transfer to Buyer. and Buyer desires to acquire from Seller. two percent (2%) of Seller's membership interest in the LLC. with that interest transferred to Buyer on the terms and conditions contained in this contract; and

NOW, THEREFORE, in consideration of the mutual promises and conditions contained in this contract, the parties hereto agree as follows:

### ACQUISITION OF MEMBERSHIP INTEREST
1. Subject to the terms and conditions of this agreement. Seller agrees to transfer and assign to Buyer, and Buyer agrees to acquire, upon execution of this contract. two percent (2%) of the membership interest in the LLC. At the signing hereof, Seller shall deliver to Buyer a certificate or note evidencing the transfer. duly endorsed to Buyer. Upon execution. and from time to time after execution. Seller shall execute and deliver other documents and instruments, and take other actions, as Buyer may reasonably request, in order to more fully vest in Buyer her additional two percent (2%) of the right. title. and interest in the LLC. and every other equivalent right. title. interest. claim, or demand of any kind that Seller may have in, to. or on any of the properties. assets. or businesses of the LLC.

### PURCHASE PRICE AND ASSOCIATED COVENANTS
2. The purchase price is one hundred ninety two thousand dollars ($192,000). payable by cash or bank check in three annual installments. with each payment due on the anniversary date of this agreement beginning in 2023.

### SELLER'S REPRESENTATIONS REGARDING THE LLC
3. Seller represents and warrants that she has good. absolute. and marketable title to two percent (2%) of the LLC membership interest being transferred to Buyer. free and clear of all liens, claims. encumbrances. and restrictions of every kind that would otherwise be unknown to Buyer. and Seller has the complete and unrestricted right. power, and authority to transfer and assign her membership interest.

4. Seller represents and warrants that the LLC is authorized to transfer two (2%) of its interest.

5. Seller represents and warrants that there are no outstanding options. contracts. commitments, warranties. agreements. or other rights of any character affecting or relating in any manner to the issuance of the LLC's membership interest or entitling anyone to acquire the LLC's membership interest. any of which would be unknown to Buyer.

6. Seller represents and warrants that the financial statements reviewed by Buyer, specifically the

balance sheet of the LLC, as of December 31, 2021, and the related statement of income and retained earnings of the LLC for the year ended December 31, 2021, are in accordance with the books and records of the LLC and fairly represent the financial condition of the LLC at such dates and the results of its operations for the periods specified.

7. Seller represents and warrants that the LLC, since the balance sheet date: (a) has not incurred any obligations or liabilities except current liabilities in the ordinary course of business; (b) has not discharged or satisfied any liens or encumbrances, or paid any obligations or liabilities, except current balance sheet liabilities and current liabilities incurred since the balance sheet date in the ordinary course of business, or, in the alternative, separately disclosed to Buyer; (c) has not mortgaged, pledged, or subjected to lien, encumbrance, or charge any of its assets except from inventory in the ordinary course of business; (d) has not suffered any damage, destruction, or loss (whether or not covered by insurance) materially affecting its properties, business, or prospects; (e) has not waived any rights of substantial value; and (f) has not entered into any transaction other than in the ordinary course of business, any of the foregoing of which would be unknown to Buyer.

8. Seller represents and warrants that the LLC has duly filed all federal, state, and local tax returns required to be filed by the LLC and that, subject to any exceptions in this contract, the LLC has paid all federal, state, and local taxes required to be paid with respect to the periods covered by the returns.

9. Seller represents and warrants that to the best of her knowledge, there are no lawsuits or administrative proceedings pending or threatened against the LLC, which would be unknown to Buyer.

10. Seller represents and warrants that except as disclosed herein, the LLC is not a party to, or otherwise bound by any of the following kinds of contracts: (a) any written or oral contract not made in the ordinary course of business; (b) any employment or consultant contract not terminable at will without cost or other liability; (c) any bonus, pension, profit sharing, retirement, share or membership interest purchase, stock option, hospitalization, group insurance, or similar employee benefit plan; or (d) any real or personal property lease, as lessor or lessee, any of the foregoing of which would be unknown to Buyer.

11. Seller represents and warrants that the LLC has in all respects performed all obligations required to be performed to date and is not, subject to any exceptions in this contract, in material default in any respect under any of the contracts, agreements, documents, or other commitments to which it is a party or by which it is otherwise bound or affected, and that all parties having contracts with the LLC are in material compliance and are not in material default under their respective contracts.

12. Seller represents and warrants that the respective books of account and minute books of the LLC are complete and correct and reflect all those transactions involving the LLC's business that properly should have been set forth in those books.

13. Seller represents and warrants that neither the LLC nor Seller will be obligated in any way for any commission, fee, or other remuneration to any finder, broker, or the like employed by any party in connection with this contract or its negotiation, execution, or performance.

## BUYER'S OBLIGATIONS

14. The obligation of Buyer to consummate this contract is subject to and conditioned on the satisfaction, at or prior to the signing hereof, of all of the applicable terms and conditions of this contract to be complied with and performed by Seller.

2

## REPRESENTATIONS AND WARRANTIES

15. All statements of fact contained in any certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this contract shall be deemed representations and warranties by Seller under this contract.

## INDEMNIFICATION

16. Each party agrees to indemnify and hold harmless the other party from any and all loss resulting from any misrepresentation or breach of warranty made herein. Seller agrees to indemnify and hold Buyer harmless from any and all claims against Buyer resulting from the acts or omissions of the LLC prior to the signing hereof. Buyer in turn agrees to indemnify and hold Seller harmless from any and all claims against Seller resulting form the acts or omissions of Buyer and the LLC after the signing hereof.

## EXPENSES

17. Each party shall bear all expenses incurred by it in connection with this contract and in the consummation and preparation for the transaction contemplated in this contract.

## ASSIGNMENT

18. Neither this contract nor any right created by this contract shall be assignable by either party without the prior written consent of the other. Nothing in this contract is intended to confer on any person other than the parties and their successors, any rights or remedies under or by reason of this contract.

## NOTICE

19. Any notice, communication, request, reply, or advice (collectively "Notice") shall be sent to:

**SELLER**
Anna Syrykh
346 Glen Meadow Rd
Richboro, PA 18954

**BUYER**
Tetyana Shevchenko
305 Somers Ave
Feasterville, PA 19053

## HEADINGS

20. Headings contained in this contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this contract.

## COUNTERPART EXECUTION

21. This contract may be executed in four or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## PARTIES IN INTEREST

22. All of the terms and provisions of this contract shall be binding on and inure to the benefit of and be enforceable by Buyer and Seller, along with their heirs, executors, administrators, and assigns.

## INTEGRATED CONTRACT

23. This contract constitutes the entire agreement between the parties, and there are no agreements, understandings, restrictions, warranties, or representations between the parties other than those set forth or provided for in this contract.

## CHOICE OF LAW

24. It is the intention of the parties that the laws of the Commonwealth of Pennsylvania should govern the validity of this contract, the construction of its terms, and the interpretation of the rights and

3

duties of the parties.

Dated on the day and date first above written.


SELLER                                          BUYER

SELLER ONLINE LLC                               SELLER ONLINE LLC

By: _____                   By: _____
    Name: Anna Syrykh                               Name: Tetyana Shevchenko
    Title: Member                                   Title: Member


4

# EXHIBIT G

[original document]

 Gmail                                        Tetyana Shevchenko <sh.tatjana@gmail.com>

---

## Before I forward it to lawyer, please check if I missed something

16 messages

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 4:46 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Anna sells to Vasil 49% as of 12/31/2023

1. For $700,000 (including $192,000 for 2% sold previously)
2. Anna will remain as salaried employee for duration necessary for business
3. 2023 business profits will remain in the business but Anna will be reimbursed for income taxes for her share of business

*Irina Sprishen CPA MST*

*101 E Pennsylvania Blvd*

*Feasterville, PA 19053*

*215-942-2980 (phone)*

*215-942-9443 (fax)*

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 5:36 PM
To: snacpa@comcast.net

Ирина, а как оплатить нам? Деньги есть в таком размере только у компании.
Даже если я выведу часть прибыли на свой счет, то как купит муж?

Best regards,
Tetyana Shevchenko

Вт, 26 дек. 2023 г. в 16:47, <snacpa@comcast.net>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 5:38 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Tanechka, money in business belong to you and Anna.  You can pay her from business, that is why it is a great deal for you that she wants only $700K

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 5:43 PM

To: snacpa@comcast.net

То есть я плачу как бы за мужа?
Так будет правильно?

Best regards,
Tetyana Shevchenko

Вт, 26 дек. 2023 г. в 17:38, <snacpa@comcast.net>:
.

---

**snacpa@comcast.net** <snacpa@comcast.net>                          Tue, Dec 26, 2023 at 5:45 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Yes

.  .   .

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                      Tue, Dec 26, 2023 at 7:56 PM
To: snacpa@comcast.net

По пункту 3. Доля бизнеса не только 23 года, а всего периода деятельности - именно так надо указать, что все остается в бизнесе. Просто с предыдущих лет налоги оплачены уже, а за 23 год оплатим.  Чтобы больше не было возможности никакой ко мне иметь финансовые вопросы.

Если можно, то укажите в соглашении, что так как Партнер выходит из бизнеса полностью, то должен передать
ключи от офиса, пароли от сигнализации, все контракты в бумажном виде, всю документацию компании,
личные дела сотрудников, пароли от электронной почты всех рабочих емейлов,
все пароли и доступы от рабочих аккаунтов,
все контакты ответственных лиц, а также контакты партнеров-поставщиков.

вт, 26 дек. 2023 г. в 16:47, <snacpa@comcast.net>:
.

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                      Tue, Dec 26, 2023 at 9:17 PM
To: snacpa@comcast.net

Vasyl Fursov SSN ████7169

вт, 26 дек. 2023 г. в 19:56, Tetyana Shevchenko <sh.tatjana@gmail.com>:
.

---

**snacpa@comcast.net** <snacpa@comcast.net>                          Tue, Dec 26, 2023 at 9:22 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Ok, will pass along

**From:** Tetyana Shevchenko <sh.tatjana@gmail.com>

**Sent:** Tuesday, December 26, 2023 9:17 PM
**To:** snacpa@comcast.net
**Subject:** Re: Before I forward it to lawyer, please check if I missed something


Vasyl Fursov SSN ███████7169

.

---

**Tetyana Shevchenko <sh.tatjana@gmail.com>**                     Wed, Dec 27, 2023 at 8:08 AM
To: snacpa@comcast.net

Доброе утро!

Ирина, можно ли включить также пункт об претензиях к имуществу компании, чтобы Аня не могла потребовать здания,
автомобиль или еще что-то.
Также, вопрос Атлантика.
Могу я попросить сделать их расписку, что со стороны Атлантика будут выплачены все деньги и требований не будет?

вт, 26 дек. 2023 г. в 21:22, <snacpa@comcast.net>:

---

**snacpa@comcast.net <snacpa@comcast.net>**                     Wed, Dec 27, 2023 at 8:34 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


Once Anna sells partnership interest, she does not have claim to the business assets.

Atlantic is a separate company, it is owned by another person, it cannot be part of this agreement, it has to be a separate contract.

---

**snacpa@comcast.net <snacpa@comcast.net>**                     Wed, Dec 27, 2023 at 11:37 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


Tanechka, I am trying to call you.

Can you please pick up the phone?  Calling from private number 😊


**From:** Tetyana Shevchenko <sh.tatjana@gmail.com>
**Sent:** Tuesday, December 26, 2023 9:17 PM
**To:** snacpa@comcast.net
**Subject:** Re: Before I forward it to lawyer, please check if I missed something


Vasyl Fursov SSN ████████

.

---

**Tetyana Shevchenko <sh.tatjana@gmail.com>**                     Wed, Dec 27, 2023 at 11:41 AM
To: snacpa@comcast.net

Да, пропустила, набирайте

ср, 27 дек. 2023 г. в 11:37, <snacpa@comcast.net>:

.
.
.

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Wed, Dec 27, 2023 at 11:46 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Will call in 15-20 min, on another call now

.

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                 Wed, Dec 27, 2023 at 12:02 PM
To: snacpa@comcast.net

Хорошо, я жду

ср, 27 дек. 2023 г. в 11:46, <snacpa@comcast.net>:

 ***Capital Translations, LLC***
ENVISION. COMMUNICATE. SUCCEED.
IN ANY LANGUAGE.

2 Torrey Lane
Princeton, NJ 08542
Phone: 646-752-1741
lana@capitaltranslations.net

## Certificate of Accuracy

We, Capital Translations, LLC, a professional translation company, hereby certify that the aforementioned documents have been reviewed by professional, competent, qualified, and experienced translators who are members of the American Translator's Association, and that, in our best judgment, the translation accurately reflects the content, meaning, and style of the original text and constitutes in every respect correct and true translation of the original document(s).

This is to certify the accuracy of the provided translation only. A copy of the translation is included with this Certificate. All enclosed documents are certified under this Certificate of Accuracy, including the following translations:

1) Email Correspondence of **Tetyana Shevchenko** and **Irina Sprishen, CPA**

**Language:** **Russian into English**

**Date:** May _18_, 2026

Svetlana Rachkovskaya
Owner/Translator
Capital Translations, LLC
Direct: (917) 498-8972
Fax: (212) 659-3242
lana@capitaltranslations.net

*This official translation from Russian into English is provided by Capital Translations, LLC, and has been translated/reviewed by the American Translator's Association's member. Please see the enclosed Certificate of Accuracy.*

 **Gmail**                                    Tetyana Shevchenko <sh.tatjana@gmail.com>

## Before I forward it to lawyer, please check if I missed something

16 messages

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 4:46 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Anna sells to Vasil 49% as of 12/31/2023

1. For $700,000 (including $192,000 for 2% sold previously)
2. Anna will remain as salaried employee for duration necessary for business
3. 2023 business profits will remain in the business but Anna will be reimbursed for income taxes for her share of business

*Irina Sprishen CPA MST*

*101 E Pennsylvania Blvd*

*Feasterville, PA 19053*

*215-942-2980 (phone)*

*215-942-9443 (fax)*

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 5:36 PM
To: snacpa@comcast.net

*[translated from Russian]*

Irina, how should we make the payment? Only the company has funds in that amount. Even if I withdrew part of the profits to my personal account, how would my husband be able to make the purchase?

Best regards,
Tetyana Shevchenko

Tue, Dec 26, 2023 at 4:47 PM, <snacpa@comcast.net>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 5:38 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

*This official translation from Russian into English is provided by Capital Translations, LLC, and has been translated/reviewed by the American Translator's Association's member. Please see the enclosed Certificate of Accuracy.*

Tanechka, money in business belong to you and Anna. You can pay her from business, that is why it is a great deal for you that she wants only $700K

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 5:43 PM

To: snacpa@comcast.net

*[translated from Russian]*

So I'm essentially paying for my husband?
Would that be the proper way to handle it?

Best regards,
Tetyana Shevchenko

Tue, Dec 26, 2023 at 5:38 PM, <snacpa@comcast.net>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 5:45 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Yes

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 7:56 PM
To: snacpa@comcast.net

*[translated from Russian]*

Regarding item 3. The business share applies not only to 2023 but to the entire period of the company's operations — that is how it needs to be stated to reflect that everything remains within the business. Taxes for prior years have already been paid, and we will pay the taxes for 2023. This is to ensure that no further financial questions will arise in relation to me.

If possible, please specify in the agreement that since the Partner is fully exiting the business, they must transfer the office keys, the alarm system passwords, all contracts in hard-copy form, all company documentation, employee personnel files, the passwords to all work email accounts, all passwords and access credentials for work-related accounts, all contact information for responsible parties, as well as the contact information for partner suppliers.

Tue, Dec 26, 2023 at 4:47 PM, <snacpa@comcast.net>:

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Dec 26, 2023 at 9:17 PM
To: snacpa@comcast.net

*This official translation from Russian into English is provided by Capital Translations, LLC, and has been translated/reviewed by the American Translator's Association's member. Please see the enclosed Certificate of Accuracy.*

*[message originally written in English]*

Vasyl Fursov SSN ████7169

*[translated from Russian]*

Tue, Dec 26, 2023 at 7:56 PM, Tetyana Shevchenko <sh.tatjana@gmail.com>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Tue, Dec 26, 2023 at 9:22 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Ok, will pass along

**From:** Tetyana Shevchenko <sh.tatjana@gmail.com>
**To:** snacpa@comcast.net
**Subject:** Re: Before I forward it to lawyer, please check if I missed something

*[message originally written in English]*

Vasyl Fursov SSN ████7169

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Wed, Dec 27, 2023 at 8:08 AM
To: snacpa@comcast.net

*[translated from Russian]*

Good morning!

Irina, is it possible to include a clause addressing claims to the company's property, ensuring that Anna cannot demand the buildings, the vehicle, or anything else?
I also have a question concerning Atlantic.
Can I request that they provide a written statement confirming that all payments from Atlantic will be made and that no claims will be raised?

Tue, Dec 26, 2023 at 9:22 PM, <snacpa@comcast.net>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Wed, Dec 27, 2023 at 8:34 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Once Anna sells partnership interest, she does not have claim to the business assets.

Atlantic is a separate company, it is owned by another person, it cannot be part of this agreement, it has to be a separate contract.

*This official translation from Russian into English is provided by Capital Translations, LLC, and has been translated/reviewed by the American Translator's Association's member. Please see the enclosed Certificate of Accuracy.*

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Wed, Dec 27, 2023 at 11:37 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Tanechka, I am trying to call you.

Can you please pick up the phone?  Calling from private number 😊

**From:** Tetyana Shevchenko <sh.tatjana@gmail.com>
**Sent:** Tuesday, December 26, 2023 9:17 PM
**To:** snacpa@comcast.net
**Subject:** Re: Before I forward it to lawyer, please check if I missed something

*[message originally written in English]*

Vasyl Fursov SSN ▨▨▨▨▨

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Wed, Dec 27, 2023 at 11:41 AM
To: snacpa@comcast.net

*[translated from Russian]*

Yes, I missed your call. Call me now.

Wed, Dec 27, 2023 at 11:37 AM, <snacpa@comcast.net>:

---

**snacpa@comcast.net** <snacpa@comcast.net>                    Wed, Dec 27, 2023 at 11:46 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

*[message originally written in English]*

Will call in 15-20 min, on another call now

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Wed, Dec 27, 2023 at 12:02 PM
To: snacpa@comcast.net

*[translated from Russian]*

All right, I am waiting.

Wed, Dec 27, 2023 at 11:46 AM, <snacpa@comcast.net>:

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                    Tue, Mar 18, 2025 at 7:42 PM

*This official translation from Russian into English is provided by Capital Translations, LLC, and has been translated/reviewed by the American Translator's Association's member. Please see the enclosed Certificate of Accuracy.*

# EXHIBIT H



## SALE OF MEMBERSHIP INTEREST
## SELLER ONLINE LLC

*A.S.*

*28th   T.S.*

THIS AGREEMENT is made effective as of the 31st Day of December, 2023 by and between Anna Syrykh, a resident of 346 Glen Meadow Road, Richboro, PA 18954, referred to hereinafter as "Seller," and Vasyl Fursov, a resident of 200 Thanet Circle, #119, Princeton, NJ 08540, along with Tetyana Shevchenko, also resident at the preceding address, and who are referred to hereinafter as "Buyers," with each being an individual "Buyer."

WHEREAS, Seller is the owner of fifty-one percent (51%) of the membership interest in Seller Online LLC, a Pennsylvania limited liability company with a business address at 635 Somers Avenue, Feasterville-Trevose, PA 19053 (hereinafter referred to as the "LLC"); and

WHEREAS, Seller desires to transfer to Buyers, and Buyers desire to acquire from Seller, all of Seller's membership interest in the LLC, with that interest transferred to Buyers on the terms and conditions contained in this contract; and

WHEREAS, pursuant to the above transfer, Buyer Vasyl Fursov will receive forty-nine percent (49%) of the membership interest in the LLC, and Buyer Tetyana Shevchenko will receive two percent (2%) of the membership interest in the LLC; and

NOW, THEREFORE, in consideration of the mutual promises and conditions contained in this contract, the parties hereto agree as follows:

### ACQUISITION OF MEMBERSHIP INTEREST

1. Subject to the terms and conditions of this agreement, Seller agrees to transfer and assign to Buyers, and Buyers agree to acquire, upon execution of this contract, fifty-one percent (51%) of the membership interest in the LLC. At the signing hereof, Seller shall deliver to Buyers a certificate or note evidencing the transfer, duly endorsed to Buyers. Upon execution, and from time to time after execution, Seller shall execute and deliver other documents and instruments, and take other actions, as Buyers may reasonably request, in order to more fully vest in Buyers fifty-one percent (51%) of the right, title, and interest in the LLC, and every other equivalent right, title, interest, claim, or demand of any kind that Seller may have in, to, or on any of the profits, assets, or businesses of the LLC, all of which shall remain the property of the LLC, and regardless of whether any of the same were generated, acquired, or arose during the time of Seller's ownership of her interest in the LLC.

In furtherance of the above, Seller shall, upon the execution of this agreement or within five (5) calendar days afterwards, provide Buyers specifically with the following, which is not an exhaustive list: (1) keys to the LLC business office; (2) passcode to the security and alarm system at the LLC business office; (3) hard copies of all LLC contracts, unless such copies either do not exist or cannot be provided in hard copy form, in which case electronic copies must be provided; (4) passwords for all LLC e-mail accounts; (5) passwords for all LLC operating, bank, and vendor accounts, as applicable; (6) complete contact information for all LLC members, officers, and service providers; and (7) personnel files for all LLC employees.

## PURCHASE PRICE

2. The purchase price is seven hundred thousand dollars ($700,000), payable by cash or bank check upon the execution of this agreement. Both Buyers and Seller have had the opportunity to discuss the suitability of this purchase price with their advisors, including but not limited to any valuation experts, and all agree that the foregoing amount is mutually acceptable and the sole compensation that Seller shall be entitled to in connection with the sale of her membership interest.

## SELLER'S REPRESENTATIONS REGARDING THE LLC

3. Seller represents and warrants that she has good, absolute, and marketable title to fifty-one percent (51%) of the LLC membership interest being transferred to Buyers, free and clear of all liens, claims, encumbrances, and restrictions of every kind, and Seller has the complete and unrestricted right, power, and authority to transfer and assign her membership interest.

4. Seller represents and warrants that the LLC is authorized to transfer fifty-one percent (51%) of its membership interest.

5. Seller represents and warrants that there are no outstanding options, contracts, commitments, warranties, agreements, or other rights of any character affecting or relating in any manner to the issuance of the LLC's membership interest or entitling anyone to acquire the LLC's membership interest.

6. Seller represents and warrants that the financial statements reviewed by Buyers, specifically the balance sheet of the LLC, as of December 31, 2022, and the related statement of income and retained earnings of the LLC for the year ended December 31, 2022, are in accordance with the books and records of the LLC and fairly represent the financial condition of the LLC at such dates and the results of its operations for the periods specified.

7. Seller represents and warrants that the LLC, since the balance sheet date: (a) has not incurred any obligations or liabilities except current liabilities in the ordinary course of business; (b) has not discharged or satisfied any liens or encumbrances, or paid any obligations or liabilities, except current balance sheet liabilities and current liabilities incurred since the balance sheet date in the ordinary course of business, or, in the alternative, separately disclosed to Buyers; (c) has not mortgaged, pledged, or subjected to lien, encumbrance, or charge any of its assets except from inventory in the ordinary course of its business; (d) has not suffered any damage, destruction, or loss (whether or not covered by insurance) materially affecting its properties, business, or prospects; (e) has not waived any rights of substantial value; and (f) has not entered into any transaction other than in the ordinary course of business.

8. Seller represents and warrants that the LLC has duly filed all federal, state, and local tax returns required to be filed by the LLC and that, subject to any exceptions in this contract, the LLC has paid all federal, state, and local taxes required to be paid with respect to the periods covered by the returns.

9. Seller represents and warrants that to the best of her knowledge, there are no lawsuits

2

or administrative proceedings pending or threatened against the LLC.

10. Seller represents and warrants that except as may be separately disclosed herein, the LLC is not a party to, or otherwise bound by any of the following kinds of contracts: (a) any written or oral contract not made in the ordinary course of business; (b) any employment or consultant contract not terminable at will without cost or other liability; (c) any bonus, pension, profit sharing, retirement, share or membership interest purchase, stock option, hospitalization, group insurance, or similar employee benefit plan; or (d) any real or personal property lease, as lessor or lessee.

11. Seller represents and warrants that the LLC has in all respects performed all obligations required to be performed to date and is not, subject to any exceptions in this contract, in material default in any respect under any of the contracts, agreements, documents, or other commitments to which it is a party or by which it is otherwise bound or affected, and that all parties having contracts with the LLC are in material compliance and are not in material default under their respective contracts.

12. Seller represents and warrants that the respective books of account and minute books of the LLC are complete and correct and reflect all those transactions involving the LLC's business that properly should have been set forth in those books.

13. Seller represents and warrants that neither the LLC nor Seller will be obligated in any way for any commission, fee, or other remuneration to any finder, broker, or the like employed by any party in connection with this contract or its negotiation, execution, or performance.

14. Seller represents and warrants that as of the date of this agreement, she has completed, executed, and mailed Internal Revenue Service Form 8822-B, *Change of Address and Responsible Party*, has named in that form Tetyana Shevchenko as the new responsible party for the LLC, and has provided Buyers with a copy of that submitted form.

## BUYERS' OBLIGATIONS

15. The obligation of Buyers to consummate this contract is subject to and conditioned on the satisfaction, at or prior to the signing hereof, of all of the applicable terms and conditions of this contract to be complied with and performed by Seller.

Notwithstanding the foregoing, Buyers hereby agree that promptly after their acquisition of the membership interest from Seller, the LLC shall hire Seller as an employee for a reasonable period of time enough to permit Buyer to fully familiarize himself with the LLC's operations, which shall in no event be for less than one (1) year. During this period, Seller's monthly net salary shall be eight thousand dollars ($8,000), and if she elects to participate in the LLC's health insurance plan (if any), the LLC shall pay Seller's employee premium for the same. After the aforementioned period has elapsed, Seller and the LLC may, if desired, prepare and execute a separate employment agreement reflecting the above and any alterations thereto.

Buyers hereby also agree that after their acquisition of the membership interest from

Seller, and at an appropriate date to be separately agreed on by the parties, the LLC shall fully reimburse Seller for all federal and state income taxes paid and payable by Seller in her 2023 tax year arising exclusively out of the income allocable to her in connection with her ownership of the LLC membership interest in that year, as reflected on Seller's final Schedule K-1 issued by the LLC. Seller shall not be entitled to any further reimbursement from the LLC, to any of the LLC's profits (whether accrued or to be earned), or to any additional compensation otherwise (outside of the purchase price) from the Buyers or the LLC whatsoever.

## SELLER'S OBLIGATIONS

16. In addition to other Seller obligations specified in this agreement, during Seller's initial term of employment with the LLC, she shall not, directly or indirectly, in any manner whatsoever, engage in any capacity with any business competitive with the LLC's current lines of business or any business then engaged in by the LLC, any of its subsidiaries, or any of its affiliates, whether for her own benefit or for the benefit of any person or entity other than the LLC or any subsidiary or affiliate of the LLC. Furthermore, during that term of employment, Seller shall not solicit or encourage any employee, vendor, independent contractor, or client of the LLC to leave or terminate their relationship with the LLC for any reason.

## REPRESENTATIONS AND WARRANTIES

17. All statements of fact contained in any certificate, instrument, or other document delivered by or on behalf of Seller for information or reliance pursuant to this contract shall be deemed representations and warranties by Seller under this contract.

## INDEMNIFICATION

18. Each party agrees to indemnify and hold harmless the other party from any and all loss resulting from any misrepresentation or breach of warranty made herein. Seller agrees to indemnify and hold Buyers harmless from any and all claims against Buyers resulting from the acts or omissions of the LLC prior to the signing hereof. Buyers in turn agree to indemnify and hold Seller harmless from any and all claims against Seller resulting form the acts or omissions of Buyers and the LLC after the signing hereof.

## EXPENSES

19. Each party shall bear all expenses incurred by it in connection with this contract and in the consummation and preparation for the transaction contemplated in this contract.

## ASSIGNMENT

20. Neither this contract nor any right created by this contract shall be assignable by either party without the prior written consent of the other. Nothing in this contract is intended to confer on any person other than the parties and their successors any rights or remedies under or by reason of this contract.

## NOTICE

21. Any notice, communication, request, reply, or advice (collectively "Notice") shall be sent to:

4

**SELLER**
Anna Syrykh
346 Glen Meadow Road
Richboro, PA 18954

**BUYERS**
Vasyl Fursov
200 Thanet Circle, #119
Princeton, NJ 08540

Tetyana Shevchenko
200 Thanet Circle, #119
Princeton, NJ 08540

## HEADINGS

22. Headings contained in this contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this contract.

## COUNTERPART EXECUTION

23. This contract may be executed in four or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## PARTIES IN INTEREST

24. All of the terms and provisions of this contract shall be binding on and inure to the benefit of and be enforceable by Buyers and Seller, along with their heirs, executors, administrators, and assigns.

## INTEGRATED CONTRACT

25. This contract constitutes the entire agreement between the parties, and there are no agreements, understandings, restrictions, warranties, or representations between the parties other than those set forth or provided for in this contract.

## CHOICE OF LAW

26. It is the intention of the parties that the laws of the Commonwealth of Pennsylvania should govern the validity of this contract, the construction of its terms, and the interpretation of the rights and duties of the parties.

[Signatures page follows]

5

IN WITNESS WHEREOF, the parties hereto, agreeing to be bound, have set their signatures below.

SELLER

SELLER ONLINE LLC

By: _____

Name: Anna Syrykh
Title: Member

Date: 12 / 28 / 23

Commonwealth of Pennsylvania
County of __Bucks__

Signed and sworn to (or affirmed) before me
on 12-28-2023
by ANNA SYRYKH,
VASYL FURSOV and
TETYANA SHEVCHENKO

Commonwealth of Pennsylvania - Notary Seal
Georgiy V. Tatarintsev, Notary Public
Bucks County
My commission expires May 20, 2027
Commission number 1351891
Member, Pennsylvania Association of Notaries

BUYERS

By: _____

Name: Vasyl Fursov

Date: 12 / 28 / 2023

By: _____

Name: Tetyana Shevchenko

Date: 12/28/2023

6

# EXHIBIT I

651123

| ☒ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |
|---|---|---|

**Schedule K-1
(Form 1065)**

Department of the Treasury
Internal Revenue Service

**2023**

For calendar year 2023, or tax year

beginning   /   / 2023   ending   /   /

**Partner's Share of Income, Deductions, Credits, etc.**

See separate instructions.

## Part I   Information About the Partnership

**A** Partnership's employer identification number

██████585

**B** Partnership's name, address, city, state, and ZIP code

Seller Online LLC
635 Somers Ave
Feasterville Trevose, PA 19053

**C** IRS center where partnership filed return: Kansas City, MO

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)

██████3197

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

Anna Syrykh
346 Glen Meadow Rd
Richboro PA 18954

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____ Name _____

**I1** What type of entity is this partner? Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 49.00000 % | 49.00000 % |
| Loss | 49.00000 % | 49.00000 % |
| Capital | 49.00000 % | 49.00000 % |

Check if decrease is due to:

☐ Sale or ☐ Exchange of partnership interest. See instructions.

**K1** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 2,175,229. | $ 0. |
| Qualified nonrecourse financing | $ | $ |
| Recourse | $ | $ |

**K2** ☐ Check this box if item K1 includes liability amounts from lower-tier partnerships

**K3** ☐ Check if any of the above liability is subject to guarantees or other payment obligations by the partner. See instructions

**L**    **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account | $ 1,161,726. |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ 0. |
| Other increase (decrease) (attach explanation) | $ |
| Withdrawals and distributions | $ ( 564,926. ) |
| Ending capital account | $ 596,800. |

**M** Did the partner contribute property with a built-in gain (loss)?

☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N**    **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**

Beginning . . . . . . . . $ _____

Ending . . . . . . . . . $ _____

## Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| **1** | Ordinary business income (loss)   0. | **14** | Self-employment earnings (loss) | A   787,393. |
| **2** | Net rental real estate income (loss)   0. | | | C   0. |
| **3** | Other net rental income (loss) | **15** | Credits | |
| **4a** | Guaranteed payments for services   787,393. | | | |
| **4b** | Guaranteed payments for capital | **16** | Schedule K-3 is attached if checked . . . . . ☐ | |
| **4c** | Total guaranteed payments   787,393. | **17** | Alternative minimum tax (AMT) items | A   0. |
| **5** | Interest income | | | |
| **6a** | Ordinary dividends | | | |
| **6b** | Qualified dividends | **18** | Tax-exempt income and nondeductible expenses | |
| **6c** | Dividend equivalents | | | C   0. |
| **7** | Royalties | | | |
| **8** | Net short-term capital gain (loss) | | | |
| | | **19** | Distributions | A   564,926. |
| **9a** | Net long-term capital gain (loss) | | | |
| **9b** | Collectibles (28%) gain (loss) | | | |
| **9c** | Unrecaptured section 1250 gain | **20** | Other information | |
| | | | | N * STMT   0. |
| **10** | Net section 1231 gain (loss) | | | AG * STMT |
| **11** | Other income (loss) | | | Z * STMT |
| **12** | Section 179 deduction | **21** | Foreign taxes paid or accrued | |
| **13** | Other deductions | | | |
| **22** | ☐ More than one activity for at-risk purposes* | | | |
| **23** | ☐ More than one activity for passive activity purposes* | | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.    www.irs.gov/Form1065    REV 02/15/24 PRO    **Schedule K-1 (Form 1065) 2023**

BAA

Seller Online LLC

## Additional Information From Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Anna Syrykh)

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Anna Syrykh)
**Supplemental Information**      **Continuation Statement**

| Description | Amount |
|---|---|
| Box 20, Code N: | |
|    Business interest expense detail | |
| -Included in ord business income (line 1) | 0. |
| -Included in rental income (line 2) | |
| Box 20, Code AG: | |
|    Gross receipts for section 448(c) 2020 | 0. |

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Anna Syrykh)
**Form 8825 Rental Inc/Loss Details for Reporting Purposes**      **Continuation Statement**

| Description | Amount |
|---|---|
| 10071 Sandmeyer Ln | |
| Property type: 4 Commercial | 0. |
| Total | 0. |

## Statement A—QBI Pass-through Entity Reporting

| Partnership's name: Seller Online LLC | | Partnership's EIN: [redacted]585 | | |
|---|---|---|---|---|
| Partner's name: Anna Syrykh | | Partner's identifying no: [redacted]3197 | | |
| | 1065, Line 22 | 10071 Sandmeyer Ln | | |
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Partner's share of:**

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | | |
|---|---|---|---|---|
| Ordinary business income (loss) . . . . . . . . . . . . . . . | 458,975. | | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . . | | 166. | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . . | | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . | | | | |
| **W-2 wages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 253,623. | | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . . . . . . . | 350,618. | 1,044,205. | | |
| **Section 199A dividends** . . . . . | | | | |

## Statement A—QBI Pass-through Entity Reporting

| Partnership's name: | | Partnership's EIN: | | |
|---|---|---|---|---|
| Partner's name: | | Partner's identifying no: | | |
| | | | | |
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Partner's share of:**

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | | |
|---|---|---|---|---|
| Ordinary business income (loss) . . . . . . . . . . . . . . . | | | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . . | | | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . . | | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . | | | | |
| **W-2 wages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . . . . . . . | | | | |
| **Section 199A dividends** . . . . . | | | | |

REV 02/15/24 PRO

# EXHIBIT J

651123

| | | | |
|---|---|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | | OMB No. 1545-0123 |

## Schedule K-1 (Form 1065)

**2023**

Department of the Treasury
Internal Revenue Service

For calendar year 2023, or tax year

beginning  /  / 2023   ending  /  /

## Partner's Share of Income, Deductions, Credits, etc.

*See separate instructions.*

### Part I  Information About the Partnership

**A** Partnership's employer identification number

████████585

**B** Partnership's name, address, city, state, and ZIP code

Seller Online LLC
635 Somers Ave
Feasterville Trevose, PA 19053

**C** IRS center where partnership filed return: Kansas City, MO

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)

████████7634

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

Tetyana Shevchenko
200 Thanet Circle #119
Princeton NJ 08540

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____ Name _____

**I1** What type of entity is this partner? Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here . ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 51.00000 % | 50.00000 % |
| Loss | 51.00000 % | 50.00000 % |
| Capital | 51.00000 % | 50.00000 % |

Check if decrease is due to:

☐ Sale  or  ☐ Exchange of partnership interest. See instructions.

**K1** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 2,264,013. | $ 1,482,260. |
| Qualified nonrecourse financing . . . $ | | $ |
| Recourse . . . $ | | $ |

**K2** ☐ Check this box if item K1 includes liability amounts from lower-tier partnerships

**K3** Check if any of the above liability is subject to guarantees or other payment obligations by the partner. See instructions . . . . . . ☐

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . . $ | 1,250,280. |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . . $ | 468,207. |
| Other increase (decrease) (attach explanation) $ | |
| Withdrawals and distributions . . . $ ( | ) |
| Ending capital account . . . . $ | 1,718,487. |

**M** Did the partner contribute property with a built-in gain (loss)?

☐ Yes  ☒ No   If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)

Beginning . . . . . . . . . $ _____
Ending . . . . . . . . . $ _____

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 Ordinary business income (loss) | 468,342. | 14 Self-employment earnings (loss) A | 611,691. |
| 2 Net rental real estate income (loss) | 169. | | |
| 3 Other net rental income (loss) | | 15 Credits | |
| 4a Guaranteed payments for services | 611,691. | | |
| 4b Guaranteed payments for capital | | 16 Schedule K-3 is attached if checked . . . . . ☐ | |
| 4c Total guaranteed payments | 611,691. | 17 Alternative minimum tax (AMT) items A | −683. |
| 5 Interest income | | | |
| 6a Ordinary dividends | | | |
| 6b Qualified dividends | | 18 Tax-exempt income and nondeductible expenses | |
| 6c Dividend equivalents | | C | 304. |
| 7 Royalties | | | |
| 8 Net short-term capital gain (loss) | | | |
| 9a Net long-term capital gain (loss) | | 19 Distributions | |
| 9b Collectibles (28%) gain (loss) | | | |
| 9c Unrecaptured section 1250 gain | | 20 Other information | |
| 10 Net section 1231 gain (loss) | | N * STMT | 6,380. |
| 11 Other income (loss) | | AG * STMT | |
| 12 Section 179 deduction | | Z * STMT | |
| 13 Other deductions | | 21 Foreign taxes paid or accrued | |
| | | | |
| | | 22 ☐ More than one activity for at-risk purposes* | |
| | | 23 ☐ More than one activity for passive activity purposes* | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.
BAA

www.irs.gov/Form1065    REV 02/15/24 PRO    Schedule K-1 (Form 1065) 2023

Seller Online LLC 　　　　　　　　　　　　　　　　　　　　　　8585 　　　　　　　　　1

## Additional Information From Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Tetyana Shevchenko)

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Tetyana Shevchenko)

**Supplemental Information** 　　　　　　　　　　　　　　　　**Continuation Statement**

| Description | Amount |
|---|---|
| Box 20, Code N: | |
| 　Business interest expense detail | |
| -Included in ord business income (line 1) | 6,380. |
| -Included in rental income (line 2) | |
| Box 20, Code AG: | |
| 　Gross receipts for section 448(c) 2020 | 31,388,868. |

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Tetyana Shevchenko)

**Form 8825 Rental Inc/Loss Details for Reporting Purposes** 　　　　**Continuation Statement**

| Description | Amount |
|---|---|
| 10071 Sandmeyer Ln | |
| Property type: 4 Commercial | 169. |
| **Total** | 169. |

## Statement A—QBI Pass-through Entity Reporting

| Partnership's name: Seller Online LLC | | Partnership's EIN: ▇585 | |
|---|---|---|---|
| Partner's name: Tetyana Shevchenko | | Partner's identifying no: ▇7634 | |

| Partner's share of: | 1065, Line 22 | 10071 Sandmeyer Ln | |
|---|---|---|---|
| | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | |
|---|---|---|---|
| Ordinary business income (loss) | 9,367. | | |
| Rental income (loss) | | 3. | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| W-2 wages | 5,176. | | |
| UBIA of qualified property | 7,155. | 21,310. | |
| Section 199A dividends | | | |

## Statement A—QBI Pass-through Entity Reporting

| Partnership's name: | | Partnership's EIN: | |
|---|---|---|---|
| Partner's name: | | Partner's identifying no: | |

| Partner's share of: | | | |
|---|---|---|---|
| | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | |
|---|---|---|---|
| Ordinary business income (loss) | | | |
| Rental income (loss) | | | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| W-2 wages | | | |
| UBIA of qualified property | | | |
| Section 199A dividends | | | |

REV 02/15/24 PRO

# EXHIBIT K

651123

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2023** |
|---|---|

For calendar year 2023, or tax year

beginning ___ / ___ / 2023   ending ___ / ___ / ___

## Partner's Share of Income, Deductions, Credits, etc.

See separate instructions.

### Part I   Information About the Partnership

**A** Partnership's employer identification number

████████585

**B** Partnership's name, address, city, state, and ZIP code

Seller Online LLC
635 Somers Ave
Feasterville Trevose, PA 19053

**C** IRS center where partnership filed return:  Kansas City, MO

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)

██████7169

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

Vasyl Fursov
200 Thanet Circle #119
Princeton NJ 08540

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:

TIN _____  Name _____

**I1** What type of entity is this partner?  Individual

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here . ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 50.00000 % | 50.00000 % |
| Loss | 50.00000 % | 50.00000 % |
| Capital | 50.00000 % | 50.00000 % |

Check if decrease is due to:
☐ Sale  or  ☐ Exchange of partnership interest. See instructions.

**K1** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 2,219,621. | $ 1,482,261. |
| Qualified nonrecourse financing . . . $ | | $ |
| Recourse . . . $ | | $ |

**K2** Check this box if item K1 includes liability amounts from lower-tier partnerships ☐

**K3** Check if any of the above liability is subject to guarantees or other payment obligations by the partner. See instructions . . . . . ☐

**L**   Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account . . . $ | |
| Capital contributed during the year . . $ | |
| Current year net income (loss) . . . $ | 468,208. |
| Other increase (decrease) (attach explanation) $ | |
| Withdrawals and distributions . . . $ ( | ) |
| Ending capital account . . . . $ | 468,208. |

**M** Did the partner contribute property with a built-in gain (loss)?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N**   Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)

Beginning . . . . . . . . $ _____
Ending . . . . . . . . $ _____

### Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| 1 | Ordinary business income (loss) | | 14 | Self-employment earnings (loss) | |
|---|---|---|---|---|---|
| | | 468,342. | A | | 468,342. |
| 2 | Net rental real estate income (loss) | | C | | 1,681,427. |
| | | 170. | | | |
| 3 | Other net rental income (loss) | | 15 | Credits | |
| 4a | Guaranteed payments for services | | | | |
| 4b | Guaranteed payments for capital | | 16 | Schedule K-3 is attached if checked . . . . . ☐ | |
| 4c | Total guaranteed payments | | 17 | Alternative minimum tax (AMT) items | |
| 5 | Interest income | | A | | -683. |
| 6a | Ordinary dividends | | | | |
| 6b | Qualified dividends | | 18 | Tax-exempt income and nondeductible expenses | |
| 6c | Dividend equivalents | | C | | 304. |
| 7 | Royalties | | | | |
| 8 | Net short-term capital gain (loss) | | | | |
| | | | 19 | Distributions | |
| 9a | Net long-term capital gain (loss) | | | | |
| 9b | Collectibles (28%) gain (loss) | | | | |
| | | | 20 | Other information | |
| 9c | Unrecaptured section 1250 gain | | N * | STMT | 6,381. |
| 10 | Net section 1231 gain (loss) | | AG * | STMT | |
| 11 | Other income (loss) | | Z * | STMT | |
| 12 | Section 179 deduction | | 21 | Foreign taxes paid or accrued | |
| 13 | Other deductions | | | | |
| | | | 22 ☐ More than one activity for at-risk purposes* | | |
| | | | 23 ☐ More than one activity for passive activity purposes* | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see the Instructions for Form 1065.   www.irs.gov/Form1065   REV 02/15/24 PRO   Schedule K-1 (Form 1065) 2023

BAA

Seller Online LLC                                         585                          1

## Additional Information From Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Vasyl Fursov)

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Vasyl Fursov)

**Supplemental Information**     Continuation Statement

| Description | Amount |
|---|---|
| Box 20, Code N: | |
|   Business interest expense detail | |
| -Included in ord business income (line 1) | 6,381. |
| -Included in rental income (line 2) | |
| Box 20, Code AG: | |
|   Gross receipts for section 448(c) 2020 | 31,388,868. |

### Schedule K-1: Partner's Share of Income, Deductions, Credits, etc. (Vasyl Fursov)

**Form 8825 Rental Inc/Loss Details for Reporting Purposes**     Continuation Statement

| Description | Amount |
|---|---|
| 10071 Sandmeyer Ln | |
| Property type: 4 Commercial | 170. |
| **Total** | 170. |

**Statement A—QBI Pass-through Entity Reporting**

| Partnership's name: Seller Online LLC | | Partnership's EIN: ████585 | |
|---|---|---|---|
| Partner's name: Vasyl Fursov | | Partner's identifying no: ████7169 | |

| | 1065, Line 22 | 10071 Sandmeyer Ln | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Partner's share of:**

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | |
|---|---|---|---|
| Ordinary business income (loss) | 468,342. | | |
| Rental income (loss) | | 170. | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| W-2 wages | 258,799. | | |
| UBIA of qualified property | 357,774. | 1,065,515. | |
| Section 199A dividends | | | |

**Statement A—QBI Pass-through Entity Reporting**

| Partnership's name: | | Partnership's EIN: | |
|---|---|---|---|
| Partner's name: | | Partner's identifying no: | |

| | | | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Partner's share of:**

**QBI or qualified PTP items subject to partner-specific determinations:**

| | | | |
|---|---|---|---|
| Ordinary business income (loss) | | | |
| Rental income (loss) | | | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| W-2 wages | | | |
| UBIA of qualified property | | | |
| Section 199A dividends | | | |

REV 02/15/24 PRO

# EXHIBIT L

Form **1040-NR**  Department of the Treasury—Internal Revenue Service  **2023**  OMB No. 1545-0074  IRS Use Only—Do not write or staple in this space

**U.S. Nonresident Alien Income Tax Return**

See separate instructions.

For the year Jan. 1–Dec. 31, 2023, or other tax year beginning _____, 2023, ending _____, 20 _____

| Your first name and middle initial | Last name | Your identifying number (see instructions) |
|---|---|---|
| Tetyana | Shevchenko | ███ 7639 |

| Home address (number and street). If you have a P.O. box, see instructions. | | Apt. no. |
|---|---|---|
| 200 Thanet Circle | | 119 |

| City, town, or post office. If you have a foreign address, also complete spaces below. | State | ZIP code |
|---|---|---|
| Princeton | NJ | 08540 |

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|
| | | |

**Filing Status**
Check only one box.

☐ Single   ☒ Married filing separately (MFS)   ☐ Qualifying surviving spouse (QSS)   ☐ Estate   ☐ Trust

If you checked the QSS box, enter the child's name if the qualifying person is a child but not your dependent:

..............................................................................................................

**Digital Assets** At any time during 2023, did you: (a) receive (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? (See instructions.)   ☐ Yes   ☒ No

**Dependents** (see instructions):

| (1) First name   Last name | (2) Dependent's identifying number | (3) Relationship to you | (4) Check the box if qualifies for (see inst.): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |
| | | | ☐ | ☐ |

If more than four dependents, see instructions and check here ☐

**Income Effectively Connected With U.S. Trade or Business**

Attach Form(s) W-2, 1042-S, SSA-1042-S, RRB-1042-S, and 8288-A here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a Form W-2, see instructions.

| | | | |
|---|---|---|---|
| 1a | Total amount from Form(s) W-2, box 1 (see instructions) | 1a | |
| b | Household employee wages not reported on Form(s) W-2 | 1b | |
| c | Tip income not reported on line 1a (see instructions) | 1c | |
| d | Medicaid waiver payments not reported on Form(s) W-2 (see instructions) | 1d | |
| e | Taxable dependent care benefits from Form 2441, line 26 | 1e | |
| f | Employer-provided adoption benefits from Form 8839, line 29 | 1f | |
| g | Wages from Form 8919, line 6 | 1g | |
| h | Other earned income (see instructions) | 1h | |
| i | Reserved for future use | 1i | |
| j | Reserved for future use | 1j | |
| k | Total income exempt by a treaty from Schedule OI (Form 1040-NR), item L, line 1(e) | 1k | |
| z | Add lines 1a through 1h | 1z | |
| 2a | Tax-exempt interest ___ 2a ___   b Taxable interest | 2b | 339. |
| 3a | Qualified dividends ___ 3a ___   b Ordinary dividends | 3b | |
| 4a | IRA distributions ___ 4a ___   b Taxable amount | 4b | |
| 5a | Pensions and annuities ___ 5a ___   b Taxable amount | 5b | |
| 6 | Reserved for future use | 6 | |
| 7 | Capital gain or (loss). Attach Schedule D (Form 1040) if required. If not required, check here ☐ | 7 | |
| 8 | Additional income from Schedule 1 (Form 1040), line 10 | 8 | ███. |
| 9 | Add lines 1z, 2b, 3b, 4b, 5b, 7, and 8. This is your total effectively connected income | 9 | ███. |
| 10 | Adjustments to income from Schedule 1 (Form 1040), line 26. These are your total adjustments to income | 10 | |
| 11 | Subtract line 10 from line 9. This is your adjusted gross income | 11 | ███. |
| 12 | Itemized deductions (from Schedule A (Form 1040-NR)) or, for certain residents of India, standard deduction (see instructions) | 12 | 0. |
| 13a | Qualified business income deduction from Form 8995 or Form 8995-A ___ 13a ___ ███. | | |
| b | Exemptions for estates and trusts only (see instructions) ___ 13b ___ | | |
| c | Add lines 13a and 13b | 13c | ███. |
| 14 | Add lines 12 and 13c | 14 | ███. |
| 15 | Subtract line 14 from line 11. If zero or less, enter -0-. This is your taxable income | 15 | ███. |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.   Form **1040-NR** (2023)

Form 1040-NR (2023)

Page **2**

| Tax and Credits | | | |
|---|---|---|---|
| | 16 | Tax (see instructions). Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972  3 ☐ _____ | 16 | ████ . |
| | 17 | Amount from Schedule 2 (Form 1040), line 3 | 17 | 0. |
| | 18 | Add lines 16 and 17 | 18 | ████ |
| | 19 | Child tax credit or credit for other dependents from Schedule 8812 (Form 1040) | 19 | |
| | 20 | Amount from Schedule 3 (Form 1040), line 8 | 20 | |
| | 21 | Add lines 19 and 20 | 21 | |
| | 22 | Subtract line 21 from line 18. If zero or less, enter -0- | 22 | ████ . |

| | 23a | Tax on income not effectively connected with a U.S. trade or business from Schedule NEC (Form 1040-NR), line 15 | 23a | |
| | b | Other taxes, including self-employment tax, from Schedule 2 (Form 1040), line 21 | 23b | |
| | c | Transportation tax (see instructions) | 23c | |
| | d | Add lines 23a through 23c | | 23d | |
| | 24 | Add lines 22 and 23d. This is your total tax | | 24 | ████ |

| Payments | 25 | Federal income tax withheld from: | | |
|---|---|---|---|---|
| | a | Form(s) W-2 | 25a | |
| | b | Form(s) 1099 | 25b | |
| | c | Other forms (see instructions) | 25c | |
| | d | Add lines 25a through 25c | | 25d | |
| | e | Form(s) 8805 | | 25e | |
| | f | Form(s) 8288-A | | 25f | |
| | g | Form(s) 1042-S | | 25g | |
| | 26 | 2023 estimated tax payments and amount applied from 2022 return | | 26 | |
| | 27 | Reserved for future use | 27 | |
| | 28 | Additional child tax credit from Schedule 8812 (Form 1040) | 28 | |
| | 29 | Credit for amount paid with Form 1040-C | 29 | |
| | 30 | Reserved for future use | 30 | |
| | 31 | Amount from Schedule 3 (Form 1040), line 15 | 31 | |
| | 32 | Add lines 28, 29, and 31. These are your total other payments and refundable credits | | 32 | |
| | 33 | Add lines 25d, 25e, 25f, 25g, 26, and 32. These are your total payments | | 33 | |

| Refund | 34 | If line 33 is more than line 24, subtract line 24 from line 33. This is the amount you overpaid | | 34 | |
|---|---|---|---|---|
| | 35a | Amount of line 34 you want refunded to you. If Form 8888 is attached, check here ☐ | | 35a | |
| Direct deposit? See instructions. | b | Routing number  X X X X X X X X X   c Type: ☐ Checking  ☐ Savings | | |
| | d | Account number  X X X X X X X X X X X X X X X X X | | |
| | e | If you want your refund check mailed to an address outside the United States not shown on page 1, enter it here. | | |
| | 36 | Amount of line 34 you want applied to your 2024 estimated tax | 36 | |

| Amount You Owe | 37 | Subtract line 33 from line 24. This is the amount you owe. For details on how to pay, go to *www.irs.gov/Payments* or see instructions | | 37 | ████ . |
|---|---|---|---|---|
| | 38 | Estimated tax penalty (see instructions) | 38 | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS? See instructions. ☒ Yes. Complete below.  ☐ No

| Designee's name | Irina Sprishen CPA MST | Phone no. | (215) 942-2980 | Personal identification number (PIN) | ████ 5 5 |
|---|---|---|---|---|---|

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | business owner | If the IRS sent you an Identity Protection PIN, enter it here (see inst.) |
|---|---|---|---|---|

| Phone no. | Email address |
|---|---|

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: |
|---|---|---|---|---|
| Irina Sprishen CPA MST | Irina Sprishen CPA MST | 03/16/2024 | ████ 938 | ☒ Self-employed |
| Firm's name  Irina Sprishen CPA PC | | | | Phone no. (215) 942-2980 |
| Firm's address  101 East Pennsylvania Blvd. Feasterville PA 19053 | | | Firm's EIN  ████ 404 | |

Go to *www.irs.gov/Form1040NR* for instructions and the latest information.

BAA    REV 02/22/24 PRO    Form **1040-NR** (2023)

**SCHEDULE 1**
(Form 1040)

Department of the Treasury
Internal Revenue Service

# Additional Income and Adjustments to Income

Attach to Form 1040, 1040-SR, or 1040-NR.
Go to www.irs.gov/Form1040 for instructions and the latest information.

OMB No. 1545-0074

**2023**

Attachment
Sequence No. 01

Name(s) shown on Form 1040, 1040-SR, or 1040-NR
Tetyana Shevchenko

Your social security number
7639

## Part I  Additional Income

| | | |
|---|---|---|
| 1 | Taxable refunds, credits, or offsets of state and local income taxes | **1** |
| 2a | Alimony received | **2a** |
| b | Date of original divorce or separation agreement (see instructions): | |
| 3 | Business income or (loss). Attach Schedule C | **3** |
| 4 | Other gains or (losses). Attach Form 4797 | **4** |
| 5 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | **5** |
| 6 | Farm income or (loss). Attach Schedule F | **6** |
| 7 | Unemployment compensation | **7** |
| 8 | Other income: | |
| a | Net operating loss | 8a ( ) |
| b | Gambling | 8b |
| c | Cancellation of debt | 8c |
| d | Foreign earned income exclusion from Form 2555 | 8d ( ) |
| e | Income from Form 8853 | 8e |
| f | Income from Form 8889 | 8f |
| g | Alaska Permanent Fund dividends | 8g |
| h | Jury duty pay | 8h |
| i | Prizes and awards | 8i |
| j | Activity not engaged in for profit income | 8j |
| k | Stock options | 8k |
| l | Income from the rental of personal property if you engaged in the rental for profit but were not in the business of renting such property | 8l |
| m | Olympic and Paralympic medals and USOC prize money (see instructions) | 8m |
| n | Section 951(a) inclusion (see instructions) | 8n |
| o | Section 951A(a) inclusion (see instructions) | 8o |
| p | Section 461(l) excess business loss adjustment | 8p |
| q | Taxable distributions from an ABLE account (see instructions) | 8q |
| r | Scholarship and fellowship grants not reported on Form W-2 | 8r |
| s | Nontaxable amount of Medicaid waiver payments included on Form 1040, line 1a or 1d | 8s ( ) |
| t | Pension or annuity from a nonqualifed deferred compensation plan or a nongovernmental section 457 plan | 8t |
| u | Wages earned while incarcerated | 8u |
| z | Other income. List type and amount: | 8z |
| 9 | Total other income. Add lines 8a through 8z | **9** |
| 10 | Combine lines 1 through 7 and 9. This is your additional income. Enter here and on Form 1040, 1040-SR, or 1040-NR, line 8 | **10** |

For Paperwork Reduction Act Notice, see your tax return instructions.

Schedule 1 (Form 1040) 2023

Schedule 1 (Form 1040) 2023                                                                                          Page **2**

## Part II  Adjustments to Income

| | | |
|---|---|---|
| 11 | Educator expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** |
| 12 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 . . . . . . . . . . . . . . . . . . . . . . . | **12** |
| 13 | Health savings account deduction. Attach Form 8889 . . . . . . . . . . . . . | **13** |
| 14 | Moving expenses for members of the Armed Forces. Attach Form 3903 . . . . . . . | **14** |
| 15 | Deductible part of self-employment tax. Attach Schedule SE . . . . . . . . . . | **15** |
| 16 | Self-employed SEP, SIMPLE, and qualified plans . . . . . . . . . . . . . . . | **16** |
| 17 | Self-employed health insurance deduction . . . . . . . . . . . . . . . . . | **17** |
| 18 | Penalty on early withdrawal of savings . . . . . . . . . . . . . . . . . . | **18** |
| 19a | Alimony paid . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19a** |
| b | Recipient's SSN . . . . . . . . . . . . . . . . . . . . . . . | |
| c | Date of original divorce or separation agreement (see instructions): _____ | |
| 20 | IRA deduction . . . . . . . . . . . . . . . . . . . . . . . . . . | **20** |
| 21 | Student loan interest deduction . . . . . . . . . . . . . . . . . . . . | **21** |
| 22 | Reserved for future use . . . . . . . . . . . . . . . . . . . . . . | **22** |
| 23 | Archer MSA deduction . . . . . . . . . . . . . . . . . . . . . . | **23** |

24  Other adjustments:

| | | | |
|---|---|---|---|
| a | Jury duty pay (see instructions) . . . . . . . . . . . . . . . | **24a** | |
| b | Deductible expenses related to income reported on line 8I from the rental of personal property engaged in for profit . . . . . . . . | **24b** | |
| c | Nontaxable amount of the value of Olympic and Paralympic medals and USOC prize money reported on line 8m . . . . . . . . . . | **24c** | |
| d | Reforestation amortization and expenses . . . . . . . . . . . | **24d** | |
| e | Repayment of supplemental unemployment benefits under the Trade Act of 1974 . . . . . . . . . . . . . . . . . . . . . . . | **24e** | |
| f | Contributions to section 501(c)(18)(D) pension plans . . . . . . . | **24f** | |
| g | Contributions by certain chaplains to section 403(b) plans . . . . | **24g** | |
| h | Attorney fees and court costs for actions involving certain unlawful discrimination claims (see instructions) . . . . . . . . . . . . | **24h** | |
| i | Attorney fees and court costs you paid in connection with an award from the IRS for information you provided that helped the IRS detect tax law violations . . . . . . . . . . . . . . . . . . . . | **24i** | |
| j | Housing deduction from Form 2555 . . . . . . . . . . . . . | **24j** | |
| k | Excess deductions of section 67(e) expenses from Schedule K-1 (Form 1041) . . . . . . . . . . . . . . . . . . . . . . . . . | **24k** | |
| z | Other adjustments. List type and amount: _____ | **24z** | |

| | | |
|---|---|---|
| 25 | Total other adjustments. Add lines 24a through 24z . . . . . . . . . . . . . . | **25** |
| 26 | Add lines 11 through 23 and 25. These are your **adjustments to income.** Enter here and on Form 1040, 1040-SR, or 1040-NR, line 10 . . . . . . . . . . . . . . . . . | **26** |

BAA                    REV 02/22/24 PRO              Schedule 1 (Form 1040) 2023

| SCHEDULE A<br>(Form 1040-NR)<br><br>Department of the Treasury<br>Internal Revenue Service | **Itemized Deductions**<br>Attach to Form 1040-NR.<br>Go to *www.irs.gov/Form1040NR* for instructions and the latest information.<br>Caution: If you are claiming a net qualified disaster loss on Form 4684, see instructions for line 7. | OMB No. 1545-0074<br>**2023**<br>Attachment<br>Sequence No. **7A** |

Name shown on Form 1040-NR

Tetyana Shevchenko

Your identifying number

▊7639

| | | | | |
|---|---|---|---|---|
| **Taxes You Paid** | 1a | State and local income taxes . . . . . . . . . . . . | **1a** | |
| | b | Enter the smaller of line 1a or $10,000 ($5,000 if married filing separately) . . . . . . . | **1b** | |
| **Gifts to U.S. Charities** | 2 | Gifts by cash or check. If you made any gift of $250 or more, see instructions . . . . . . . . . . . . . . . . . . | **2** | |
| **Caution: If you made a gift and got a benefit for it, see instructions.** | 3 | Other than by cash or check. If you made any gift of $250 or more, see instructions. You **must** attach Form 8283 if over $500 . . . | **3** | |
| | 4 | Carryover from prior year . . . . . . . . . . . . . | **4** | |
| | 5 | Add lines 2 through 4 . . . . . . . . . . . . . . . . . . . . . | | **5** |
| **Casualty and Theft Losses** | 6 | Casualty and theft loss(es) from a federally declared disaster (other than net qualified disaster losses). Attach Form 4684 and enter the amount from line 18 of that form. See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . | | **6** |
| **Other Itemized Deductions** | 7 | Other—from list in instructions. List type and amount: _____<br>_____<br>_____<br>_____<br>_____<br>_____<br>_____<br>_____ | | **7** |
| **Total Itemized Deductions** | 8 | Add the amounts in the far right column for lines 1b through 7. Also, enter this amount on Form 1040-NR, line 12 . . . . . . . . . . . . . . . . . . . . . . . . . . | | **8** |

For Paperwork Reduction Act Notice, see the Instructions for Form 1040-NR.    BAA    REV 02/22/24 PRO    Schedule A (Form 1040-NR) 2023

**SCHEDULE NEC**
**(Form 1040-NR)**

Department of the Treasury
Internal Revenue Service

# Tax on Income Not Effectively Connected With a U.S. Trade or Business

Attach to Form 1040-NR.
Go to *www.irs.gov/Form1040NR* for instructions and the latest information.

OMB No. 1545-0074

**2023**

Attachment
Sequence No. **7B**

Name shown on Form 1040-NR

Tetyana Shevchenko

Your withholding number

0█████-7639

Enter amount of income under the appropriate rate of tax. See instructions.

| Nature of Income | | (a) 10% | (b) 15% | (c) 30% | (d) Other (specify) | |
|---|---|---|---|---|---|---|
| | | | | | % | % |
| **1** Dividends and dividend equivalents: | | | | | | |
| **a** Dividends paid by U.S. corporations | **1a** | | | | | |
| **b** Dividends paid by foreign corporations | **1b** | | | | | |
| **c** Dividend equivalent payments received with respect to section 871(m) transactions | **1c** | | | | | |
| **2** Interest: | | | | | | |
| **a** Mortgage | **2a** | | | | | |
| **b** Paid by foreign corporations | **2b** | | | | | |
| **c** Other | **2c** | | | | | |
| **3** Industrial royalties (patents, trademarks, etc.) | **3** | | | | | |
| **4** Motion picture or TV copyright royalties | **4** | | | | | |
| **5** Other royalties (copyrights, recording, publishing, etc.) | **5** | | | | | |
| **6** Real property income and natural resources royalties | **6** | | | | | |
| **7** Pensions and annuities | **7** | | | | | |
| **8** Social security benefits | **8** | | | | | |
| **9** Capital gain from line 18 below | **9** | | | | | |
| **10** Gambling—Residents of Canada only. Enter net income in column (c). If zero or less, enter -0-. | | | | | | |
| **a** Winnings | | | | | | |
| **b** Losses | **10c** | | | | | |
| **11** Gambling—Residents of countries other than Canada. Note: Enter winnings only. Losses aren't allowed | **11** | | | | | |
| **12** Other (specify): | **12** | | | | | |
| **13** Add lines 1a through 12 in columns (a) through (d) | **13** | | | | | |
| **14** Multiply line 13 by rate of tax at top of each column | **14** | | | | | |
| **15** Tax on income not effectively connected with a U.S. trade or business. Add columns (a) through (d) of line 14. Enter the total here and on Form 1040-NR, line 23a | | | | | **15** | |

### Capital Gains and Losses From Sales or Exchanges of Property

Enter only the capital gains and losses from property sales or exchanges that are from sources within the United States and not effectively connected with a U.S. business. Do not include a gain or loss on disposing of a U.S. real property interest; report these gains and losses on Schedule D (Form 1040).

Report property sales or exchanges that are effectively connected with a U.S. business on Schedule D (Form 1040), Form 4797, or both.

| **16** (a) Kind of property and description (if necessary, attach statement of descriptive details not shown below) | (b) Date acquired mm/dd/yyyy | (c) Date sold mm/dd/yyyy | (d) Sales price | (e) Cost or other basis | (f) LOSS If (e) is more than (d), subtract (d) from (e). | (g) GAIN If (d) is more than (e), subtract (e) from (d). |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**17** Add columns (f) and (g) of line 16 . . . . . . . . . . . . . . . . . . . **17** ( )

**18** Capital gain. Combine columns (f) and (g) of line 17. Enter the net gain here and on line 9 above. If a loss, enter -0- . . **18**

For Paperwork Reduction Act Notice, see the Instructions for Form 1040-NR.    BAA    REV 02/22/24 PRO    Schedule NEC (Form 1040-NR) 2023

| SCHEDULE OI<br>(Form 1040-NR)<br><br>Department of the Treasury<br>Internal Revenue Service | **Other Information**<br>Attach to Form 1040-NR.<br>Go to *www.irs.gov/Form1040NR* for instructions and the latest information.<br>Answer all questions. | OMB No. 1545-0074<br>2023<br>Attachment<br>Sequence No. 7C |
|---|---|---|

| Name shown on Form 1040-NR | Your identifying number |
|---|---|
| Tetyana Shevchenko | 7639 |

| | | |
|---|---|---|
| A | Of what country or countries were you a citizen or national during the tax year? Ukraine | |
| B | In what country did you claim residence for tax purposes during the tax year? Ukraine | |
| C | Have you ever applied to be a green card holder (lawful permanent resident) of the United States? . . . . . | ☐ Yes ☒ No |
| D | Were you ever: | |
| 1. | A U.S. citizen? . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☒ No |
| 2. | A green card holder (lawful permanent resident) of the United States? . . . . . . . . . . . . . | ☐ Yes ☒ No |
| | If you answer "Yes" to (1) or (2), see Pub. 519, chapter 4, for expatriation rules that apply to you. | |
| E | If you had a visa on the last day of the tax year, enter your visa type. If you didn't have a visa, enter your U.S. immigration status on the last day of the tax year.    B2 | |
| F | Have you ever changed your visa type (nonimmigrant status) or U.S. immigration status? . . . . . . . . . | ☐ Yes ☒ No |
| | If you answered "Yes," indicate the date and nature of the change: | |

G    List all dates you entered and left the United States during 2023. See instructions.
**Note:** If you're a resident of Canada or Mexico AND commute to work in the United States at frequent intervals, check the box for Canada or Mexico and skip to item H . . . . . . . . . . ☐ Canada    ☐ Mexico

| Date entered United States<br>mm/dd/yy | Date departed United States<br>mm/dd/yy | | Date entered United States<br>mm/dd/yy | Date departed United States<br>mm/dd/yy |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | |
|---|---|---|
| H | Give number of days (including vacation, nonworkdays, and partial days) you were present in the United States during:<br>2021 _____0_____ , 2022 _____0_____ , and 2023 _____60_____ . | |
| I | Did you file a U.S. income tax return for any prior year? . . . . . . . . . . . . . . . . . . | ☐ Yes ☒ No |
| | If "Yes," give the latest year and form number you filed: | |
| J | Are you filing a return for a trust? . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes ☒ No |
| | If "Yes," did the trust have a U.S. or foreign owner under the grantor trust rules, make a distribution or loan to a U.S. person, or receive a contribution from a U.S. person? . . . . . . . . . . . . . . . . | ☐ Yes ☐ No |
| K | Did you receive total compensation of $250,000 or more during the tax year? . . . . . . . . . . . . | ☒ Yes ☐ No |
| | If "Yes," did you use an alternative method to determine the source of this compensation? . . . . . . . | ☐ Yes ☒ No |
| L | Income Exempt From Tax—If you are claiming exemption from income tax under a U.S. income tax treaty with a foreign country, complete (1) through (3) below. See Pub. 901 for more information on tax treaties. | |
| 1. | Enter the name of the country, the applicable tax treaty article, the number of months in prior years you claimed the treaty benefit, and the amount of exempt income in the columns below. Attach Form 8833 if required. See instructions. | |

| (a) Country | (b) Tax treaty article | (c) Number of months claimed in prior tax years | (d) Amount of exempt income in current tax year |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | |
|---|---|---|
| | (e) **Total.** Enter this amount on Form 1040-NR, line 1k. Do not enter it anywhere else on line 1 . . | |
| 2. | Were you subject to tax in a foreign country on any of the income shown in 1(d) above? . . . . . . . . | ☐ Yes ☐ No |
| 3. | Are you claiming treaty benefits pursuant to a Competent Authority determination? . . . . . . . . . . | ☐ Yes ☒ No |
| | If "Yes," attach a copy of the Competent Authority determination letter to your return. | |
| M | Check the applicable box if: | |
| 1. | This is the first year you are making an election to treat income from real property located in the United States as effectively connected with a U.S. trade or business under section 871(d). See instructions . . . . . . . . . . . . . . . . . . . . . . | ☐ |
| 2. | You have made an election in a previous year that has not been revoked, to treat income from real property located in the United States as effectively connected with a U.S. trade or business under section 871(d). See instructions . . . . . . . . . . . . | ☐ |

For Paperwork Reduction Act Notice, see the Instructions for Form 1040-NR.    BAA    REV 02/22/24 PRO    Schedule OI (Form 1040-NR) 2023

Schedule E (Form 1040) 2023      Attachment Sequence No. **13**      Page **2**

| Name(s) shown on return. Do not enter name and social security number if shown on other side. | Your social security number |
|---|---|
| Tetyana Shevchenko | ▓▓▓ 7639 |

**Caution:** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

**Part II**   Income or Loss From Partnerships and S Corporations

Note: If you report a loss, receive a distribution, dispose of stock, or receive a loan repayment from an S corporation, you must check the box in column (e) on line 28 and attach the required basis computation. If you report a loss from an at-risk activity for which any amount is not at risk, you must check the box in column (f) on line 28 and attach Form 6198. See instructions.

27   Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? If you answered "Yes," see instructions before completing this section                ☐ Yes   ☒ No

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if basis computation is required | (f) Check if any amount is not at risk |
|---|---|---|---|---|---|---|
| A | seller online llc | P | ☐ | ▓▓▓▓585 | ☐ | ☐ |
| B | | | ☐ | | ☐ | ☐ |
| C | | | ☐ | | ☐ | ☐ |
| D | | | ☐ | | ☐ | ☐ |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (g) Passive loss allowed (attach Form 8582 if required) | (h) Passive income from Schedule K-1 | (i) Nonpassive loss allowed (see Schedule K-1) | (j) Section 179 expense deduction from Form 4562 | (k) Nonpassive income from Schedule K-1 |
| A | | | | | ▓▓▓▓ |
| B | | | | | |
| C | | | | | |
| D | | | | | |

| 29a | Totals | | | | | ▓▓▓▓ |
|---|---|---|---|---|---|---|
| b | Totals | | | | | |

| 30 | Add columns (h) and (k) of line 29a . . . . . . . . . . . . . . . . | 30 | ▓▓▓▓ |
|---|---|---|---|
| 31 | Add columns (g), (i), and (j) of line 29b . . . . . . . . . . . . . | 31 | ( ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31 . . . . . . | 32 | ▓▓▓▓ |

**Part III**   Income or Loss From Estates and Trusts

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |

| 34a | Totals | | | |
|---|---|---|---|---|
| b | Totals | | | |

| 35 | Add columns (d) and (f) of line 34a . . . . . . . . . . . . . . . . | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b . . . . . . . . . . . . . . . . | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36 . . . . . . . . . . | 37 | |

**Part IV**   Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)—Residual Holder

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see instructions) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below . | 39 | |
|---|---|---|---|

**Part V**   Summary

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below . . . . . . . | 40 | |
|---|---|---|---|
| 41 | Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Schedule 1 (Form 1040), line 5 . . . . . . . . . . . . . . . . . . . . | 41 | ▓▓▓▓ |
| 42 | Reconciliation of farming and fishing income. Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120-S), box 17, code AN; and Schedule K-1 (Form 1041), box 14, code F. See instructions . | 42 | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040, Form 1040-SR, or Form 1040-NR from all rental real estate activities in which you materially participated under the passive activity loss rules . . . . . . . . . . . | 43 | |

REV 02/22/24 PRO              Schedule E (Form 1040) 2023

Form **1040-ES (NR)**
Department of the Treasury
Internal Revenue Service

**2024** Estimated Tax
Payment Voucher **3**

OMB No. 1545-0074

File only if you are making a payment of estimated tax by check or money order. Return this voucher with your check or money order payable to "United States Treasury." Write your identifying number and "2024 Form 1040-ES (NR)" on your check or money order. Do not send cash. Enclose, but do not staple or attach, your payment with this voucher.

Calendar year—Due Sept. 16, 2024

Amount of estimated tax you are paying by check or money order.

| Dollars | Cents |
|---|---|
| ▆▆▆▆ | |

Your identifying number (SSN or ITIN) (employer identification number for an estate or trust)
▆▆▆▆7639

| Your first name and middle initial | Your last name |
|---|---|
| Tetyana | Shevchenko |

Address (number, street, and apt. no.)
200 Thanet Circle, Apt. 119

| City, town, or post office. If you have a foreign address, also complete spaces below. | State NJ | ZIP code 08540 |
|---|---|---|
| Foreign country name | Foreign province/state/county | Foreign postal code |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    BAA    REV 02/22/24 PRO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Separate here. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Form **1040-ES (NR)**
Department of the Treasury
Internal Revenue Service

**2024** Estimated Tax
Payment Voucher **2**

OMB No. 1545-0074

File only if you are making a payment of estimated tax by check or money order. Return this voucher with your check or money order payable to "United States Treasury." Write your identifying number and "2024 Form 1040-ES (NR)" on your check or money order. Do not send cash. Enclose, but do not staple or attach, your payment with this voucher.

Calendar year—Due June 17, 2024

Amount of estimated tax you are paying by check or money order.

| Dollars | Cents |
|---|---|
| ▆▆▆▆. | |

Your identifying number (SSN or ITIN) (employer identification number for an estate or trust)
▆▆▆▆7639

| Your first name and middle initial | Your last name |
|---|---|
| Tetyana | Shevchenko |

Address (number, street, and apt. no.)
200 Thanet Circle, Apt. 119

| City, town, or post office. If you have a foreign address, also complete spaces below. | State NJ | ZIP code 08540 |
|---|---|---|
| Foreign country name | Foreign province/state/county | Foreign postal code |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    BAA    REV 02/22/24 PRO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Separate here. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Form **1040-ES (NR)**
Department of the Treasury
Internal Revenue Service

**2024** Estimated Tax
Payment Voucher **1**

OMB No. 1545-0074

File only if you are making a payment of estimated tax by check or money order. Return this voucher with your check or money order payable to "United States Treasury." Write your identifying number and "2024 Form 1040-ES (NR)" on your check or money order. Do not send cash. Enclose, but do not staple or attach, your payment with this voucher.

Calendar year—Due April 15, 2024

Amount of estimated tax you are paying by check or money order.

| Dollars | Cents |
|---|---|
| ▆▆▆▆. | |

Your identifying number (SSN or ITIN) (employer identification number for an estate or trust)
▆▆▆▆7639

| Your first name and middle initial | Your last name |
|---|---|
| Tetyana | Shevchenko |

Address (number, street, and apt. no.)
200 Thanet Circle, Apt. 119

| City, town, or post office. If you have a foreign address, also complete spaces below. | State NJ | ZIP code 08540 |
|---|---|---|
| Foreign country name | Foreign province/state/county | Foreign postal code |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    BAA    REV 02/22/24 PRO

--------------------------------------------------------------------------------

Separate here.

| Form **1040-ES (NR)** Department of the Treasury Internal Revenue Service | **2024** | Estimated Tax Payment Voucher **4** | | OMB No. 1545-0074 |
|---|---|---|---|---|

File only if you are making a payment of estimated tax by check or money order. Return this voucher with your check or money order payable to "**United States Treasury.**" Write your identifying number and "2024 Form 1040-ES (NR)" on your check or money order. Do not send cash. Enclose, but do not staple or attach, your payment with this voucher.

Calendar year—Due Jan. 15, 2025

| Amount of estimated tax you are paying by check or money order. | Dollars | Cents |
|---|---|---|
| | ████████ . | |

Your identifying number (SSN or ITIN) (employer identification number for an estate or trust)
████████7639

| Your first name and middle initial | Your last name |
|---|---|
| Tetyana | Shevchenko |

Address (number, street, and apt. no.)
200 Thanet Circle, Apt. 119

| City, town, or post office  If you have a foreign address, also complete spaces below. | State | ZIP code |
|---|---|---|
| Princeton | NJ | 08540 |

| Foreign country name | Foreign province/state/county | Foreign postal code |
|---|---|---|
| | | |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    BAA    REV 02/22/24 PRO



**Department of the Treasury**
**Internal Revenue Service**
Philadelphia, PA 19255-0525

| | SB |
|---|---|
| **For your reference** | |
| **Notice name** | CP501 |
| **Tax year** | 2023 |
| **Notice date** | 07/15/2024 |
| **Your caller ID** | ▉725 |
| **Taxpayer ID number** | XXX-XX-7634 |

**New quick, easy, and secure online payments**
Visit irs.gov/directpay to avoid additional interest and penalties or time lost on the phone

TETYANA SHEVCHENKO
200 THANET CIR APT 119
PRINCETON NJ 08540-3680

To: TETYANA SHEVCHENKO

We recently contacted you about your past due 2023 taxes. You must pay your balance immediately.

## Amount Past Due: $494,809.43

You must pay by July 25, 2024 to stop further penalties and interest.

## What You Need To Do Now

 

**Pay online now from your bank**
- Quick, free and easy way to pay
- Secure payment directly from your bank account without fees
- Convenient method; just use a computer or mobile device

### What You Need

**To Verify Your Identity:**
- ☐ Filing Status
- ☐ Address

**To Pay:**
- ☐ Bank Account Number
- ☐ Bank Routing Number

Don't know this information?
You can find your recent tax returns on irs.gov/individuals/get-transcript. Your bank account and routing numbers are on your check.

### How to Pay From Your Bank

1. Go to irs.gov/directpay
2. Select "Make a Payment"
3. Enter the following options:
   - **Reason for Payment:** Balance Due
   - **Apply Payment To:** Income Tax - Form 1040NR
   - **Tax Period for Payment:** 2023
4. Follow the instructions to verify your identity and submit secure bank information
5. Submit your secure payment

SB

## What you need to do now — **continued**

**If you're a debtor in a bankruptcy case, this notice is for your information only and isn't intended to seek payment outside of the bankruptcy process of taxes due before you filed your petition. You won't receive another notice of the balance due while the automatic stay remains in effect.**

If you paid your balance in full, set up a payment plan after receiving a previous notice or we advised you we have suspended enforced collection on your account, disregard this reminder. You can check your payment status on irs.gov/payments.

**If you can't find what you need online and still have questions not addressed in this notice, call 833-678-7020.**

## Other Payment Options



### To Pay by Card

1. Go to irs.gov/payments or scan the QR code on page 1

2. Select "Credit or Debit"

3. Choose a payment processor

4. Pay through the IRS cleared payment processor's website



Additional fees apply when paying by card



### To Pay by Check

1. Make your check or money order payable to the "United States Treasury"

2. Include the payment stub when you mail your check or money order

**When you pay by check, you authorize us to use information** from your check to make a one-time electronic fund transfer from your account or process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

## Your Bill Summary

Every day you put off paying, more penalties and interest are added to your bill.

| Description | Amount |
|---|---|
| Amount you owed | $489,146.00 |
| Failure-to-pay penalty (Internal Revenue Code Section 6651) | $2,445.73 |
| Interest (Internal Revenue Code Section 6601) | $3,217.70 |
| **Amount due by July 25, 2024** | **$494,809.43** |

SB

**Notice:** CP501      **Tax year:** 2023      **Notice date:** July 15, 2024      **TIN:** XXX-XX-7634      **Page 3 of 5**

## Your Bill Summary — continued

For an explanation of your penalties and information on how penalties may be removed or reduced,
visit irs.gov/penalties.  For an explanation of your interest, visit irs.gov/interest.

## Taxpayer Rights and Sources of Assistance

The Internal Revenue Code (IRC) gives taxpayers specific rights. The Taxpayer Bill of Rights groups these into 10 fundamental rights. See IRC Section 7803(a)(3). IRS employees are responsible for being familiar with and following these rights. For additional information about your taxpayer rights, please see the enclosed Publication 1, Your Rights as a Taxpayer, or visit irs.gov/taxpayer-bill-of-rights.

The Taxpayer Advocate Service (TAS) is an independent organization within the IRS that helps taxpayers and protects taxpayers' rights. TAS can offer you help if your tax problem is causing a financial difficulty, you've tried but been unable to resolve your issue with the IRS, or you believe an IRS system, process, or procedure isn't working as it should. If you qualify for TAS assistance, which is always free, TAS will do everything possible to help you. To learn more, visit taxpayeradvocate.irs.gov or call 877-777-4778.

Tax professionals who are independent from the IRS may be able to help you. Low Income Taxpayer Clinics (LITCs) can represent low-income persons before the IRS or in court. LITCs can also help persons who speak English as a second language. Any services provided by an LITC must be for free or a small fee. To find an LITC near you:

- Go to taxpayeradvocate.irs.gov/litcmap;
- Download IRS Publication 4134, Low Income Taxpayer Clinic List, available at irs.gov/forms; or
- Call the IRS toll-free at 800-829-3676 and ask for a copy of Publication 4134.

State bar associations, state or local societies of accountants or enrolled agents, or other nonprofit tax professional organizations may also be able to provide referrals.

For more information about this notice, visit irs.gov/cp501.

Can't pay in full right now? Pay as much as you can and set up a monthly payment plan online at irs.gov/opa.
To learn about your other options, visit irs.gov/payments under the topic "Can't Pay Now?"
You can contact us by mail at the following address. Be sure to include your taxpayer identification number, the tax year and the form number you are writing about.

   Internal Revenue Service
   Philadelphia, PA 19255-0525

**If you have not paid the debt already,** a federal tax lien has arisen as a claim against all your property. If you don't pay the amount due immediately or make payment arrangements, we can file a Notice of Federal Tax Lien (NFTL) publicly establishing our priority with your creditors or we may levy (seize your property) subject to any applicable Collection Due Process rights. If we file the NFTL, it may be difficult to sell or borrow against your property.

**If you don't believe you owe or don't agree with our intent to file a NFTL,** you have the right to request an appeal under the Collection Appeals Program before the NFTL is filed. If you want to file an appeal, call or send us a Collection Appeals Request (Form 9423). Call 833-678-7020 if you have any questions. For more information about your appeal rights, see Publication 1660 (Collection Appeal Rights).

SB

**Notice:** CP501    **Tax year:** 2023    **Notice date:** July 15, 2024    **TIN:** XXX-XX-7634    **Page 4 of 5**

| Taxpayer Rights and Sources of Assistance — **continued** |
| --- |

Note: The CAP is different from the Collection Due Process (CDP) program. CAP addresses appeals when the Service communicates its intent to file an NFTL, while a CDP hearing is offered after the Service files an NFTL for the first time. For additional information, visit irs.gov/compliance/appeals.

Send us your documents using the Documentation Upload Tool **within 30 days from the date of this notice.** To use the tool, scan the QR Code below or visit IRS.gov/dutreply and enter access code 675h5-884w1.

## Penalties

We are required by law to charge applicable penalties.  However, in select situations, we may be able to remove or reduce penalties. Visit irs.gov/penalties to learn more.

### Failure to pay
(Internal Revenue Code Section 6651)

We assess a penalty for each month or part of a month you don't pay the tax you owe by the due date and afterward, up to 25% of the tax shown on the return.

Note: The penalty amount in Billing Summary reflects accruals from your previous balance due notice, the amounts shown below are total Failure to Pay penalty charges.

| Date to which penalty accrued | Number of months (full or partial) to which the penalty applies | Unpaid tax amount | Penalty rate | Penalty amount |
| --- | --- | --- | --- | --- |
| 07/15/2024 | 1 | 489,146.00 | 0.5% | 2,445.73 |
| **Total Failure to Pay** | | | | **$2,445.73** |

SB

**Notice:** CP501        **Tax year:** 2023        **Notice date:** July 15, 2024        **TIN:** XXX-XX-7634        **Page 5 of 5**

## Interest
(Internal Revenue Code Section 6601)

We are required by law to charge interest when you don't pay your liability on time. Unlike penalties, we cannot reduce or remove interest due to reasonable cause. Interest accumulates daily, so the longer you wait to pay, the more interest we add to your account. Visit irs.gov/interest for more information.

Note: The interest amount in Billing Summary reflects accruals from your previous balance due notice, the amounts shown below are total interest charges.

| Period | Days accrued | Unpaid balance | Interest rate | Interest factor | Interest charge |
|---|---|---|---|---|---|
| 06/15/2024 - 06/30/2024 | 15 | 489,146.00 | 8.0% | 0.003283710 | 1,606.21 |
| 06/30/2024 - 07/15/2024 | 15 | 490,752.21 | 8.0% | 0.003283710 | 1,611.49 |
| **Total Interest** | | | | | **$3,217.70** |

 Gmail

Tetyana Shevchenko <sh.tatjana@gmail.com>

---

## IRS
8 messages

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>
To: Irina Sprishen <snacpa@comcast.net>

Thu, Jul 18, 2024 at 7:36 PM

Добрый вечер!

Ирина, второй раз приходит письмо, что я не оплатила налог.
Однако чек же был обналичен сразу.
Прошлый раз Вы связывались с ними?

--
Best regards,
Tetyana Shevchenko

---

**snacpa@comcast.net** <snacpa@comcast.net>
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Thu, Jul 18, 2024 at 7:38 PM

Tanechka, please send me the front and back of the cancelled check.  They are such morons, it is not even funny.

It takes them forever to correct their mistakes.  Please send check, I will reply immediately.

[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>
To: snacpa@comcast.net

Thu, Jul 18, 2024 at 7:45 PM

Вот чек снизу слева. Это еще март.

чт, 18 июл. 2024 г. в 19:39, <snacpa@comcast.net>:
[Quoted text hidden]
[Quoted text hidden]



**Снимок экрана 2024-07-18 в 19.44.56.png**
481K

---

**snacpa@comcast.net** <snacpa@comcast.net>
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Thu, Jul 18, 2024 at 7:49 PM

Could you, please, send me back of the check #1030.  Thank you.

[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>
To: snacpa@comcast.net

Fri, Jul 19, 2024 at 6:49 AM

Ирина, доброе утро!

Я очень переживаю теперь по поводу этой оплаты.
Вы спрашиваете за обратную сторону, но в выписках же нет ее.
Может мне в банке запросить?
Кто-то другой мог снять эти деньги?
Я подозреваю, что это из-за того, что я не указала на чеке EIN.
Или вместе с чеком я что-то отправляла им? вы давали какое-то сопроводительное письмо?


чт, 18 июл. 2024 г. в 19:49, <snacpa@comcast.net>:
[Quoted text hidden]
[Quoted text hidden]

---

**snacpa@comcast.net** <snacpa@comcast.net>                          Fri, Jul 19, 2024 at 7:00 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


Do not worry. There seriously no need to.  IRS often makes mistakes.    They may put the wrong year or enter 1 digit wrong of ss number.

Just ask the bank for the front and the back, that is where info how the check was posted will be and I will fix it in no time.

[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                        Fri, Jul 19, 2024 at 11:01 AM
To: snacpa@comcast.net

Банк мне выдаст копию, попросили забрать лично, я это смогу сделать ближе к 16 часам.

пт, 19 июл. 2024 г. в 07:01, <snacpa@comcast.net>:
[Quoted text hidden]
[Quoted text hidden]

---

**Irina Sprishen** <snacpa@comcast.net>                              Fri, Jul 19, 2024 at 11:06 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


ok

[Quoted text hidden]

 Gmail

Tetyana Shevchenko <sh.tatjana@gmail.com>

## Irs
9 messages

**Tetyana Shevchenko** <sh.tatjana@gmail.com>
To: Irina Sprishen <snacpa@comcast.net>

Mon, Jul 22, 2024 at 8:09 PM

 **IRS** Department of the Treasury
Internal Revenue Service

AUSTIN  TX  73301-0059

In reply refer to:  0686100000
July 23, 2024  LTR 2645C  KO
***-**-7634  202312 30
Input Op:  0509906341 00037198
                         BODC: WI

TETYANA SHEVCHENKO
200 THANET CIR APT 119
PRINCETON  NJ  08540-3680



004213

          Taxpayer identification number: ***-**-7634
                        Tax periods: Dec. 31, 2023

                          Form: 1040

Dear Taxpayer:

Thank you for your inquiry of May  09, 2024.

We're working on your account. However, we need an additional 60
days to send you a complete response on what action we are taking
on your account. We don't need any further information from you right
now.


If you prefer, you can write to that office at the address we
provided in this letter.

If you have questions, you can call 1-800-829-0922.

If you prefer, you can write to the address at the top of the first
page of this letter.

Find tax forms or publications by visiting www.irs.gov/forms or
calling 800-TAX-FORM (800-829-3676).

Whenever you write, include a copy of this letter and your telephone
numbers along with the hours we can reach you.

Keep a copy of this letter for your records.

Thank you for your cooperation.

Добрый вечер!

Получила такое письмо. А какой запрос мы им делали в мае?

Best regards,
Tetyana Shevchenko

**snacpa@comcast.net** <snacpa@comcast.net>                                  Mon, Jul 22, 2024 at 10:08 PM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

They working on posting your tax payment.  No worries.

[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                               Tue, Jul 23, 2024 at 7:21 AM
To: snacpa@comcast.net

Доброе утро!

В форме 1040 ошибка в моем SSN.

пн, 22 июл. 2024 г. в 22:08, <snacpa@comcast.net>:
[Quoted text hidden]


--
Best regards,
Tetyana Shevchenko

---

**snacpa@comcast.net** <snacpa@comcast.net>                                 Tue, Jul 23, 2024 at 8:05 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Let me look

[Quoted text hidden]

---

**snacpa@comcast.net** <snacpa@comcast.net>                                 Tue, Jul 23, 2024 at 8:07 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>

Please send me the social security number, I will verify it



**From:** Tetyana Shevchenko <sh.tatjana@gmail.com>
**Sent:** Tuesday, July 23, 2024 7:21 AM
**To:** snacpa@comcast.net
**Subject:** Re: Irs


Доброе утро!

[Quoted text hidden]
[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                               Tue, Jul 23, 2024 at 10:47 AM
To: snacpa@comcast.net


вт, 23 июл. 2024 г. в 08:07, <snacpa@comcast.net>:
[Quoted text hidden]
[Quoted text hidden]

 **Tanya_Shevch_SSN.pdf**
1211K

---

**Irina Sprishen** <snacpa@comcast.net>                                Tue, Jul 23, 2024 at 10:49 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


Got it in my records too, will immediately correct it

[Quoted text hidden]

---

**Tetyana Shevchenko** <sh.tatjana@gmail.com>                          Tue, Jul 23, 2024 at 10:52 AM
To: Irina Sprishen <snacpa@comcast.net>

Можете мне сделать верный вариант таюже и копии отчетов прислать за первый квартал? я не сделала себе копии

вт, 23 июл. 2024 г. в 10:51, Irina Sprishen <snacpa@comcast.net>:
[Quoted text hidden]
[Quoted text hidden]

---

**Irina Sprishen** <snacpa@comcast.net>                                Tue, Jul 23, 2024 at 10:55 AM
To: Tetyana Shevchenko <sh.tatjana@gmail.com>


You mean payroll reports?  Of course

[Quoted text hidden]

# EXHIBIT M

# Form 8804

(Rev. November 2022)
Department of the Treasury
Internal Revenue Service

## Annual Return for Partnership Withholding Tax
## (Section 1446)

Attach Form(s) 8804-C and 8805.
Go to *www.irs.gov/Form8804* for instructions and the latest information.

OMB No. 1545-0123

For calendar year 20 **22**, or tax year beginning _____ , 20 ____ , and ending _____ , 20 ____

Check this box if the partnership keeps its records and books of account outside the United States and Puerto Rico . . . . . ☐

### Part I   Partnership

| 1a Name of partnership | b U.S. employer identification number (EIN) |
|---|---|
| Seller Online LLC | ███585 |

**c** Number, street, and room or suite no. If a P.O. box, see instructions.
635 Somers Ave

| | For IRS Use Only | |
|---|---|---|
| CC | | FD |
| RD | | FF |
| CAF | | FP |
| CR | | I |
| EDC | | |

**d** City or town, state or province, country, and ZIP or foreign postal code. If a foreign address, see instructions.
Feasterville, PA 19053

### Part II   Withholding Agent

**2a** Name of withholding agent. If partnership is also the withholding agent, enter "SAME" and don't complete lines 2b, 2c, and 2d.

same

**b** Withholding agent's U.S. EIN

**c** Number, street, and room or suite no. If a P.O. box, see instructions.

**d** City or town, state or province, country, and ZIP or foreign postal code

### Part III   Section 1446 Tax Liability and Payments

| | | | | | | |
|---|---|---|---|---|---|---|
| 3a | Enter number of foreign partners . . . . . . . . | 3a | | | | |
| b | Enter number of Forms 8805 attached to this Form 8804 | 3b | 1 | | | |
| c | Enter number of Forms 8804-C attached to Forms 8805 | 3c | | | | |
| 4 | Total effectively connected taxable income (ECTI) allocable to foreign partners. See instructions. | | | | | |
| a | Total ECTI allocable to corporate partners . . . . . . . . . . . . | 4a | | | | |
| b | Reduction to line 4a for state and local taxes under Regulations section 1.1446-6(c)(1)(iii) . . . . . . . . . . . . . . . . . | 4b | ( ) | | | |
| c | Reduction to line 4a for certified foreign partner-level items submitted using Form 8804-C . . . . . . . . . . . . . . . . | 4c | ( ) | | | |
| d | Combine lines 4a, 4b, and 4c . . . . . . . . . . . . . . . . | | | 4d | | |
| e | Total ECTI allocable to non-corporate partners other than on lines 4i, 4m, and 4q . . . . . . . . . . . . . . . . . . . . . | 4e | 871117 | | | |
| f | Reduction to line 4e for state and local taxes under Regulations section 1.1446-6(c)(1)(iii) . . . . . . . . . . . . . . . . . | 4f | ( ) | | | |
| g | Reduction to line 4e for certified foreign partner-level items submitted using Form 8804-C . . . . . . . . . . . . . . . . | 4g | ( ) | | | |
| h | Combine lines 4e, 4f, and 4g . . . . . . . . . . . . . . . | | | 4h | | 871117 |
| i | 28% rate gain allocable to non-corporate partners . . . . . . . . . | 4i | | | | |
| j | Reduction to line 4i for state and local taxes under Regulations section 1.1446-6(c)(1)(iii) . . . . . . . . . . . . . . . . . | 4j | ( ) | | | |
| k | Reduction to line 4i for certified foreign partner-level items submitted using Form 8804-C . . . . . . . . . . . . . . . . | 4k | ( ) | | | |
| l | Combine lines 4i, 4j, and 4k . . . . . . . . . . . . . . . | | | 4l | | |
| m | Unrecaptured section 1250 gain allocable to non-corporate partners . . . | 4m | | | | |
| n | Reduction to line 4m for state and local taxes under Regulations section 1.1446-6(c)(1)(iii) . . . . . . . . . . . . . . . . . | 4n | ( ) | | | |
| o | Reduction to line 4m for certified foreign partner-level items submitted using Form 8804-C . . . . . . . . . . . . . . . . | 4o | ( ) | | | |
| p | Combine lines 4m, 4n, and 4o . . . . . . . . . . . . . . . | | | 4p | | |

For Paperwork Reduction Act Notice, see separate Instructions for Forms 8804, 8805, and 8813.     Cat. No. 10077T     Form **8804** (Rev. 11-2022)

Form 8804 (Rev. 11-2022)                                                                                          Page **2**

| | | | | |
|---|---|---|---|---|
| q | Adjusted net capital gain (including qualified dividend income and net section 1231 gain) allocable to non-corporate partners | 4q | | |
| r | Reduction to line 4q for state and local taxes under Regulations section 1.1446-6(c)(1)(iii) | 4r ( | ) | |
| s | Reduction to line 4q for certified foreign partner-level items submitted using Form 8804-C | 4s ( | ) | |
| t | Combine lines 4q, 4r, and 4s | | 4t | |
| 5 | Gross section 1446 tax liability: | | | |
| a | Multiply line 4d by 21% (0.21) | 5a | | |
| b | Multiply line 4h by 37% (0.37) | 5b | 322313 | |
| c | Multiply line 4l by 28% (0.28) | 5c | | |
| d | Multiply line 4p by 25% (0.25) | 5d | | |
| e | Multiply line 4t by 20% (0.20) | 5e | | |
| f | Add lines 5a through 5e | | 5f | 322313 |
| 6a | Payments of section 1446 tax made by the partnership identified on line 1a during its tax year (or with a request for an extension of time to file) and amount credited from the previous tax year's Form 8804 | 6a | | |
| b | Section 1446 tax paid or withheld by another partnership in which the partnership identified on line 1a was a partner during the tax year (enter only amounts reported on Form(s) 8805 and attach the Form(s) 8805 to Form 8804) | 6b | | |
| c | Section 1446 tax paid or withheld by another partnership in which the partnership identified on line 1a was a partner during the tax year (enter only amounts reported on Form(s) 1042-S and attach the Form(s) 1042-S to Form 8804) | 6c | | |
| d | Section 1445(a) or 1445(e)(1) tax withheld from or paid by the partnership identified on line 1a during the tax year for a disposition of a U.S. real property interest (enter only amounts reported on Form(s) 8288-A and attach the Form(s) 8288-A to Form 8804) | 6d | | |
| e | Section 1445(e) tax withheld from the partnership identified on line 1a during the tax year for a disposition of a U.S. real property interest (enter only amounts reported on Form(s) 1042-S and attach the Form(s) 1042-S to Form 8804) | 6e | | |
| f | Section 1446(f)(1) tax withheld from the partnership identified on line 1a for a disposition of an interest in a partnership engaged in the conduct of a U.S. trade or business (enter only amounts reported on Form(s) 8288-A and attach the Form(s) 8288-A to Form 8804) | 6f | | |
| g | Section 1446(f)(1) tax withheld from the partnership identified on line 1a for a disposition of an interest in a partnership engaged in the conduct of a U.S. trade or business (enter only amounts reported on Form(s) 1042-S and attach the Form(s) 1042-S to Form 8804) | 6g | | |
| 7 | Total payments. Add lines 6a through 6g | | 7 | |
| 8 | Estimated tax penalty. Check if Schedule A (Form 8804) is attached. See instructions ☐ | | 8 | |
| 9 | Add lines 5f and 8 | | 9 | |
| 10 | Balance due. If line 7 is smaller than line 9, subtract line 7 from line 9. Attach a check or money order for the full amount payable to "United States Treasury." Write the partnership's U.S. EIN, tax year, and "Form 8804" on it | | 10 | 322313 |
| 11 | Overpayment. If line 7 is more than line 9, subtract line 9 from line 7 | | 11 | |
| 12 | Amount of line 11 reported on Form(s) 8805 as allocated to partners | | 12 | |
| 13 | Net overpayment. Subtract line 12 from line 11 | | 13 | |
| 14 | Refund. Amount, if any, of line 13 you want to be refunded to you | | 14 | |
| 15 | Amount of line 13 to be credited to next year's Form 8804. Subtract line 14 from line 13 | 15 | | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than a partner or limited liability company member) is based on all information of which preparer has any knowledge.

| Signature of a partner or limited liability company member | Title    Member | Date    02/23/23 |
|---|---|---|

**Paid Preparer Use Only**

| Print/Type preparer's name  Irina Sprishen CPA MST | Preparer's signature | Date | Check ☐ if self-employed | PTIN ●938 |
|---|---|---|---|---|
| Firm's name  Irina Sprishen CPA MST | | | Firm's EIN | ●404 |
| Firm's address  101 E PA Blvd Feasterville, PA 19053 | | | Phone no. | 2159422980 |

Form **8804** (Rev. 11-2022)

| Form **8805**<br>(Rev. November 2019)<br>Department of the Treasury<br>Internal Revenue Service | **Foreign Partner's Information Statement<br>of Section 1446 Withholding Tax**<br>▶ Go to *www.irs.gov/Form8805* for instructions and the latest information. | OMB No. 1545-0123<br>**Copy A**<br>**For Internal Revenue Service**<br>**Attach to Form 8804.** |
|---|---|---|

For partnership's calendar year 2022 , or tax year beginning _____ , 20 ____ , and ending _____ , 20 ____

| 1a Foreign partner's name<br><br>Tatyana Shevchenko | b U.S. identifying number | 5a Name of partnership<br><br>Unique for Logistics LLC | b U.S. Employer<br>Identification Number (EIN)<br><br>███████883 |
|---|---|---|---|
| c Address (if a foreign address, see instructions)<br>635 Somers Ave<br>Feasterville, PA 19053 | | c Address (if a foreign address, see instructions)<br>Feasterville, PA 19053 | |

| **2** Account number assigned by partnership (if any) | **6** Withholding agent's name. If partnership is also the withholding agent, enter "SAME" and do not complete line 7. |
|---|---|
| **3** Type of partner (specify—see instructions) ▶ | same |
| **4** Country code of partner (enter two-letter code—see instructions)<br><br>UP | **7** Withholding agent's U.S. EIN |

**8a** Check if the partnership identified on line 5a owns an interest in one or more partnerships . . . . . . . . . . . . . . . ▶ ☐

**b** Check if any of the partnership's effectively connected taxable income (ECTI) is exempt from U.S. tax for the partner identified on line 1a ▶ ☐

| **9** | Partnership's ECTI allocable to partner for the tax year (see instructions) . . . . . . . . . . . . . . | **9** | 871117 |
|---|---|---|---|
| **10** | Total tax credit allowed to partner under section 1446 (see instructions). **Individual and corporate partners:** Claim this amount as a credit against your U.S. income tax on Form 1040-NR, Form 1120-F, etc. . . . . . | **10** | 322313 |

**Schedule T—Beneficiary Information** (see instructions)

| **11a** Name of beneficiary | **c** Address (if a foreign address, see instructions) |
|---|---|
| **b** U.S. identifying number of beneficiary | |

| **12** | Amount of ECTI on line 9 to be included in the beneficiary's gross income (see instructions) . . . . . | **12** | |
|---|---|---|---|
| **13** | Amount of tax credit on line 10 that the beneficiary is entitled to claim on its return (see instructions) . . | **13** | |

For Paperwork Reduction Act Notice, see separate Instructions for Forms 8804, 8805, and 8813.    Cat. No. 10078I    Form **8805** (Rev. 11-2019)

# Unique For Logistics LLC

| | |
|---|---|
| **Company Number** | 6663373 |
| **Status** | Active |
| **Incorporation Date** | Please log in to see this data |
| **Company Type** | Domestic Limited Liability Company |
| **Jurisdiction** | Pennsylvania (US) |
| **Registered Address** | 102 E Pennsylvania Blvd |
| | Feasterville |
| | 19053 |
| | PA |
| | United States |
| **Directors / Officers** | 2 officers available, please log in to see this data |

## Recent filings for Unique For Logistics LLC

| | |
|---|---|
| *30 Jan 2026* | ANNUAL REPORT |
| *21 Apr 2025* | ANNUAL REPORT |
| *2 Feb 2018* | INITIAL FILING |
| *2 Feb 2018* | CERTIFICATE OF ORGANIZATION-DOMESTIC LIMITED LIABILITY COMPANY (8821) 1 |

## Company Addresses

MAILING ADDRESS
102 E Pennsylvania Blvd, Feasterville, PA, 19053

HEAD OFFICE ADDRESS
1770 LANCASTER AVE STE 4, PAOLI, PA, 19301-1575, United
States

Seller Online LLC
635 Somers Ave
Feasterville Trevose, PA 19053-3450

**UNITED STATES TREASURY**

ELECTRONICALLY PROCESSED ON    031423

1304

03/08    20 23    3-7818/240

PAY TO THE ORDER OF _United States Treasury_    | $ 322,313.00

_three hundred twenty two thousand and three hundred thirteen_ DOLLARS

Citizens Bank

FOR _form 8804_ : ████ ?585

1304            03/15/2023            $322,313.00

# EXHIBIT N



**Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

# Form 1065 Tax Return Transcript

|  |  |
|---|---|
| Request Date: | 06-07-2026 |
| Response Date: | 06-07-2026 |
| Tracking Number: | 110595154519 |

| | |
|---|---|
| Taxpayer Identification Number: | XX-XXX8585 |
| Report for Tax Period Ending: | 12-31-2023 |
| Form: | 1065 |
| Duplicate Amendment Number: | 1 |

**The following reflects the federal tax information as included with the original tax return for the taxpayer identification number above. A blank field indicates no data on file.**

Original Return

SELL ONLI LL
635 SO

| | |
|---|---|
| Cycle posted: | 202410 |
| Document Locator Number: | 70269-059-19177-4 |
| Remittance: | $0.00 |
| Received Date: | 02-28-2024 |

## Indicators, Codes, And Miscellaneous Information

| | |
|---|---|
| Correspondence Received Date: | 00-00-0000 |
| Preparer Check box: | 1 |
| Preparer Phone Number: | XXX-XXX-2980 |
| Business Start Date: | March, 2019 |
| Number of Partners: | 3 |
| Total Assets: | $.00 |

## Income

| | |
|---|---|
| Gross Receipts: | .00 |
| Gross Receipts Per Computer: | .00 |
| Returns and Allowances: | $0.00 |
| Net Receipts Per Computer: | .00 |
| Cost of Goods Sold: | .00 |
| Gross Profit Per Computer: | .00 |
| Ordinary Income Other Partnerships: | $0.00 |
| Net Farm Profit: | $0.00 |
| Net Gain or Loss (4797): | $0.00 |
| Other Income: | .00 |
| Total Income: | .00 |
| Total Income Per Computer: | .00 |
| Merchant Card and 3rd Party Payments: | $0.00 |
| International Tax Report Check Box: | 0 |

## Deductions and Ordinary Income

| | |
|---|---|
| Net Salaries and Wages: | .00 |
| Payments to Partners: | .00 |



Page 1/4

```
Repairs and Maintenance:                                    ██.00
Bad Debts:                                                $0.00
Rent:                                                       ██.00
Taxes and Licenses:                                         ██.00
Interest:                                                   ██.00
Depreciation:                                               ██.00
Depletion:                                                $0.00
Retirement Plans:                                         $0.00
Employee Benefit Plans:                                     ██.00
F7205 Energy Efficient Commercial Building Deduction      $0.00
Other Deductions:                                           ██.00
Total Deductions:                                           ██.00
Total Deductions per Computer:                              ██.00
3.5 Percent Tax Amount:                                   $0.00
Ordinary Income (Loss):                                     ██.00
Ordinary Income (Loss) per Computer:                        ██.00
```

## Schedule A - Cost of Goods Sold

```
Inventory (Begin):                                          ██.00
Net Purchases:                                              ██.00
Total Cost:                                                 ██.00
Inventory (End):                                            ██.00
```

## Other Information

```
Section 743(B) Partnership:                               $0.00
Section 734(B) Partnership:                               $0.00
F8996 Qualified Opportunity Fund:                         $0.00
Number of Foreign Partners Subject to Section 864:            0
Transfer Disclosure Requirements Check Box Regulations
  Section 1.707:                                              2
K-1 and K-3 Not Furnished Timely:                    0000000000
Number of Schedules K-1:                                      0
```

## Schedule F - Profit or Loss From Farming

```
Sale Livestock Bought for Resale:                         $0.00
Gross Farm Income (Other Cash):                           $0.00
```

## Schedule K - Partners' Shares of Income, Credits, Deductions, etc

```
Net Income Real Estate Activity:                        $339.00
Gross Income Other Rental Activity:                       $0.00
Net Income Other Rental Activity:                         $0.00
Interest Income:                                          $0.00
Dividend Income:                                          $0.00
Royalty Income:                                           $0.00
Net Long Term Capital Gain:                               $0.00
Net Gain (Loss) Section 1231:                             $0.00
Other Income:                                             $0.00
```

## Low Income Housing Credit

```
From Section 42(J)(5) Partnership:                        $0.00
Other than 12a(1):                                        $0.00
Qualified Rehabilitation Expenses:                        $0.00
Average Loss Per Partner Per Computer:                    $0.00
Modified Ordinary Income Per Computer:                    $0.00
Foreign Gross Passive Income:                             $0.00
```

```
Foreign Gross Income:                                              $0.00
Interest Expense:                                                  $0.00
Deduction at Partnership Level:                                    $0.00
Partnership Deduction on Passive Income:                           $0.00
General Limit Deductions:                                          $0.00
Total Foreign Taxes:                                               $0.00
Reduction in Taxes:                                                $0.00
```

## Schedule L - Balance Sheets Per Books

```
Mortgages, Notes, Bonds Payable 1 Year or More:                   $0.00
```

## Schedule M-2 - Analysis of Partners' Capital Accounts

```
Partners' Capital Account (End):                          ████████.00
```

## Form 8825 - Rental Real Estate Income and Expenses of a Partnership or an S Corporation

```
Total Gross Rents:                                        ██████.00
```

## Form 3800

```
F7207 Registration Number:
F7207 Credit Trans Election:                                      $0.00
F7207 Gross Elective Payment Election:                            $0.00
F7207 Net Elective Payment:                                       $0.00
F7207 Net General Business Credit:                                $0.00
F7207 Gross Minus Net Computer:                                   $0.00
F3468 Registration Number:
F3468 Credit Trans Election:                                      $0.00
F3468 Net General Business Credit:                                $0.00
F8835 Registration Number:
F8835 Credit Trans Election:                                      $0.00
F8835 Net General Business Credit:                                $0.00
F7210 Registration Number:
F7210 Credit Trans Election:                                      $0.00
F7210 Gross Elective Payment Election:                            $0.00
F7210 Net Elective Payment:                                       $0.00
F7210 Net General Business Credit:                                $0.00
F7210 Gross Minus Net Computer:                                   $0.00
F3468 Part 4 Registration Number:
F3468 Part 4 Gross Elective Payment Election:                     $0.00
F3468 Part 4 Gross Minus Net Computer:                            $0.00
F8911 Registration Number:
F8911 Credit Trans Election:                                      $0.00
F8911 Net General Business Credit:                                $0.00
F7213 Registration Number:
F7213 Credit Trans Election:                                      $0.00
F8911 Net General Business Credit:                                $0.00
F8933 Registration Number:
F8933 Credit Trans Election:                                      $0.00
F8933 Gross Elective Payment Election:                            $0.00
F8933 Net Elective Payment:                                       $0.00
F8933 Net General Business Credit:                                $0.00
F8933 Gross Minus Net Computer:                                   $0.00
F8936 Part 5 Registration Number:
F8936 Part 5 Net General Business Credit:                         $0.00
F3468 Part 6 Registration Number:
F3468 Part 6 Credit Trans Election:                               $0.00
??retr.06.F3800.F3468Pt6CreditAmt3_en_US_TD6_2023??              $0.00
F8835 Part 2 Registration:
F8835 Part 2 Credit Trans Election:                               $0.00
```

**F8835 Part 2 Net General Business Credit:**                                                      $0.00

## Credits

| | |
|---|---|
| **Vehicle 1 Number:** | 00000000000000000 |
| **Placed In Service Date:** | 00-00-0000 |
| **Tentative 1 Credit:** | $0.00 |
| **Net 1 Business Credit:** | $0.00 |
| **Lesser 1 Part 4:** | $0.00 |
| **Lesser 1 Part 5:** | $0.00 |
| **Vehicle 2 Number:** | 00000000000000000 |
| **Placed In Service Date:** | 00-00-0000 |
| **Tentative 2 Credit:** | $0.00 |
| **Net 2 Business Credit:** | $0.00 |
| **Lesser 2 Part 4:** | $0.00 |
| **Lesser 2 Part 5:** | $0.00 |
| **Summary Vehicle Validation Credit Verified:** | $0.00 |
| **Net 1 Business Credit Computer:** | $0.00 |
| **Lesser 1 Part 5 Computer:** | $0.00 |
| **Vehicle 1 Validation Number:** | 0 |
| **Net 2 Business Credit Computer:** | $0.00 |
| **Lesser 2 Part 5 Computer:** | $0.00 |
| **Vehicle 2 Validation Number:** | 0 |
| **Total Net Elective Pay Computer:** | $0.00 |
| **Reduction of CVC Credit Computer:** | $0.00 |
| **Total Balance Due Computer:** | $0.00 |
| **Balance Due Overpayment Computer:** | $0.00 |

This Product Contains Sensitive Taxpayer Data